```
D7GPGOTC
```

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
                    ------------------------------x
                    ESTATE OF ERNEST GOTTDIENER,
                    ET AL.,

                              Plaintiffs,
                         v.                          13 CV 1824 (LGS)

                    FELIX SATER AND SALVATORE
                    LAURIA,

                              Defendants.
                    ------------------------------x
                                                     New York, N.Y.
                                                     July 16, 2013
                                                     12:24 a.m.
                    Before:
                                   HON. LORNA G. SCHOFIELD,

                                                     District Judge
                                        APPEARANCES
                    MUNDIE LAW FIRM
                         Attorneys for Plaintiffs
                    BY:  FREDERICK M. OBERLANDER, ESQ.
                                   and
                    THE LAW OFFICE OF RICHARD E. LERNER, P.C.
                    BY:  RICHARD E. LERNER, ESQ.

                    BEYS, STEIN & MOBARGHA, LLP
                         Attorneys for Defendant Felix Sater
                    BY:  JOSHUA D. LISTON, ESQ.
                         NADER MOBARGHA, ESQ.

                    SATTERLEE, STEPHENS, BURKE & BURKE, LLP
                         Attorneys for Defendants in 2010 case, BayRock LLC,
                    BayRock Spring Street LLC, BayRock Whitestone LLC, BayRock
                    Camelback LLC, and BayRock Merrimac LLC
                    BY:  WALTER A. SAURACK, ESQ.
                         ZOE E. JASPER, ESQ.
```

1                 (In open court)

2                 (Case called)

3            THE COURT:  We're now moving to the third case, which

4    is 13 CV 1824.  It's estate of Ernest Gottdiener versus Sater,

5    and there are only two defendants here, Felix Sater and

6    Salvatore Lauria, as I understand it.  And given that, the

7    other counsel are welcome to stay, but the other counsel are

8    also welcome to leave because we're going to address just this

9    case now.

10           With respect to this case, I understand that service

11   was made and counsel has appeared, in some sense, for both

12   defendants, but you are not showing up as having entered an

13   appearance on ECF.  So if I could just ask you to do that, that

14   would be great.

15           MR. MOBARGHA:  Yes, of course.  We will file a notice

16   of appearance within the next 24 hours.

17           THE COURT:  Thank you.  So if I could ask the

18   plaintiff again, what is this case about, and how is this

19   different from the two that we talked about already?

20           MR. OBERLANDER:  Complete -- Well, I can't say it's

21   completely unrelated.  Six degrees of separation.  We could

22   find something.  Roughly from '93 to '98, pervasively in the

23   Southern District but with tendrils that reached out to a lot

24   of others, including the Eastern District, a very great many

25   bucket shops or basically crooked, fly-by-night stockbroker

operations popped up that were, in varying degrees, associated with generally Italian organized crime or the Mafia, however you call it, sometimes Russian and sometimes both.

There was a great deal of litigation in the early part of this millennium, 2000 to 2005, all over the Eastern and Southern District, dozens of cases.  This is basically a civil residue of one of them.  In this case, there was -- obviously, I'll be very careful.  These are allegations, but they're also taken directly from criminal informations to which people have pled guilty and indictments to which people have pled guilty and, therefore, they're more than mere allegations.  They're, at least as to the indictments, true with probable cause.

There was an association in fact RICO enterprise consisting of some 20, 25 people.  Among them were Felix Sater, Salvatore Lauria, Alfred Palagonia, quite a few others.  It doesn't matter.  Now, the general overall objective of that racketeering enterprise was to perpetrate securities fraud, specifically by getting customers to buy stocks not knowing that the brokerages and their buddies in the association secretly controlled large blocks.

And these proverbial little old ladies would be induced with high-pressure boiler room sales tactics into buying stock, not knowing the truth, not knowing that brokers were being bribed to promote it.  And then, of course, it would be run up and sold into, and they'd be left with worthless

1    stock.  And it's called pump and dump, and the details of it
2    are really almost unimportant.  But that's essentially what
3    we're talking about, pump and dump, boiler room securities
4    fraud.
5             Now, my client --
6             THE COURT:  And so is it, more or less, I mean,
7    separate than from the other actions?
8             MR. OBERLANDER:  Yes.  It doesn't have to stay that
9    way, but I'm not trying to be deceptive to you.
10            THE COURT:  No, no, no.
11            MR. OBERLANDER:  The damages claim --
12            THE COURT:  I'll to be clear to you, I haven't been
13   able to put all of the complaints together to sort out what is
14   what.  So I was hoping you might just make that simple for me.
15            MR. OBERLANDER:  Absolutely.  Here's what we got.
16   Mr. Sater did some bad things.  Whether he reformed or not is
17   beside the point.  He did some bad things; so did Mr. Lauria,
18   and they pled guilty to doing them in 1998.  That's when they
19   pled guilty.  The things that they did were during the five
20   years before that, '93 to '98, roughly.
21            Now, all those other cases deal with what happened
22   after 1998.  They deal with what happened when Mr. Sater, while
23   he was serving as a cooperator, infiltrated and acquired the
24   majority ownership of BayRock and used it to commit crime, and
25   people who facilitated that and covered it up for him, that's

1    what those cases are about.
2            In this case, we're dealing with some elderly people,
3    Holocaust survivors who entrusted a large part of their life
4    savings to brokerages in 19 -- or to one broker during '93 to
5    '98 and lost money.
6            THE COURT:  Okay.  I got it.  Thank you.
7            MR. OBERLANDER:  All right?  Now, obviously, they have
8    claims, the Gottdieners, against people who joined a conspiracy
9    after the securities fraud and kept it going 15 years to hide
10   the truth from them.  That's why they're plaintiffs in the case
11   Mr. Sater removed.  So what happened here is that these are
12   the -- this case is the Gottdieners suing Mr. Sater and
13   Mr. Lauria in civil RICO for the losses they suffered in
14   securities fraud from '93 to '98.  That's what this case is
15   about.
16           But they could have and should have got their money
17   back by suing them a lot earlier.  They should have got
18   restitution a lot earlier.  They didn't.  They have claims
19   against a lot of people who, after the securities fraud, acted
20   with the specific intent of frustrating them and all the other
21   victims.  That's the 3905 case we dealt with first.
22           This is strictly the case about the -- I mean, I could
23   have pled it.  Yeah, I could have enjoined it all over the
24   place.
25           THE COURT:  I understand.

1    MR. OBERLANDER:  In this case, we have the Gottdieners
2    suing Mr. Sater and Mr. Lauria because they lost $7 million in
3    securities fraud.  Now, the wrinkle here, and I'm sure my
4    colleague will bring this up to you and we agree on a lot,
5    believe it or not, trust not on the law.  The wrinkle here is
6    that the damage that was done to them in the securities fraud
7    seems -- and don't hold me to this, but at the latest, to have
8    occurred in 1998, certainly not long after that.  We're dealing
9    with damages that accrued to them 15 years later.
10   The cause of action didn't accrue civilly against
11   Mr. Sater until 2009 because civil RICO provision Title 18
12   1964-C says that no one may bring an action for RICO by relying
13   on conduct that would be actionable as securities fraud unless
14   and until there's been a conviction.  In which case, the
15   statute of limitations, which everyone agrees is four years,
16   begins to run when the conviction becomes final.
17   It is our position that the phrase "conviction becomes
18   final" wasn't redundant for the hell of it; that while a
19   conviction may be said to have occurred upon entry of a guilty
20   plea, a conviction becomes final only when the judgment and
21   conviction order is docketed and/or time for appeal expires.
22   Mr. Sater was sentenced on October 23rd, 2009.
23   Presumably, he had -- if he hadn't waived appeal, he had 14
24   days from there; so somewhere around October, November 2009
25   Mr. Stater's conviction became final.  There must be several

1     hundred cases on the phrase "conviction becomes final."  When

2     does finality occur?  Most of them are in the habeas context,

3     obviously, because of the one-year limitation there.

4             There is no case in history that has ever held that

5     conviction becomes final when somebody enters a plea of guilty

6     particularly because, among other things, when you're subject

7     to a cooperation agreement, if you violate it and commit

8     crimes, guess what?  Everything changes, and it's all done all

9     over again.

10            So we brought this case with respect to Mr. Sater

11    pursuant to a quirk in the law that is there for real,

12    unambiguously clear, that starting October 23rd, 2009, for the

13    next four years, everybody he is liable to from 15, 20 years

14    ago can first sue him.  As to Mr.  -- in RICO, nothing else

15    that we know of but in RICO.

16            Mr. Lauria, his conviction became final in

17    February 2004, but his case didn't exist in public records

18    until it was, for want of a better term, unsealed by order of a

19    magistrate for Judge Glasser on March 22, 2009.  So the

20    earliest that anybody could have known his conviction became

21    final was March 22, 2009.  And we filed this case on

22    March 18th, 2013.

23            And our position with respect to Mr. Lauria is that

24    the statute of limitations had to have been tolled during the

25    entire time everything was being kept secret, concealed,

1   sealed, whatever you want to call it.  You can't hold
2   plaintiffs to knowing about something where the courts have
3   gone out of their way to make certain that nobody did.
4           THE COURT:  Let's -- We've been here a long time.
5           MR. OBERLANDER:  But that's the facts.
6           THE COURT:  I understand, and I have your pre-motion
7   letters.  And we don't need to have oral argument before
8   anybody files any papers.  So would you like to be heard?
9           MR. MOBARGHA:  Yes.  One thing that I just want to
10  address in this conference is, if there's any pleading
11  deficiencies or statute of limitation issues that the
12  plaintiffs are about to address, and they've hinted at that in
13  their letter, that they would maybe like to amend their
14  complaint to --
15          THE COURT:  I thought somewhere he said he wasn't
16  amending one word of his complaint.
17          MR. OBERLANDER:  Want me to answer or --
18          THE COURT:  Well, let --
19          MR. MOBARGHA:  The reason why --
20          THE COURT:  Yes, let me hear you.
21          MR. MOBARGHA:  The reason I bring this up is if we
22  were to file a motion to dismiss, which we are going to do --
23          THE COURT:  Right.
24          MR. MOBARGHA:  -- we would like to make sure that the
25  complaint we're going to be dismissing won't be amended, making

D7GPGOTC

1   our motion moot.  It's, therefore, for efficiency purposes we

2   can actually just dismiss the complaint that the plaintiffs

3   actually are going to stick by at this point.  This will just

4   make it more efficient for the Court and all the parties

5   involved.

6             I'm not going to get into all the rebuttals for what

7   plaintiff has mentioned, but basically, this case is, as

8   plaintiffs have admitted, is over.  It's about 15 to 20 years

9   old and the statute of limitations is four years.  And while

10  securities fraud, the statute begins to run when the conviction

11  is final, we believe that that was when he entered a plea of

12  guilty back in 1998.  Therefore, the statute of limitations for

13  Mr. Sater and Mr. Lauria expired in 2002.

14            What the position the plaintiffs are taking here is

15  that defendants' ten years of unparalleled cooperation with the

16  Eastern District somehow should act as a toll to continuously

17  toll their -- the time they have to file whatever civil RICO

18  action that they want to.  I don't think that was the intent of

19  the statute, but we can get into that in the papers.  I don't

20  want to waste the Court's time any more than we already have.

21            But I just want to get into, though, is while

22  securities fraud has a specific way of calculating the statute

23  of limitations issue, they still need another predicate act for

24  civil RICO.  And through their correspondence, it seems that

25  they're hinting that the second predicate act that they're

1    basing their civil RICO claim on is bribery.  And bribery,
2    unfortunately for the plaintiffs, still, the statute begins to
3    run when plaintiffs discovered or should have discovered that
4    their economic loss could be attributed to this bribery.
5         So whether the conviction is final or not for the
6    second predicate act is irrelevant.  The statute begins to run
7    back when the plaintiff should have discovered their injury.
8         And the other reason I wanted to bring up the
9    potential amendment of their complaint is because, you know,
10   civil RICO, the pleading standards for civil RICO are very
11   onerous.  And basically just attaching the conviction of
12   Mr. Sater and Lauria for their White Rock -- alleged White Rock
13   criminal enterprise and imputing all of those actions onto
14   Blair and Palagonia, who were the actual brokers who sold the
15   securities to the plaintiff, is not enough.  And there's cases
16   that say you can't just basically base a civil RICO on some
17   loose narration that's attached.
18        They actually have to tie the facts to the elements.
19   So if they want to do that, I'm happy to wait for them to do
20   that in an amended complaint, but I just want to make sure
21   that, you know, at this point, that they either make a decision
22   to file an amended complaint or I can just move to dismiss
23   their current complaint as it is.
24        THE COURT:  Okay.  Thank you.  So I'll hear from the
25   plaintiff.  I mean, I do have a procedure whereby the plaintiff

1   can either respond or file an amended complaint, but if there's
2   a way to be more efficient --
3            MR. OBERLANDER:  Oh, there most certainly is, if
4   you'll forgive me, maybe --
5            THE COURT:  That's fine, please.
6            MR. OBERLANDER:  Okay.  I think -- I assume we all
7   understand it's implicit that I disagree with how he
8   characterized the law, right?
9            THE COURT:  Yes.  We all understand that, and we'll
10  read about it in the papers.
11           MR. OBERLANDER:  We're past that.
12           THE COURT:  Yes.
13           MR. OBERLANDER:  It isn't my job in a complaint to
14  satisfy anything about limitations periods.  It's an
15  affirmative defense or it's a jurisdictional objection.  It
16  isn't my job to deal with it.  Now, I wrote a legally proper
17  complaint, but -- and I can be better, like we all can.  I do
18  an extensive amount of consulting in civil RICO, and there are
19  two kinds of RICO complaints, bad ones and really long,
20  complicated ones, I'm afraid, and that's just the way it is.
21           But what there isn't ever, you're never going to find
22  it.  It's come up two times in reported cases in 30 years, is a
23  RICO complaint brought by a plaintiff who was the criminal
24  victim of the defendant who pled guilty to actual information
25  setting everything out.  So as a very brief statement here,

D7GPGOTC

1    I've got an 86-page grand jury indictment of Alfred Palagonia,
2    which lists Felix Sater and Sal Lauria as unindicted
3    coconspirators.  By definition, what's in there satisfies
4    Twombly and, is it, Iqbal?
5            THE COURT:  Twombly and Iqbal.
6            MR. OBERLANDER:  Whatever it is, it by definition
7    satisfies that because somebody had to think there was probable
8    cause to return that.  And in there, whoever wrote it, this is
9    the organization, this is the conspiracy.  Why would I --
10           THE COURT:  Let's just -- I'm going to stop you here.
11           MR. OBERLANDER:  Okay.  You want me to --
12           THE COURT:  This sounds like more argument about why
13   your pleading is sufficient.
14           MR. OBERLANDER:  To speed it up, I can speed it up, if
15   you could rule with preliminary papers, however you could do
16   it, on the statute of limitations issue, which is law bound,
17   there's not a whole lot of factual dispute in there.  He says
18   conviction becomes final means 1998.  I say it means 2009.  You
19   know, if you really want the truth, the way to speed this up is
20   to get rid of that issue because if you rule that the statute
21   of limitations ran out in 2002, why am I amending a substantive
22   pleading where there is no time to do it?
23           THE COURT:  Well, and frankly, the Twombly and Iqbal
24   motions, although I've granted one in my short tenure on the
25   bench, usually they are something attorneys feel compelled to

1   make.  But Twombly and Iqbal are not as exacting as people
2   might fear.
3              So, but as I recall, though, the issue was not just
4   the Twombly, Iqbal, and as I just heard from counsel, there's
5   also the issue of substantive RICO and predicate, the predicate
6   defense issue, and as I recall, there were two other RICO
7   issues that you didn't mention in your argument but that are in
8   your papers.  You don't need to go into them now.
9              So I think the most efficient thing to do is to go
10  ahead with the motion to dismiss.  I think you should put all
11  of the arguments in the motion to dismiss.  In the schedule
12  that I put in place, once you get the motion to dismiss, if you
13  want to amend, and just look at the scheduling order, rather
14  than respond, you can do that.
15             But let me just suggest to everybody that the Twombly,
16  Iqbal arguments, particularly in cases where there's a lot of
17  factual information known, generally aren't successful.  There
18  may be other deficiencies in the pleading, substantive law
19  deficiencies in the pleading, such as those you referred to in
20  your letter, but I wouldn't spend too much time on the Twombly,
21  Iqbal issues.
22             MR. OBERLANDER:  Then I'd rather amend first, only
23  because I can make the pleading shorter and clearer, period.
24             THE COURT:  As to the alleged deficiencies?
25             MR. OBERLANDER:  Yes.

1          THE COURT:  Okay.  By all means.
2          MR. OBERLANDER:  And it just cuts a whole iteration
3  out of this.
4          THE COURT:  Let's do that.  Fine.
5          MR. OBERLANDER:  I just thought before I even do that,
6  if he makes a motion for partial summary judgment or full on
7  the issue of statute of limitations because --
8          THE COURT:  If I were confident that he was right on
9  the statute of limitations, I would say that.  Frankly, I don't
10 know the law; so I would rather hear all of the arguments at
11 once.  But if you are offering to make your complaint more
12 clear with respect to the alleged deficiencies, go for it.  I
13 would not add a lot of detail for the sake of Twombly, Iqbal.
14         MR. OBERLANDER:  No, no, other way around.  All I want
15 you to do, if you'll forgive me, your Honor, is accept the
16 following, that rather than have to sit and quote 150 pages of
17 somebody else's document, there is case law in the Second
18 Circuit that says if I incorporate allegations in an indictment
19 or something by reference without attaching it to the actual
20 complaint, it's still proper.
21         If the Court would allow me to do that and say that
22 the description of the enterprise is exactly as contained in
23 paragraphs 8 through 7, without having to attach a whole thing
24 this thick to it, that would seem --
25         THE COURT:  You would amend the complaint to do that?

1    I mean, it would be hard to read in that case. I mean, if
2    there is Second Circuit case law that says you can do that, do
3    whatever Second Circuit case law says you can do. So let me
4    just make sure I understand. You do want to amend that?
5             MR. OBERLANDER: I want to amend the complaint so that
6    it becomes a paragon of short, concise RICO conspiracy pleading
7    because we are basing our case primarily on 1962-D, not C, on
8    conspiracy.
9             THE COURT: Right.
10            MR. OBERLANDER: Primarily.
11            THE COURT: Which was clear from your letter.
12            MR. OBERLANDER: And, therefore, I want to make it a
13   paragon of clarity that we are alleging that Mr. Palagonia
14   committed multiple acts of securities fraud in the operation of
15   a RICO enterprise, which is exactly what --
16            THE COURT: I understand. And that these fellows were
17   part.
18            MR. OBERLANDER: And that's all I have to get.
19            THE COURT: Okay. How soon can you file an amended
20   complaint?
21            MR. OBERLANDER: Two weeks?
22            THE COURT: Okay. So let's set that two-week date.
23            MR. OBERLANDER: Excuse me. We already have a
24   schedule. Why don't we just add --
25            THE COURT: Okay. So we'll do -- just, I need to put

1   dates into my order.  So we'll do July 30th for the amended
2   complaint, and then do you want to bump everything else by one
3   month?
4              MR. OBERLANDER:  No.
5              THE COURT:  No.
6              MR. OBERLANDER:  The rule is 21 days.  I don't care
7   how long he takes.  It's with respect to 21 or 28.
8              MR. MOBARGHA:  I can file a motion to dismiss in 21
9   days after that time.
10             THE COURT:  Okay.  So we have July 30th for the
11  amended complaint, and then we have three -- You want three
12  weeks?  We can do it shorter, if you want shorter.
13             MR. MOBARGHA:  No, three weeks is fine.
14             THE COURT:  Okay.  So that's August 20th for the
15  motion to dismiss.  And then is two weeks good for a response?
16  Okay.  August 20th.  September 3rd for response.
17  September 10th for reply.
18             We need an initial pretrial conference.  I know that
19  sounds crazy since we are here, but I would like an initial
20  pretrial conference, where you would submit a case management
21  plan and a status letter, although, I'm not sure what you'll
22  put in the status letter, but pursuant to my previous order
23  which spells all that out.  Why don't we do that, why don't we
24  do it October 1st.
25             MR. OBERLANDER:  May I ask a question?

1                THE COURT:  Yes.

2                MR. OBERLANDER:  Much web space has been devoted to

3    the, what in my day we called the rocket docket approach of

4    your orders, including that we are supposed to be e-mailed if

5    there's a motion unresolved after 60 days.

6                THE COURT:  Okay.

7                MR. OBERLANDER:  The dates that you're picking here

8    are essentially so close to resolution of the motion to dismiss

9    that maybe it would be better to just hold the pretrial

10   conferences in abeyance until you dispose of that motion to

11   dismiss.

12               THE COURT:  What I'm hoping to, but I can't promise

13   it, is I may be able to either hear oral argument or rule

14   orally on October 1st; so we can accomplish a lot of things on

15   that day.

16               MR. OBERLANDER:  There's a reason I ask, for the sake

17   of my client's bill.

18               THE COURT:  Yes.

19               MR. OBERLANDER:  Which is that sometimes in securities

20   fraud cases, damage computations are very, very expensive and

21   very detailed.  And when you are dealing with damages which are

22   in vicarious liability and you're saying, well, that judge

23   already ordered them to be paid a million and a half by

24   Palagonia; therefore, my damage claim against you is that

25   million and a half, that ought to do it.

Case 1:13-cv-01824-LGS   Document 14   Filed 07/24/13   Page 18 of 19    18
D7GPGOTC

1           So I'm asking in advance that when we head into a
2   conference, which I think paragraph 5 of your seven typical
3   rules says a damage computation analogous to 26(a)(1.c.2), if
4   I'm not mistaken, that we be allowed to make it relatively
5   casual without having to spend --
6           THE COURT:  Yes, that's fine.  And, in fact, you
7   already have a relatively casual damages description in one of
8   these letters.
9           MR. OBERLANDER:  I tried to do everything I could.
10          THE COURT:  You can cut and paste it.
11          MR. OBERLANDER:  Thank you.
12          THE COURT:  Yes.
13          MR. MOBARGHA:  Your Honor, one last issue I'd like to
14  address is some of the allegations in the complaint, I felt,
15  were scurrilous and intended only to harass and humiliate
16  Mr. Sater and his late, deceased father.  So I just ask if
17  counsel does not amend and take those allegations out of the
18  amended complaint, part of my motion to dismiss, I will also be
19  filing in conjunction with it a motion to strike some of the
20  allegations in the complaint.
21          So I just wanted to give opposing counsel some advance
22  notice to use a little bit more discretion, and to actually
23  plead relevant allegations rather than a history of Russian
24  Mafia in Brooklyn, which is completely irrelevant and
25  unsubstantiated.  Thank you.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          THE COURT:  Okay.  So thank you, counsel.  Please, you
2     can have your discussion afterwards, but thank you.  Okay.  So
3     I think that's everything on this final conference.  And is
4     there anything else we need to address here?
5          MR. OBERLANDER:  No, I think that's it.
6          THE COURT:  Okay.  Thank you.  From defense, anything?
7     Okay.  Thanks very much.
8          MR. LISTON:  Thank you.
9          (Adjourned)