**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

ESTATE OF ERNEST GOTTDIENER,      :
ESTATE OF JUDIT GOTTDIENER        :
ERVIN TAUSKY, and SUAN INVESTMENTS :

        Plaintiffs,                :          13-CV-1824 (LGS)
                    :
                    :

-against-                         :
                    :

FELIX SATER and SALVATORE LAURIA  :

        Defendants.                :

-------------------------------------------------------------x

**DEFENDANTS FELIX SATER AND SALVATORE LAURIA'S MEMORANDUM OF**
**LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Dated:  New York, New York
        August 27, 2013

                               BEYS, STEIN & MOBARGHA LLP
                               Nader Mobargha, Esq. (NM7162)
                               The Chrysler Building
                               405 Lexington Avenue, 7th Floor
                               New York, New York 10174
                               Telephone:  (646) 755-3603
                               Facsimile:  (646) 755-3599
                               Email:  nmobargha@beysstein.com
                               *Attorneys for Defendants*

## TABLE OF AUTHORITIES

### Cases

*Atl. Gypsum v. Lloyds Int'l Corp.,* 753 F. Supp. 505 (S.D.N.Y.1990)................19

*Baisch v. Gallina,* 346 F. 3d 366  (2d. Cir. 2003).......................................20

*Beck v. Proupis,* 529 U.S. 494 (2000).......................................21

*Biofeedtrac, Inc. v. Kolinaor Optical Enter. & Consultants, S.R.L.,* 832 F. Supp. 585 (E.D.N.Y. 1993)................................................................17

*Carmona v. Spanish Broadcasting Sys., Inc* 2009 WL 890054 (S.D.N.Y. March 30, 2009)....................................................................18

*Cedar Swamp Holdings, Inc. v. Zaman,* 487 F. Supp. 2d 444 (S.D.N.Y. 2007)...........13

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)....................................................................16

*Elsevier, Inc. v. W.H.P.R Inc.,* 692 F. Supp.2d 297 (S.D.N.Y. 2010).........................8

*Figueroa Ruiz v. Alegria,* 896 F.2d 645 (1st Cir. 1990)................................8

*Frooks v. Town of Cortland,* 997 F. Supp 438 (S.D.N.Y. 1998)...........................17

*Gilfus v. Vargason, 2006 WL 2827658 (*N.D.N.Y. Sept. 30, 2006)........................20

*Grau Miller Dev. Corp. v. Colonial Bank Trust,* 927 F.2d 988 (7th Cir. 1991)...........19

*In re Am. Express Co. Shareholder Litig.,* 39 F.3d 395 (2d Cir. 1994)..................19

*Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649 (S.D.N.Y. 1996).....................................................................8, 18, 22

*Klehr v. A.O Smith Corp.,* 521 U.S. 179 (1997)............................................11-12

*LeSavoy v. Lane,* 304 F. Supp.2d 520 (S.D.N.Y. 2004)...................................7,18

*Levy v. Aaron Faber, Inc.,* 148 F.R.D. 114 (S.D.N.Y. 1993)................................22

*Levy v. Southbrook Intern Invs. Ltd.,* 263 F.3d 10 (2d Cir. 2001)..........................7

*Living Designs, Inc. v. E.I Dupont de Nemours and Co.,* 431 F.3d 353 (9th Cir. 2005....................................................................11

*Mcloughlin v. Altman,* 1995 WL 640770 (S.D.N.Y. Oct. 31, 1995)........................22

*MLSMK Investment Co. v. JP Morgan Chase & Co.,* 651 F.3d 268 (2d. Cir. 2011)....................................................................14-15

*O'Malley v. N.Y.C. Transit Authority*, 896 F.2d 704  (2d. Cir. 1990)………...…..……22

*Redtail Leasing, Inc. v. Belleza*, 2001 WL 863556  (S.D.N.Y Jan. 21, 1999)…..………17

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)…………………………………16-17

*Rotella v. Wood*, 528 U.S. 549 (2000)…………………………………………...…..11

*Rolo v. City Investing Co. Liquidating Trust*, 155 F. 3d 644 (3d. Cir. 1998)………….11,16

*Sedima S.P.L.R v. Imrex Co., Inc.*, 473 U.S. 479  (1985)………..………………….…13

*Sissel v. Rehwaldt*, 2013 WL 2372296 (2d. Cir. June 3, 2013)……………............15-16

*U.S. Fire Ins. Co. v. United Limousine Service, Inc.* 303 F. Supp.2d 432 (S.D.N.Y. 2004)………………………………………………………………………14,17

*Vicon Fiber Optics v. Srivo*, 201 F. Supp.2d 216………………………….......19-20, 21

*West 79th Street v. Congregation Kahl Michas Church*, 2004 WL 2187069 (S.D.N.Y. 2004)………………………………………………………17, 18, 19, 20, 21

*Williams v. WMX Techs, Inc.*, 112 F.3d 175 (5th Cir. 1997)……………………….....18

*World Wrestling Entertainment, Inc. v. Jakks Pacific*, 530 F.Supp.2d 486 (S.D.N.Y. 2007)………………………………………………………………13,14

*U.S.A. v. Coppa et al.*, 00-CR-196 (ILG)…………………………………………...9

*U.S. Fire Ins. Co. v. United Limousine Service, Inc.* 303 F.Supp.2d 432  (S.D.N.Y. 2004)……………....…………………………………………………14, 17

**Statutes and Rules**

*18 U.S.C § 2*………………………………………....…………………16

*18 U.S.C. § 1961(1)*…………………………………………………....……14

*18 U.S.C. § 1961(4)*…………………………………………………....……19

*18 U.S.C. § 1961(5)*…………………………………………………...……13

*18 U.S.C. § 1962(c)*………………………………………………...........7, 13

*18 U.S.C. § 1962(d)*…………………………………………….....……21

*18 U.S.C. § 1964(c)*…………………………………………….9, 10, 14, 15

*Fed. Rule Civ. Proc. 11*………………………………………………………22

**Other Authorities**

NEW YORK LAW JOURNAL, *"Judge finds 742- Page 'Stew' Irrelevant to Unsealing Issues,"* by John Caher, dated November 15, 2012……………………….........……………1

*Letter from N. Mobargha to Judge Schofield, 10 civ. 3959, dated April 18, 2013*…..22-23

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT………………………………………...……………1

STATEMENT OF FACT……………………………………...………………………3

ARGUMENT…………………………………...………………………………...……7

I- THE STANDARD FOR PLEADING CIVIL RICO IS VERY HIGH…………………………………………………………………...7

II- PLAINTIFFS' CIVIL RICO CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS…………………………………………………8

    A. The relevant start date for calculating the statute of limitations is the date when <u>Palagonia's</u> conviction became final……………..………..8

    B. Plaintiffs mistakenly calculate the statute of limitations using the dates of Sater and Lauria's convictions……………………...……..……..9

    C. Plaintiffs cannot use the arbitrary date when Lauria's criminal record was unsealed as the accrual date for their civil RICO claims…..……...10

III- PLAINTIFFS FAIL TO SATISFY A SINGLE ELEMENT OF THEIR CIVIL RICO CLAIMS UNDER 1962(c)………………..……………...………..13

    A. Plaintiffs fail to allege a pattern of racketeering………………...……..13

    B. Plaintiffs fail to allege Sater and Lauria's "conduct" in the alleged Blair Enterprise…………………………………………………..…...16

    C. Plaintiffs fail to even allege the existence of a Blair/White Rock Enterprise……………………………..…………………………...19

    D. Plaintiffs fail to allege how Sater and Lauria were the proximate cause of their injuries…………………………………….....................................19

IV- BECAUSE PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF 1962 (C), THEIR CLAIM UNDER 1962(D) MUST ALSO FAIL………….…....21

IV- DEFENDANTS RESERVE THE RIGHT TO MOVE FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11…..…………….…..21

CONCLUSION………………...…...……………………………...……………..23

Defendants Felix Sater ("Sater") and Sal Lauria ("Lauria"), by and through their counsel Beys, Stein, Mobargha & Berland, move to dismiss Plaintiffs' First Amended Complaint, dated July 30, 2013 (the "Complaint") under Federal Rule of Civil Procedure 12(b)(6):

## PRELIMINARY STATEMENT

After spending over three years violating unambiguous court orders, publicly disclosing sealed information concerning Defendants Sater and Lauria, and re-litigating issues already decided by multiple courts, counsel to Plaintiffs have raised the stakes by waging an expensive and harassing civil litigation campaign against them. Their claim of choice is the civil Racketeering Influenced and Corrupt Organizations Act ("RICO"), the litigation equivalent of a thermonuclear device. They have used this claim no less than three times in three separate actions in the last three years.

Each of the three actions is designed to fail as meritorious lawsuits, but succeed as tools of extortion. In this action, Plaintiffs have ignored the basic elements of a civil RICO claim, let alone attempted to satisfy the statute's heightened pleading requirements. They have failed to plead one viable predicate act – the basic foundation of any civil RICO claim - let alone the required two that must occur within 10 years of each other. They have failed to plead a single relevant criminal enterprise, instead pleading two separate and distinct criminal enterprises and attaching a veritable "stew" of documents concerning irrelevant details about Sater and Lauria's 20-year old criminal history, an old tactic of theirs (*see, e.g.,* "Judge Finds 742-Page 'Stew' Irrelevant to Unsealing Issues," by John Caher, dated November 15, 2012, NEW YORK LAW JOURNAL). They have failed to plead any operation or control by Defendants Sater or Lauria over the alleged criminal enterprise. Worse yet, their entire Complaint is based on allegations

concerning events that occurred almost 20 years ago, way beyond the 4-year statute of limitations for a civil RICO claim.

Of course, if the last three years are indicative of anything, it is that properly pleading the elements of a claim and filing lawsuits in good faith are of no concern to Plaintiffs' counsel. Litigation is merely a means to an end for them. The real goal behind their litigation tactics is to wage a public relations war against Sater and Lauria with the hope that it might result in a handsome financial settlement for them. Their tried and true tactic is to smear and extort. In addition to publicly disclosing sealed information and violating unambiguous court orders, counsel to Plaintiffs continuously rehash and publicize the almost 20-year-old criminal histories of Sater and Lauria, who have cooperated with the federal government and more than paid their debt to society for their crimes. Indeed, their disclosures are never limited to just the facts; they also include scurrilous and irrelevant allegations about Sater and Lauria that have nothing to do with their claims. Never is this more evident than when counsel included in their Complaint unfounded allegations about Sater's recently deceased father – who, even by plaintiffs' own admission, has no connection whatsoever to any of the claims in their Complaint except to add smear value.

They have also used their three civil RICO actions – including this one - to show their contempt of court and air their displeasure at the federal sealing litigation over the last three years, which concerned the First Amendment issue of whether to keep a federal cooperator's record under seal to protect his life. This displeasure has taken the form – once again – of hurling insults at the government and the courts in their publicly filed Complaint. Specifically, they describe the rulings and orders of the Honorable I. Leo Glasser of the Eastern District – which have been affirmed by the Second Circuit Court of Appeals – as "illegal" and "in a pattern

and practice of maintaining a covert justice system of secret trials, falsified records, and unlawful judgments." (*see* Complaint ("Compl."), at ¶¶ 74, 80)  Counsel for Plaintiffs further accuse the federal courts of the Eastern District of "sacrifice[ing] the civil rights of the public and the victims."  (*Id.* at ¶ 80)  These insults at the federal judiciary, combined with their inability to plead a single element of their civil RICO claim, show that Plaintiffs filed this lawsuit in bad faith.

After three years of frivolous litigation by counsel to Plaintiffs, one thing is clear. Counsel to Plaintiffs are immune to the Second Circuit's "warn[ing] that the Court's patience has been exhausted by [counsel's] filing of six separate notices of appeal regarding the same principle legal dispute…and that any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions."  (*See* Second Circuit Order, dated December 20, 2011)  They are also undeterred by the Honorable Brian M. Cogan's referral of them for criminal contempt proceedings.  Consequently, in addition to requesting that the Court dismiss Plaintiffs' frivolous Complaint with prejudice, Sater and Lauria reserve the right to seek sanctions against Plaintiffs and their counsel, and the reimbursement of their attorney's fees and costs for defending this frivolous action.

## STATEMENT OF FACTS

The following relevant facts are taken from Plaintiffs' Complaint.

### *Plaintiffs were the alleged victims of non-parties <u>Blair and Palagonia's</u> securities fraud*

In their Complaint, Plaintiffs admit that it was the brokerage firm of D.H. Blair ("Blair") and its employee, Alfred Palagonia ("Palagonia") – non-parties to this action – that were responsible for the financial losses underlying their claims.  Indeed, it was Palagonia, not Sater or Lauria, who "fraudulently induced [Plaintiffs] to buy stocks [Palagonia] had secret interests

in, or was secretly paid to push, pumping up the price." (Compl. at ¶ 1)  Specifically, Plaintiffs allege that "for years, Palagonia, their broker at Blair, perpetrated securities fraud on [them], fraudulently inducing them to buy, and fraudulently inducing them from selling, certain stocks without disclosing material facts, including without limitation that he was paid to push them, that he was paying others to do so, that the underlying companies were worthless, and that he was in league with others who had hidden interests in the stock they wanted them run up." (Compl. at ¶ 11)  "US Bridge and Holly Products" were the two stocks that Palagonia sold to the Plaintiffs, and they allegedly turned out to be worthless." (*Id.* at ¶ 38)  The underlying conduct took place between 16 and 19 years ago.

Ultimately, Palagonia "pled guilty to state racketeering charges, admitting that he and others inside Blair constituted a racketeering enterprise that defrauded customers; he plead guilty to federal securities fraud charges; and he admitted he and others, this time including persons outside Blair, constituted a racketeering enterprise that defrauded customers." (*Id.* at ¶ 2).

As a result of Palagonia's alleged unlawful conduct, the Gottdieners suffered "original losses of about $700,000." (*Id.* at ¶ 12).  Indeed, Plaintiffs solely attribute their "(i) Trading Losses, (ii) Commission Losses, and (iii) Fee and Expense Losses" to "Palagonia's unlawful conduct." (*Id.* at ¶¶ 143-145).

***The alleged Blair Enterprise and Palagonia have no connection to Lauria and Sater***

The Plaintiffs allege and describe the operation and workings of the alleged "Palagonia Group Criminal Enterprise" and the "D.H. Blair Criminal Enterprise" (together, the "Blair Enterprise").  (*See id.* at ¶¶ 105-116)  However, there are no allegations that Defendants Sater or Lauria worked at Blair, controlled and operated Blair, or had any discussions or made any

4

representations to anyone working at Blair, including Palagonia. Most importantly, there are no

allegations that Sater or Lauria sold any stock to Plaintiffs, or even met Plaintiffs.

### The Blair Enterprise had no connection to the White Rock Enterprise, except the existence of an alleged secret agreement between the two enterprises to sell two stocks

In addition to describing the alleged Blair Enterprise, Plaintiffs also describe the

operation of the alleged White Rock Partners Criminal Enterprise (the "White Rock Enterprise"),

a separate and distinct brokerage firm from Blair, where Sater and Lauria were employed

between 1994 and 1996 (*See id.* at ¶¶ 117-123). Plaintiffs allege that Lauria and Sater

"ran…White Rock, where they perpetrated similar securities frauds on their customers." (*Id.* at ¶

3) However, there is no allegation that Plaintiffs were customers of Sater, Lauria, or White

Rock.

In 1998, as a result of the securities frauds they committed while employed at White

Rock, Sater and Lauria "pled guilty to federal racketeering charges based on [criminal]

informations," which plaintiffs attached to their complaint. (*Id.* at ¶ 96) Since Sater and Lauria

never sold securities directly to Plaintiffs, their guilty pleas did not involve the sale of any

securities to Plaintiffs. Due to their extensive cooperation with the government, Sater and Lauria

were not sentenced for their crimes at White Rock until much later. Lauria was sentenced on

February 25, 2004, almost 6 years after his conviction. (*Id.* at ¶ 96). Sater was sentenced on

October 23, 2009, almost 11 years after his conviction. (*Id.*) Plaintiffs filed their complaint on

March 18, 2013, 17-19 years after the asserted predicate acts underlying their claims took place.

In fact, the only connection alleged between the alleged Blair Enterprise and the White

Rock Enterprise is that the White Rock Partners, "by agreement with Palagonia…devised,

implemented and oversaw fraudulent schemes to manipulate the price of Holly and USBNY (i.e.,

US Bridge) securities and fraudulently induce investors to buy and hold them." (*Id.* at ¶¶

128,129-133)  As alleged, Sater and Lauria, by virtue of running White Rock, "in the course of their racketeering committed the predicate acts of aiding and abetting and knowingly facilitating Palagonia's securities fraud." (*Id.* at ¶¶ 5-6)  However, Plaintiffs admit that they are holding Defendants liable "not as <u>primary</u> actors, but <u>secondary</u> actors aiding and abetting and conspiring to commit the securities fraud done to them by a non-party primary actor." (*Id.* at ¶ 8)  The basis of Plaintiffs' aiding and abetting claim is the allegation that Sater and Lauria "pa[id] and brib[ed] Palagonia…to commit securities fraud or securities fraud conspiracy." (*Id.* at ¶ 8.4.1)  According to Plaintiffs, this "was an offense, aiding and abetting [under] 18 USC § 2, involving securities fraud, so a RICO predicate Defendants admitted committing in the scope of their admitted racketeering." (*Id.* at ¶ 8.4.1)

### *Plaintiffs confirm that aiding and abetting securities fraud is the predicate act for their civil RICO claims*

In case their Complaint was still unclear about the predicate act underlying Plaintiffs' RICO claim, Plaintiffs confirm – again – that the predicate act they rely on is aiding and abetting Palagonia's securities fraud.  Specifically, they allege the following in no uncertain terms:

> In the case at bar for all we know (we don't), Defendants never heard of Plaintiffs until they got served with the initiating Complaint in this action.  Doesn't matter.  Plaintiffs aren't suing Defendants in substantive RICO for making material misstatements to them, or material omissions against them, in connection with the purchase or sale of securities; nor are they suing them for making such material misstatements to, or such material omissions against, anyone.

> No, they're suing them in substantive RICO for committing the predicate act of **aiding and abetting their securities frauds Palagonia perpetrated on them**, claiming their aid and abettance in the scope of their racketeering makes them liable for the damages caused by Palagonia's frauds.  Importantly, this is not a civil RICO claim for aiding and abetting someone else's racketeering, but a civil RICO claim for aiding and abetting someone else's <u>securities fraud</u>, predicated on 18 USC § 2.

(*Id.* at ¶¶ 25-27).  In sum, Plaintiffs confirm multiple times that aiding and abetting Palagonia's securities fraud is the predicate act they are relying on.

***Plaintiffs already have a judgment and order of restitution against Palagonia and Blair***

However, Plaintiffs have already been made whole for the financial losses.  To date, "[Plaintiffs] have received, directly or indirectly, in excess of $1,000,000 by third parties, which offset certain of their losses.  (*Id.* at ¶ 149)  In addition, "[p]laintiffs obtained a $1,300,000 restitution order against Palagonia" issued in December 2012 by Judge Glasser of the Eastern District of New York  (*Id.* at ¶¶ 43).  The total amount of payments received by Plaintiffs, and payments they are entitled to receive, is more than three times the original $700,000 amount in losses that the Plaintiff suffered as a result of Palagonia and Blair's conduct.  (*See id.,* at ¶ 12)

## ARGUMENT

## I-    THE STANDARD FOR PLEADING CIVIL RICO IS VERY HIGH

The Court should dismiss Plaintiffs' civil RICO claims under 18 U.S.C. §§ 1962(c) and (d) (the "1962(c) claim" and "1962(d) claim") because Plaintiffs (i) failed to file their claims within the statute of limitations period for civil RICO claims and (ii) failed to satisfy a single element required for a 1962(c) claim.  "Although on a motion to dismiss a court must accept all factual allegations as true and draw all inferences in the plaintiff's favor, dismissal is appropriate if the plaintiff can prove no set of facts that would entitle him to relief."  *Levy v. Southbrook Intern Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001)

In addition, the standards for pleading a civil RICO claim are very high.  Indeed, "RICO is a specialized statute requiring a particular configuration of elements.  These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint."  *LeSavoy v. Lane*, 304 F. Supp.2d 520, 532 (S.D.N.Y. 2004)(citations omitted).  This is because "[c]ivil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device.  Because the mere assertion of a RICO has an almost inevitable

stigmatizing effect on those named as defendants, courts should strive to flush out frivolous

RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*,

167 F.R.D. 649, 655 (S.D.N.Y. 1996); *see also Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st

Cir. 1990)("In fairness to innocent parties, courts should strive to flush out frivolous RICO

allegations at an early stage of the litigation" as these claims are "quasi-criminal in

nature")(emphasis added); *Elsevier, Inc. v. W.H.P.R. Inc.*, 692 F.Supp.2d 297, 300 (S.D.N.Y.

2010)(same).  Ignoring the serious nature of a civil RICO claim, Plaintiffs have casually filed no

less than 3 separate civil RICO actions against both defendants, each one as meritless as the first,

with the sole purpose of continuously smearing Sater and Lauria with the "stigmatizing effect" of

civil RICO claims.  *Katzman,* 167 F.R.D at 655.

## II-   **PLAINTIFFS' CIVIL RICO CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

### A.   *The relevant start date for calculating the statute of limitations is the date when Palagonia's conviction became final*

Plaintiffs' 1962(c) and (d) claims against both Lauria and Sater are barred by the statute

of limitations.  For civil RICO claims predicated on securities fraud convictions – as is the case

here – the expiration day for filing a civil RICO action can be calculated to the day.  Under 18

U.S.C. § 1964(c), the statute of limitations for a civil RICO claim predicated on a securities fraud

conviction "shall start to run on the date on which the conviction becomes final."  Here,

Plaintiffs' predicate act underlying its civil RICO claims is aiding and abetting Palagonia's

securities fraud – which involved the alleged fraudulent sale of securities to the Plaintiffs.  (*See*

Compl. at ¶¶ 8.4.1, 25-27).  Accordingly, under 1962(c), "the statute of limitations [began] to

run on the date which [Palagonia's securities] fraud conviction became final," which was either

on June 4, 2001 when Palagonia pled guilty (*see* Complaint, Ex. M), or on December 4, 2002

when Palagonia was sentenced.  (*See U.S.A. v. Coppa et al.,* 00-CR-196 (ILG), Docket Entry No. 452).   Even using the later December 4, 2002 as the start date for the statute of limitations, the last possible day for Plaintiffs to assert a civil RICO claim against both Sater and Lauria was December 4, 2006, <u>almost 7 years before</u> the Complaint was filed.  Consequently, the Court should dismiss Plaintiff's civil RICO claims against both Sater and Lauria on statute of limitations grounds.

> **B.**     ***Plaintiffs mistakenly calculate the statute of limitations using the dates of Sater and Lauria's convictions***

In their Complaint, Plaintiffs mistakenly use the date when <u>Sater and Lauria's</u> criminal convictions – as opposed to Palagonia's – "became final" to calculate the statute of limitations (*See* Compl., at ¶ 31); *see also* 18 U.S.C. § 1964(c).  Although Sater and Lauria pled guilty on December 10, 1998, they were not sentenced until years later, on February 25, 2004 for Lauria and on October 23, 2009 for Sater, due to their years of cooperation with the government.  (*See* Compl., ¶ 96)  Consequently, the Plaintiffs assert that the statute of limitations for their civil RICO claims began to run from 2004 for Lauria and 2009 for Sater.

However, Plaintiffs' statute of limitations analysis fails on multiple grounds.  First, Plaintiffs allege that the predicate act for their civil RICO claim is aiding and abetting <u>Palagonia's</u> securities fraud.  Indeed, by Plaintiffs' own admission, it was Palagonia's securities fraud that caused Plaintiff's losses.  (*See* Compl. at ¶¶ 143-145 (Plaintiffs sustained "Trading Losses, Commission Losses, and Fees and Expenses Losses…as a result of Palagonia's unlawful conduct" and as a "direct and proximate result of Palagonia's unlawful conduct."))  So the date when Palagonia's securities fraud conviction became final should serve as the start date for calculating the statute of limitations.  Using Sater and Lauria's securities fraud conviction dates to calculate the statute of limitations would mean that Sater and Lauria's convictions would have

to be the predicate act for Plaintiffs's civil RICO claims – which they are not.  After all, Sater and Lauria cannot aid and abet their own securities fraud; they can only aid and abet someone else's securities fraud, in this case Palagonia's.  Second, Sater and Lauria's securities fraud convictions have no connection to the losses Plaintiff sustained as a result of Palagonia's sale of Holly and US Bridge stock to them.  For these reasons, the Court should disregard the convictions of Sater and Lauria when calculating the statute of limitations for Plaintiffs' claims, and use the date of Palagonia's guilty plea or sentencing as the relevant start date for calculating the statute of limitations.

**C.**   ***Plaintiffs cannot use the arbitrary date when Lauria's criminal record was unsealed as the accrual date for their civil RICO claims***

Yet, even if the Court were to use Sater and Lauria's securities fraud convictions as the predicate acts, Plaintiffs' claims are still time barred.  Sater and Lauria were convicted of securities fraud on December 10, 1998 when they pled guilty, over 14 years before Plaintiffs' filed this action.[1]  Accordingly, based on the 4-year statute of limitations for civil RICO claims, the last possible say for Plaintiffs to assert a civil RICO claim against both Sater and Lauria was December 10, 2002, over a decade before Plaintiffs filed their Complaint.

However, even if the Court were to use Sater and Lauria's sentencing dates as the date when their conviction became "final" under 18 U.S.C. § 1964(c), Plaintiffs' civil RICO claims against Lauria should still be dismissed.  Lauria was sentenced on February 25, 2004, almost 10 years ago.  In their Complaint, Plaintiffs ignore this reality and try to justify tolling the statute of

---

[1] The date of Sater and Lauria's conviction, December 10, 1998, not the dates of their sentencing, should be the date when Sater and Lauria's convictions became "final" under 18 U.S.C. § 1964(c). Plaintiffs should not be allowed to toll the civil RICO statute of limitations for years based on the fortuitous delay of Sater and Lauria's sentencing due to their years of cooperation with the government where they put their lives in jeopardy to repay their debt to society.

limitations by arguing that Lauria's criminal conviction was "illegally" sealed until 2009, and therefore, 2009 should be the applicable start date for calculating the statute of limitations.  This argument fails for a number of reasons.

 First, there is no legal authority for tolling the statute of limitations until the arbitrary time when a court record is unsealed.  Generally, the standard for determining when the statute of limitations for a civil RICO action begins to run is when the plaintiff "knew or should have known of their injury."  *Rotella v. Wood*, 528 U.S. 549, 553 (2000); *see also Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 365 (9th Cir. 2005)("The plaintiff is deemed to have had constructive knowledge of the injury if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud.").  Here, Plaintiffs should have known about their financial losses back in the 1990s when they lost their money investing in Holly and US Bridge stock.  Had Plaintiffs sued Palagonia and Blair, their broker and brokerage firm, back then and conducted basic discovery or due diligence, they would have realized that Palagonia may have had an alleged secret agreement with White Rock concerning these two stocks.  *See, e.g., Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 656 (3d. Cir. 1998)(in assessing whether the statute of limitations for a civil RICO action expired, the court noted that "[g]iven that plaintiffs purchased their properties in the 1970s, it seems likely that they should have discovered defendants' allegedly fraudulent activities prior to 1986 or 1987, when their complaints were filed.");  *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 194 (1997) (The Supreme Court holds that to use fraudulent concealment to toll the statute of limitations in a civil RICO action, plaintiffs must have been reasonably diligent in protecting their interest)  In fact, in his recent deposition, Palagonia disclosed the existence of this alleged secret agreement between Blair and White Rock.  (*See* Compl., Ex. L)  Plaintiffs could have

11

taken this very deposition years ago and discovered the same information. They did not. To allow Plaintiffs to calculate the statute of limitations based on the date when a court unsealed Lauria's conviction – rather than when they could have discovered Defendants' alleged wrongdoing - would completely exonerate Plaintiffs from their failure to conduct any due diligence about their losses at the appropriate time. *See Khlehr supra.*

Second, Lauria's conviction was made public in 2000, 13 years before Plaintiffs filed this action. In parallel federal litigation concerning whether Sater and Lauria's criminal records should remain sealed (*see* 98 CR-1101 (ILG); 12 MC 557 (BMC)), counsel to Plaintiffs argued, multiple times, that Sater and Lauria's convictions were publicly disclosed by the government in a March 19, 2000 press release. In fact, counsel to Plaintiffs used this disclosure to justify their public dissemination of Sater and Lauria's entire criminal records, including their cooperation with the government, arguing that the government could not keep sealed what it has already publicly disclosed. After making this argument, counsel to Plaintiffs should not be able to now argue that the statute of limitations for their claims should be tolled on the basis that Sater and Lauria's records were "hidden." (*See* Compl., at ¶ 31) Plaintiffs cannot have it both ways – if Sater and Lauria's conviction was already made public back in 2000, justifying the wholesale unsealing of their criminal records, then it cannot now be deemed "hidden" for the purpose of tolling the statute of limitations for their meritless civil RICO claims.

In sum, the court should dismiss Plaintiffs' claims against Sater and Lauria on statute of limitations grounds since it has been over 11 years since Palagonia's conviction was final under 1962(c), and therefore, 7 years past the expiration of Plaintiffs' civil RICO claims. Yet, even if the Court uses Sater and Lauria's securities fraud convictions as the predicate acts for Plaintiffs's civil RICO claims – which it should not based on Plaintiffs' own allegations that the relevant

predicate act is <u>Palagonia's</u> securities fraud conviction – Plaintiffs' claims are still barred by the statute of limitations since it has been over 14 years since Sater and Lauria pled guilty to securities fraud.  Finally, even if the Court uses the Sater and Lauria's sentencing dates as the start date for calculating the statute of limitations, it should still dismiss the claims against Lauria since Lauria's sentencing date was on February 24, 2004, over 9 years before Plaintiffs filed their claims.

## III-   PLAINTIFFS FAIL TO SATISFY A SINGLE ELEMENT OF THEIR CIVIL RICO CLAIMS UNDER 1962(c)

In addition to filing civil RICO claims that are barred by the statute of limitations, Plaintiffs have also ignored the basic elements of a civil RICO claim, to say nothing of the heightened pleading requirements.  To state a claim under 18 U.S.C. § 1962(c), Plaintiffs must allege that they were injured by Defendants' "(1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity." *Sedima, S.P.L.R. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)(citing the required elements and noting that plaintiff "must, of course, allege <u>each</u> of these elements to state a claim.")(emphasis added); *see also Cedar Swamp Holdings, Inc. v. Zaman*, 487 F.Supp.2d 444, 449 (S.D.N.Y. 2007)(quoting *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 520 (2d. Cir. 1994))(requiring same elements).  Plaintiffs have not satisfied a single one of these elements.

### A.   *Plaintiffs fail to allege a pattern of racketeering*

Plaintiffs have failed to allege the necessary two predicate acts against each defendant, and consequently, they have failed to allege a "pattern" of racketeering activity required to state a viable civil RICO claim.  To allege a "pattern of racketeering activity," Plaintiff must allege "at least two [predicate] acts of racketeering…the last of which occurred within ten years after the commission of a prior act racketeering activity." *18 U.S.C. § 1961(5)*; *see also World Wrestling*

*Entertainment, Inc. v. Jakks Pacific*, 530 F. Supp.2d 486, 496 (S.D.N.Y. 2007)(same).  Instead of alleging two predicate acts against each defendant, Plaintiffs allege only <u>one</u> predicate act of aiding and abetting Palagonia's securities fraud against Sater, and allege the same predicate act against Lauria.  *See, e.g., U.S. Fire Ins. Co. v. United Limousine Service, Inc.*, 303 F.Supp.2d 432, 451 (S.D.N.Y. 2004)("The elements of 1962(c) must be established as to <u>each</u> individual defendant.")(emphasis added); *World Wrestling Entertainment, Inc.*, 530 F. Supp.2d at 496 ("A RICO plaintiff must show that <u>each</u> defendant participated in the RICO enterprise by engaging in at least two predicate acts.")(emphasis added).  This falls far short of the necessary two predicate acts against each Defendant, and consequently, Plaintiffs have failed to allege any "pattern of racketeering activity."

Yet, not only have they failed to allege a "pattern," they have failed to allege a single act of "racketeering activity" against either of them.  *See 18 U.S.C. §1961(1)* (providing an exhaustive list of predicate acts that qualify as "racketeering activity").  The sole predicate act alleged in their complaint - aiding and abetting securities fraud  - is <u>not</u> a viable predicate act for racketeering purposes.

The Second Circuit in *MLSMK Investment Co. v. JP Morgan Chase & Co.* held that aiding and abetting securities fraud could not serve as a predicate act for a civil RICO claim. 651 F.3d 268, 280 (2d Cir. 2011).  Under section 107 of the Private Securities Litigation Reform Act ("Reform Act") – the section concerning civil RICO claims -  "no person may rely upon any conduct that would have been actionable as securities fraud in the purchase and sale of securities" to establish a civil RICO claim.  *18 U.S.C. § 1964(c)*(the "RICO Amendment").  The Second Circuit construed the phrase "any conduct" in the RICO Amendment broadly and held that any conduct that could serve as a basis for a securities fraud claim – even if plaintiff labels

the conduct as another claim, such as mail and wire fraud or <u>aiding and abetting securities fraud</u> – cannot serve as a predicate act for a civil RICO claim under the RICO Amendment. *MLSMK,* 651 F.3d at 278.

Nevertheless, in the face of the Second Circuit's unambiguous decision in *MLSMK,* plaintiffs argue that aiding and abetting Palagonia's securities fraud is a viable predicate act, citing the exception to the RICO Amendment, which permits a plaintiff to use securities fraud as a predicate act as long as "the person is criminally convicted in connection with the fraud." (*See* Compl., at ¶¶ 23-24)(citing *18 U.S.C. § 1964(c)*).  Logically, this argument fails.

<u>First</u>, Sater and Lauria were <u>not</u> <u>convicted</u> of aiding and abetting securities fraud.

<u>Second</u>, while it is true that Palagonia – the broker whose securities fraud Sater and Lauria allegedly aided and abetted – was convicted of securities fraud, Plaintiffs cannot apply the exception to the RICO Amendment to his conviction.  Indeed, Plaintiffs cannot use someone else's securities fraud conviction – i.e., Palagonia's – as a predicate act for a civil RICO claim <u>against Sater and Lauria</u>.  This would turn the RICO Amendment on its head, allowing plaintiffs to circumvent the RICO Amendment's bar against using conduct underlying securities fraud claims by piggy-backing on someone else's securities fraud conviction to bring a civil RICO claim.

<u>Third</u>, the purpose of the Reform Act – and, by extension, the RICO Amendment – was to curtail securities fraud abuses, not expand them.  Specifically, the Second Circuit in *MLSMK* noted that "it is clear from the Senate Report…that the RICO amendment would place some claims  - such as aiding and abetting securities fraud violations – <u>outside the reach of private civil RICO suits</u>." 651 F.3d at 279 (emphasis added); *see also Sissel v. Rehwaldt*, 2013 WL 2372296, *3 (2d. Cir. June 3, 2013)(the Second Circuit confirms its decision in *MLSMK* again,

holding that "this Court squarely held that section 107 of the PSLRA bars civil RICO claims based upon alleged predicate acts of securities fraud, including aiding and abetting"). Furthermore, Congress "considered testimony endorsing the result in [the Supreme Court's decision in] *Central Bank* and testimony seeking to overturn that decision"[2] and "believe[d] that amending the Exchange Act to provide explicitly for private aiding and abetting liability actions under Section 10(b) would be contrary to the [RICO Amendment's] goal of reducing meritless securities litigation." 651 F.3d at 279. In short, Congress's failure to provide for aiding and abetting liability for Section 10(b) claims and for civil RICO claims was intentional.[3] Consequently, plaintiffs cannot use aiding and abetting securities fraud as a predicate act.

**B.    *Plaintiffs fail to allege Sater and Lauria's "conduct" in the alleged Blair Enterprise***

Additionally, Plaintiffs fail to allege Sater or Lauria's "conduct" in the alleged Blair Enterprise. To satisfy Section 1962(c)'s "conduct" requirement, Plaintiffs must allege that Sater and Lauria participated in the "operation and management" of the alleged Blair enterprise – a standard confirmed by the Supreme Court. *See Reves v. Ernst & Young*, 507 U.S. 170, 183

---

[2] The Supreme Court in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* held that no civil aiding-and-abetting liability exists under section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"). 511 U.S. 164, 177-78 (1994).

[3] Plaintiffs argue that 18 U.S.C. § 2 means that they are entitled to allege a predicate act involving aiding and abetting. This argument fails for two reasons. First, 18 U.S.C.§ 2 concerns aiding and abetting criminal activity. *18 U.S.C. § 2* (prohibiting offenses "against the United States")(emphasis added); *see also Central Bank,* 511 U.S. at 176 & 190 (1994)(calling 18 U.S.C.§ 2 a "general criminal aiding and abetting statute" and holding that a violation of 18 U.S.C.§ 2 for criminal violation of the Exchange Act does not necessarily follow that a private civil aiding and abetting cause of action must also exist.) Second, if 18 U.S.C. § 2 could be used to automatically provide for aidor and abettor liability for every civil action permitted by statute, then the Supreme Court in *Central Bank* would have used 18 U.S.C. § 2 as a basis to impose aiding and abetting liability for Section 10(b) violations under the Exchange Act. It did not. In fact, the Supreme Court explicitly rejected the argument that 18 U.S.C. § 2 could serve as a basis for imposing aiding and abetting securities fraud when Section 10(b) itself did not explicitly provide for such liability. *See Central Bank,* 511 U.S. at 177; *see also Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d at 657 ("[R]eference to 18 U.S.C. § 2 cannot provide the basis for the imposition of civil liability for aiding and abetting a RICO violation."). Consequently, Plaintiffs cannot use 18 U.S.C. § 2 as a basis for alleging aiding and abetting securities fraud as a predicate act for their civil RICO claim.

(1993)(holding that the "operation or management" standard is confirmed by the "legislative history" of civil RICO). "In this Circuit, the 'operation and management' test is an extremely rigorous test." *See U.S. Fire Ins. v. United Limousine Service, Inc.*, 303 F. Supp.2d 432, 451 (S.D.N.Y. 2004); *see also Redtail Leasing, Inc. v. Belleza*, 2001 WL 863556, at * 4 (S.D.N.Y. Jan. 21, 1999)(The operation and management test is "a very difficult test to satisfy"). Indeed, "[t]here is a substantial difference between actual control over an enterprise and association with an enterprise in ways that does not involve control; only the former is sufficient under *Reves* because the test is not involvement but control." *U.S. Fire Ins.,* 303 F. Supp.2d at 451; *see also West 79th Street v. Congregation Kahl Michas Church*, 2004 WL 2187069, *14 (S.D.N.Y. 2004)(dismissing complaint which "contains no factual allegations concerning the degree of discretionary authority or control" exercised by defendants); *Biofeedtrac, Inc. v. Kolinaor Optical Enter. & Consultants, S.R.L.,* 832 F. Supp. 585, 591 (E.D.N.Y. 1993)("liability under § 1962(c) may not be imposed on one who merely 'carries on' or 'participates' in an enterprise's affairs")(quoting the Supreme Court in *Reves*).

Neither the Complaint – nor its voluminous exhibits – alleges any "authority" or "control" by Sater and Lauria over the Blair enterprise.  In fact, Plaintiffs do not even allege a single fact concerning Sater and Lauria's involvement in the single, alleged agreement between the White Rock and Blair enterprises that serves as the basis for Plaintiffs' entire civil RICO claims.  Nor do Plaintiffs allege a single communication, written or oral, between or among Lauria, Sater, Blair and Palagonia.  *See, e.g., Frooks v. Town of Cortland*, 997 F. Supp 438, 457 (S.D.N.Y. 1998)(in mail or wire fraud, plaintiff "must plead the time, place, speaker and content of the alleged fraudulent misrepresentation."). Rather, Plaintiffs allege that White Rock entered into "secret agreements," lazily imputing every action of White Rock onto Sater and Lauria, but

17

failing to allege what role Sater and Lauria specifically played in those secret agreements.  *See, e.g., Katzman,* 167 F.R.D at 658 ("[U]nder 1962(c), the culpable 'person' (defendants) and the 'enterprise' must be distinct."); *Carmona v. Spanish Broadcasting Sys., Inc.*  2009 WL 890054, *9 (S.D.N.Y. March 30, 2009)("complaint fails to allege the proper distinction between 'person' and 'enterprise' involved in the racketeering activity.").  Without any allegations concerning Sater and Lauria's role in the Blair Enterprise, or any distinction between the actions of White Rock and Defendants, Plaintiffs fail to allege the requisite "conduct" required for a civil RICO claim.

Predictably, Plaintiffs will likely refer the Court to Sater and Lauria's criminal convictions, the entirety of which they gratuitously attach as Exhibits to the Complaint.  This misses the point.  *See, e.g., LeSavoy* 304 F.Supp.2d at 532 (S.D.N.Y. 2004)("RICO is a specialized statute requiring a particular configuration of elements.  These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint."); *West 79th St. Corp.,* 2004 WL 2187069, at * 5 ("Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in the complaint is inadequate" to state a civil RICO claim); *Williams v. WMX Techs, Inc.,* 112 F.3d 175, 178 (5th Cir. 1997)("A complaint can be long-winded, even prolix, without pleading particularity.  Indeed, such a garrulous style is not an uncommon mask for an absence of detail.")  Sater and Lauria's criminal history involve their conduct as employees of <u>White Rock</u>, as opposed to the Blair enterprise, which is the only enterprise relevant for Plaintiffs' civil RICO claims.  However, the Complaint fails to allege any role – or even a single action taken – by Sater or Lauria in the operation and management of the Blair enterprise.  Consequently, they have failed to allege the requisite "conduct" by Sater and Lauria.

**C.**     *Plaintiffs fail to even allege the existence of a Blair/White Rock Enterprise*

Plaintiffs also fail to allege the existence of any combined Blair/White Rock enterprise. 18 U.S.C. § 1961(4) defines enterprise "as any individual, partnership, corporation, association or other legal entity and any union or group of individuals associated in fact although not a legal entity." To successfully plead an enterprise, plaintiffs must allege that the enterprise is an "ongoing organization" and "function[s] as a continuing unit." *West 79th St.,* 2004 WL 2187069, at *5. Rather than plead a single relevant criminal enterprise, Plaintiffs have pled two distinct ones, the alleged White Rock Enterprise and the alleged Blair Enterprise, with no connection between the two aside from a single agreement to sell two separate stocks. *See, e.g., Grau Miller Dev. Corp. v. Colonial Bank Trust,* 927 F.2d 988, 992 (7th Cir. 1991)(explaining that mere references to plans and schemes are too conclusory to satisfy Rule 9(b)); *Atl. Gypsum v. Lloyds Int'l Corp.,* 753 F. Supp. 505, 512 (S.D.N.Y. 1990)(allegations that "loan transaction was part of a scheme by all defendants to gain control of a venture was inadequate" as the complaint "set forth no facts from which the existence of such a scheme reasonably can be inferred."). As such, they have failed to adequately allege a combined criminal enterprise relevant for their civil RICO claims.

**D.**     *Plaintiffs fail to allege how Sater and Lauria were the proximate cause of their injuries*

Beyond their failure to allege the specific elements of civil RICO, Plaintiffs have failed to allege causation. The RICO statute "limits standing to plaintiffs whose injuries were both factually and proximately caused by the RICO violation." *In re Am. Express Co. Shareholder Litig.,* 39 F.3d 395, 399 (2d Cir. 1994)(citations omitted); *see also Vicon Fiber Optics v. Srivo,* 201 F.Supp.2d 216, 219 ("A predicate act does not proximately cause an injury if it merely

further, facilitates, permits, or conceals an injury that happened or could have happened."); *West 79th St*, 2004 WL 2187069, at *4 (S.D.N.Y. 2004)("To state a claim for civil damages under RICO, a plaintiff has a twofold pleading burden...plaintiff must allege that the defendant has violated the substantive RICO statute...[and] that plaintiff...was injured in his or her business or property by reason of the violation of Section 1962.")  "The Second Circuit applies a two-prong test to determine the existence of proximate cause." *Gilfus v. Vargason*, 2006 WL 2827658, at *6. <u>First</u>, Plaintiffs' injury must result from the defendant's racketeering activity or commission of the RICO predicate acts. *Baisch v. Gallina*, 346 F.3d 366, 373 (2d. Cir. 2003)("[A] plaintiff does not have standing under RICO if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity.")  <u>Second</u>, the Court must determine whether the defendants' acts were "'a substantial factor in the sequence of responsible causation,' and whether the plaintiff's injury was reasonably foreseeable or anticipated as a natural consequence." *Baisch*, 346 F.3d at 373-74 (citations omitted).

Here, Plaintiffs have satisfied neither either prong of the Second Circuit's test.  Plaintiffs allege that Blair and Palagonia, <u>not</u> Sater and Lauria, are responsible for the fraudulent sale of Holly and US Bridge stock to them, even admitting that Blair and Palagonia are the proximate cause of their injuries. (*See* Compl. ¶¶ 143-45)(admitting that plaintiffs sustained Trading, Commission, and Fee and Expenses Losses "as a result of" and "as a direct proximate result of Palagonia's unlawful conduct")  As plaintiffs further admit, Sater and Lauria never even met the Gottdieners, never serviced their accounts, nor solicited their business. (*See* Compl. ¶ 25)("[F]or all we know...Defendants never heard of Plaintiffs...")  The only allegation connecting Sater and Lauria to Plaintiffs is the alleged secret agreement between White Rock and Blair to sell the same two stocks.  Even assuming the existence of this secret agreement, Plaintiffs fail to allege

that Sater or Lauria were a "substantial factor" in Palagonia's sale of Holly and US Bridge securities to Plaintiffs, for purposes of causation.  Simply put, there is no allegation that "but for" Sater and Lauria's conduct, Palagonia would not have sold the same two stocks – or even two different stocks – to Plaintiffs, causing them to sustain financial losses.  *See, e.g., Vicon Fiber Optics,* 201 F.Supp.2d at 218 ("A RICO complaint must allege both that defendants' alleged RICO violation was the 'but for' cause or cause-in-fact of plaintiff's injury and that the violation was the legal proximate cause.")  Consequently, Plaintiffs have failed to allege how Sater and Lauria were the proximate cause of their financial losses.

## IV-     BECAUSE PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF 1962(C), THEIR CLAIM UNDER 1962(D) MUST ALSO FAIL

The Court should also dismiss Plaintiffs' section 1962(d) conspiracy claim because they fail to adequately plead a claim under Section 1962(c).  Under section 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), (c)" of section 1962.  *18 U.S.C. s 1962(d).*  When a claim fails to plead facts that satisfy the pleading requirements under Section 1962(c) – as is the case here – it necessarily dooms any claim Plaintiffs have under Section 1962(d).  *See, e.g., West 79th St.,* 2004 WL 2187069, at *16; *see also Beck v. Proupis,* 529 U.S. 494, 496 (2000)(holding that a plaintiff suing under 1962(d) must allege a predicate act under 1961(1) as its overt act in its conspiracy claim).  Since Plaintiffs have not alleged any of the elements of a civil RICO claim under 1962(c), their RICO conspiracy claim under 1962(d) should also be dismissed.

## V-     DEFENDANTS RESERVE THE RIGHT TO MOVE FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

Sater and Lauria reserve the right to move under Rule 11 for sanction against counsel to Plaintiffs for filing a frivolous civil RICO action against Defendants, their third civil RICO

21

action against Defendants in the past <u>three</u> years.  Sanctions under Federal Rule of Civil

Procedure 11 ("Rule 11") are appropriate, especially in meritless civil RICO actions, but "must

be made separately from any other motion..."   *Fed. Rule Civ. Proc. 11; see also Katzman,* 167

F.R.D. at 660 ("Rule 11's deterrence value is particularly important in the civil RICO context, as

the commencement of a civil RICO actions has an almost inevitable stigmatizing effect on those

named as defendants.")(citations omitted); *O'Malley v. N.Y.C. Transit Authority,* 896 F.2d 704,

709 (2d. Cir. 1990)(imposing sanctions for filing frivolous RICO action); *Levy v. Aaron Faber,*

*Inc.*, 148 F.R.D. 114, 123 (S.D.N.Y. 1993)(imposing sanctions where "even a cursory

investigation into the pleading requirements for RICO would have revealed the inadequacy of

[plaintiff's] RICO pleading"); *Mcloughlin v. Altman,* 1995 WL 640770, *2 (S.D.N.Y. Oct. 31,

1995)("Another example of [plaintiff's] violation of the 'frivolous' clause…is his failure to

properly plead a single element of a sustainable RICO claim…manifesting a total lack of legal

research and preparation on the part of plaintiff's attorney.").

Plaintiffs present civil RICO action fails to satisfy even the most basic elements of a civil

RICO claim, and worse yet, was brought 17-19 years after the relevant events occurred.  Counsel

to Plaintiffs have brought this action  - and the other two civil RICO actions (*Kriss et al. v.*

*Bayrock Group et al.,* 10 civ 3959; *Kriss et al. v. Bayrock Group et al.,* 13 civ. 3905) – for no

other reason that "to harass, cause unnecessary delay, [and] needlessly increase the cost of

litigation." *Fed. Rule Civ. Proc. 11*   For proof of their improper motives in filing these actions,

the Court simply has to examine counsel's conduct during the past three years before the federal

courts, including the Second Circuit.  (*See, e.g.,* Letter from Nader Mobargha to Judge Schofield,

10 civ 3959, dated April 18, 2013 (detailing some of counsel's conduct during the past three

years)).  Consequently, Sater and Lauria reserve the right to move for sanctions against counsel to Plaintiffs at a later time.

## CONCLUSION

Plaintiffs have brought three civil RICO actions in the last three years, each one as meritless as the previous one.  In this civil RICO action, Plaintiffs' claims are barred by the statute of limitations, as they concern actions that occurred 17-19 years ago.  Furthermore, they have failed to satisfy a single element of a civil RICO claim.  They brought the present action for no purpose other than to harass, humiliate and extort defendants Sater and Lauria, as they have done for the past three years in parallel federal litigation.  Consequently, we respectfully move this Court to dismiss this action in its entirety with prejudice.  Finally, Sater and Lauria reserve the right to move for sanctions under Rule 11 for counsel's frivolous filings.


Dated:  New York, New York
         August 27, 2013


                              BEYS, STEIN, MOBARGHA & BERLAND LLP

                              Nader Mobargha, Esq. (NM7162)
                              The Chrysler Building
                              405 Lexington Avenue, 7th Floor
                              New York, New York 10174
                              Telephone:  (646) 755-3603
                              Facsimile:   (646) 755-3599
                              Email:  nmobargha@beysstein.com
                              *Attorneys for Defendants*