**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESTATE OF ERNEST GOTTDIENER, ESTATE OF JUDIT GOTTDIENER, ERVIN TAUSKY, and SUAN INVESTMENTS<br>*Plaintiffs*<br><br>vs.<br><br>FELIX SATER and SALVATORE LAURIA<br>*Defendants* | 13-CV-1824 (LGS)<br><br>**<u>MOTION TO DISMISS</u>**<br><br>**OPPOSITION AND CROSS-MOTION**<br><br>**AFFIRMATION AND MEMORANDUM** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**---**
**PLAINTIFFS' CROSS-MOTION TO STRIKE AND TO EXCLUDE FACTS OUTSIDE THE COMPLAINT OR HOLD DISCOVERY**
**---**
**ORAL ARGUMENT WILL BE REQUESTED BY ECF LETTER**

**FED. R. CIV. P. §§12, 24(B)(2), 56**

**FREDERICK M. OBERLANDER**
**LAW OFFICE OF FREDERICK M. OBERLANDER, PC**
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Telephone:  (212) 826-0357
Facsimile:  (212) 202-7624
Email:  fred55@aol.com

*Counsel for Plaintiffs*

**RICHARD E. LERNER**
**LAW OFFICE OF RICHARD E. LERNER, PC**
255 West 36th Street, Suite 800
New York, NY 10018
Telephone:  (917) 584-4864

Email:  richardlerner@msn.com

*Co-Counsel for Plaintiffs*

## TABLE OF AUTHORITIES

### Cases

*Aguilera-Enriquet v. INS*, 516 F.2d 565, 571 (6th Cir. 1975)..............................................26

*Baisch v. Gallina*, 346 F.3d 366, 376-77 (2nd Cir. 2003) ..................................................19

*Beck v. Prupis*, 529 US 494 (2000) ..............................................................................17

*Beisler v. Commissioner*, 814 F.2d 1304 (9th Cir. 1987) ..................................................25

*Berman v. United States*, 302 U.S. 211, 212 (1937) ........................................................25

*Bridge v. Phoenix* 128 S.Ct. 2131 (2008) .......................................................................7

*Central Bank v. First Interstate*, 511 U.S. 164 (1994) .......................................................9

*Davis Lee Pharmacy v. Manhattan Cent.*, 327 F. Supp.2d 159 (EDNY 2004) .....................19

*Fezzani v. Bear Stearns*, 99-CV-0793 ............................................................................3

*Flynt v. Ohio*, 451 U.S. 619 (1981).................................................................................25

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)...............21

*MCM Partners v. Andrews-Bartlett & Assocs.*, 62 F.3d 967 (7th Cir. 1995) ..........................16

*Miller v. Aderhold*, 288 U.S. 206, 210-11 (1933) .............................................................25

*MLSMK v. JP Morgan*, 651 F.2d 268 (2nd Cir. 2011) ........................................................6

*Nat'l Mortg. v. Trikeriotis*, 201 F.Supp. 499 (D.C.MD. 2002)............................................21

*Parr v. United States*, 351 U.S. 513 (1956) .....................................................................25

*People v. D. H. Blair et al*, No. 3282/2000, NY Supreme Ct., NY Cty..................................22

*Schwab v. Philip Morris*, 449 F.Supp. 992 (EDNY 2006) .................................................19

*SEC v. Norton*, 21 F.Supp.2d 361 (SDNY 1998) .............................................................10

*SEC v. Zandford*, 535 U.S. 813 (2002) ..........................................................................12

*Smith v. Berg*, 247 F.3d 532 (3rd Cir. 2001) ...................................................................18

*States v. Gottlieb*, 817 F.2d 475, 476 (8th Cir. 1987) .......................................................26

*Strayer v. Bare, 2008 WL 1924092 (M.D. Pa.)* ...............................................................19

*Superintendent v. Banker's Life*, 404 U.S. 6 (1971) ............................................................9

*Teague v. Lane*, 489 U.S. 288, 314 n. 2 (1989) ...............................................................25

*U.S. v. Coppa et al.*, 00-CR-196 EDNY..........................................................................22

*U.S. v. Daidone*, 471 F.3d 371 (2nd Cir. 2006) ...............................................................15

*U.S. v. Diaz*, 176 F.3d 52 (2nd Cir. 1999) ......................................................................15

*U.S. v. Salvatore Lauria*, 98-CR-1102 EDNY .................................................................22

*U.S. v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998) ..........................................................16

*U.S. v. Pinkerton*, 328 US 640 (1946)............................................................................17

*U.S. v. Felix Sater*, 98-CR-1101 EDNY .........................................................................22

*U.S. v. Sasso*, 230 F.Supp.2d 275 (EDNY 2001) ............................................................19

*U.S. v. Zichettello*, 208 F.3d 72 (2nd Cir. 2000) ..............................................................19

*Zito v. Leasecomm Corp.*, 2004 WL 2211650 (SDNY) .....................................................19

## Statutes

§10(b) .......................................................................................................................... 4

§21(d) .......................................................................................................................... 9

§78t(e) ........................................................................................................................ 10

15 U.S.C. §78ff .......................................................................................................... 11

15 U.S.C. §78j ...................................................................................................... 4, 11

15 U.S.C. §78t(e) ......................................................................................................... 6

15 U.S.C. §78u(d) ........................................................................................................ 9

18 U.S.C. §1341 ......................................................................................................... 11

18 U.S.C. §1343 ......................................................................................................... 24

18 U.S.C. §1956 ......................................................................................................... 24

18 U.S.C. §1957 ......................................................................................................... 24

18 U.S.C. §1961 ........................................................................................................... 9

18 U.S.C. §1962 ........................................................................................................... 4

18 U.S.C. §1964 ......................................................................................................... 10

18 U.S.C. §2 .......................................................................................................... 4, 6

18 U.S.C. §371 ........................................................................................................... 11

28 U.S.C. §1746 ......................................................................................................... 27

## Other Authorities

§9163 ......................................................................................................................... 26

141 Cong. Rec. §9150 ............................................................................................... 26

141 Cong. Rec. S17991 ............................................................................................. 26

S17992 ....................................................................................................................... 26

## Rules

12(b)(6) ..................................................................................................................... 18

Fed.R.App.P. 4(b) ..................................................................................................... 25

Fed.R.Crim.P. 32(d) ................................................................................................. 25

Rule 10(b)-5 ................................................................................................................ 5

Rule 15(a)(2) .............................................................................................................. 27

Rule 9(b) ................................................................................................................ 4, 20

## Treatises

3 L. Loss, Securities Regulation 1763 (1961) ............................................................ 9

6 L. Loss, Securities Reg. 3869 (1969) ...................................................................... 9

## Regulations

17 C.F.R. 240.10b-5 .................................................................................................... 8

## PREFACE

The First Amended Complaint ("FAC") alleges that 17 years ago Defendants and others for years operated a scheme to defraud investors. Some were enforcers, some money launderers, some brokers or principals at brokerages White Rock, Blair, Baron, and Barclay. The scheme operated like this: One brokerage, often White Rock, artificially inflated prices of penny stocks of no intrinsic value, while it, or its principals, held undisclosed positions, then sold shares at pumped-up prices to *its* customers and bribed brokers in the scheme at Blair, Baron, and Barclay to sell shares to *theirs*, along with whatever other pumped-up stocks they were also stuffing on their customers without White Rock's bribes. Plaintiffs are victims, *inter alia*, of one such brokers, Al Palagonia at Blair. They lost $7,000,000, part on two stocks, Holly and Bridge, which White Rock bribed Palagonia to stuff on his Blair victims while they stuffed it on theirs and covertly profited from the run-up. Palagonia was convicted and sentenced for federal securities fraud and state RICO, Defendants for federal RICO.

Plaintiffs sued Defendants, each a White Rock principal, in RICO, claiming against them, *inter alia*, for violating *substantive* RICO by operating a racketeering enterprise at White Rock through a pattern of predicate acts including both aiding and abetting and conspiring with Palagonia's securities frauds, and violating *conspiracy* RICO by agreeing with Palagonia to facilitate *his* racketeering at Blair.

Defendants moved to dismiss, saying the claims are frivolous, you can't sue in RICO for aiding and abetting securities fraud, and 17 years is too far in the past. Plaintiffs hereby respond, but before we get into it, we ask: Why didn't Defendants reveal what the Court may take judicial notice of, that just next door an SDNY judge is hearing a RICO case, *Fezzani v. Bear Stearns*, 99-CV-0793, *from the <u>same</u> 17-year-old scheme*, though re Baron, not Blair, its complaint apparently properly alleging, *inter alia, <u>RICO predicate acts of aiding and abetting securities fraud</u>*? Did they overlook this, or did they know of but "forget" to mention it as they *knew* that, like Plaintiffs, <u>*every Baron plaintiff there has viable aid and*</u> <u>*abetting and conspiracy RICO claims against Sater here*</u> **and** <u>*is a crime victim defrauded out of mandatory restitution*</u>?

## SUMMARY

Stripped of the inevitable invective, Defendants' Motion to Dismiss (the "Motion") is significantly indecipherable. We believe the problem is largely their inability (or refusal) to present their objections of failure to state a claim as RICO issues. For example, there is significant confusing argument that 18 U.S.C. §2, the aid and abettance statute, doesn't provide civil liability, and that under *Central Bank* Plaintiffs couldn't sue in §10(b) (15 U.S.C. §78j) for aiding and abetting securities fraud or for conspiracy to commit securities fraud. None of that is relevant, for Plaintiffs aren't asserting civil liability based on any of those statutes, but rather for the same conduct underlying those statute plus additional conduct, i.e. pattern enterprise operation, pursuant to 18 U.S.C. §1962(c) ("RICO").

In a phrase, Defendants are moving to dismiss in checkers while we're suing them in chess.

*****

Accordingly we present this opposition by *proving* the validity of our FAC, with a general argument section that establishes our right to sue in RICO for conduct such as aiding and abetting securities fraud and securities fraud conspiracy even though such conduct would not be actionable outside RICO. We do that in the GENERAL ARGUMENT section and a few breakout sections.

Next, we present a brief paradigm to explain substantive and conspiracy RICO in general.

Then, we explain why common sense and solid federal appellate precedent provide that where, as here, Defendants have already been convicted and sentenced for the exact same criminal fraud Rule 9(b) and most other pleading requirements are inapplicable as notice etc. already exists.

Finally, we combine sections and cross-reference to the Complaint and documents incorporated into it to show that we pled proper RICO claims, although nothing is incapable of improvement and we suggest where amendment might be appropriate, obviously only if the Court finds it necessary to begin with. Limitations and damages issues are disposed of in separate sections, as is the cross-motion to exclude Defendants' use of facts outside the FAC.

## GENERAL ARGUMENT

**It's the Conduct, not the Crime**

The FAC alleges Plaintiffs were victimized by Defendants who, with others, operated a years-long scheme to defraud them, and other, brokerage customer investors. Now, most attorneys reading that sentence, or the whole FAC, would think, "Securities fraud." They'd think §10(b), or Rule 10(b)-5, or the equivalent in Blue Sky or common law fraud. And they'd be right. Clearly the conduct described in that paragraph is *actionable* as securities fraud. But that doesn't mean it *is* securities fraud.

For example, would anyone believe it possible to pull off that scheme for years without the participants mailing a letter, or making a call? Of course not. Common sense says the brokerages had to mail statements to their victim clients and call them to coerce them into buying. So the conduct described in that FAC is also *actionable* as mail and wire fraud, but that doesn't mean it *is* mail or wire fraud, either. Just as a horse is a horse notwithstanding it can be *used* as transportation or food, conduct is conduct notwithstanding it can be *used* to prosecute for securities fraud or for mail fraud.

"Horse" is what a thing *is*. "Usable as food" and "usable as transportation" are some of its *properties*. Similarly, "conduct" is what a thing *is*, and "actionable as securities fraud," "actionable as mail fraud," and "actionable as wire fraud" are some of its *properties*. This is the most important theme in this case, because Defendants' conduct in their operation of the scheme may be *used* by Plaintiffs and others in different ways, conveying different rights, but no matter what, it *is* conduct, not crime. For example, ignoring limitations periods for now, Plaintiffs can use Defendants' conduct:

- As a basis to sue them in common law fraud
- As a basis to sue them in §10(b) securities fraud
- As a basis to sue them in RICO predicated on securities fraud
- As a basis to sue them in RICO predicated on aiding and abetting securities fraud
- As a basis to sue them in RICO predicated on securities fraud conspiracy
- As a basis to sue them in RICO predicated on mail or wire fraud
- As a basis to sue them in RICO predicated on mail or wire fraud conspiracy

The requirements differ, but they share in common that each is a *property* of Defendants' conduct, *not* the conduct itself. That is key, as we agree that the limitations period is such that we may only sue in RICO, and only for claims predicated on conduct actionable as fraud in the purchase or sale of securities. That is, we may only sue for claims subject to the "PSLRA bar," *infra*, a statutory provision barring those claims but which doesn't apply here because of the "conviction exception," another statutory provision which removes the bar where the persons being sued have been criminally convicted in connection with the fraud, as is the case here, and greatly extends the limitations period.

The PSLRA bar applies to conduct actionable as securities fraud by *anyone*, including the SEC, not just Plaintiffs. *MLSMK v. JP Morgan*, 651 F.2d 268 (2nd Cir. 2011) makes clear the bar applies to aiding and abetting securities fraud, which means (contrary to what Defendants say) that because the SEC can sue for aid and abettance, 15 U.S.C. §78t(e), so can private RICO plaintiffs, 18 U.S.C. §2 – so long as the defendants have first been convicted of a crime in connection with the fraud.

**RICO Requires Conduct *Actionable* as Crime, *not* Crime**

The SEC's authority to sue civilly for aid and abetting is §78t(e), which expanded §78j, the codification of §10(b), but Plaintiffs' is in 18 U.S.C. §2, the aid and abettance statute, with §78ff (willful violation of securities laws) the primary crime. That's because Plaintiffs are suing in RICO, and the sole basis for a suit in RICO is that Defendants have committed, in enterprise pattern, at least two acts of *conduct **actionable as a crime***. RICO does *not* say, "You can sue defendants if they've committed certain crimes." It can be read that way, it's not wrong, but it's dangerous, creating the idea that RICO is grafting civil liability onto separate criminal statutes that themselves don't provide it, like aid and abettance, mail fraud, conspiracy, etc.. That produces the dross in the Motion, "You can't sue in RICO for aid and abettance because the aid and abettance statute has no civil remedy."[1]

---

[1] Neither do most of the other standalone criminal statutes incorporated by reference into RICO for use as

Remember *Sunset Boulevard*:

| | |
|---|---|
| **Joe Gillis:** | **You're Norma Desmond. You used to be in silent pictures. You used to be big.** |
| **Norma Desmond:** | **I *am* big. It's the *pictures* that got small.** |

RICO used to be simple. It *is* a simple. It's the *lawyers and courts* that got complicated. RICO, like every other statute, proscribes courses of conduct, dozens of them, and provides criminal and civil penalties for violating those proscriptions. And rather than spell out the proscribed conduct in thousands of words, some of it is defined by incorporating by reference the text of standalone criminal statutes. But RICO isn't providing civil liability for violating those statutes, it's providing civil liability for conduct taken *during operation of an enterprise through a pattern of such conduct*, even though the same conduct, with or without the pattern, also provides standalone criminal liability.

Conduct *is* conduct. It's utilities to prosecute crimes are *properties*. If one mails a letter to further a scheme, gives assistance to someone operating a scheme, or agrees with someone to operate a scheme, those courses of conduct have the property of (1) being usable to prosecute standalone crimes, but do not have the property that they can be used to establish federal civil liability. But if one mails the letter, gives assistance, or agrees, in the course of operating an enterprise through a pattern of such conduct, then those *same* courses of conduct now have the *additional* properties of (2) being usable to prosecute in criminal RICO *and* (3) being usable to establish liability in civil RICO.

Put differently, those courses of conduct are *necessary and sufficient* for prosecution as standalone crimes of mail fraud, aid and abettance, and conspiracy, but are *necessary but not sufficient* for

---

defining proscribed courses of conduct under §1962, such as mail fraud. Yet in *Bridge v. Phoenix* 128 S.Ct. 2131 (2008), a unanimous Supreme Court affirmed a 7th Circuit holding that a RICO complaint properly pled in civil RICO, and plaintiffs had standing to assert it, where the predicate crimes were mail fraud. It should be fascinating to hear Defendants explain how mail fraud works but aiding and abetting doesn't, and it's not because of the PSLRA bar, as all that does is add an additional requirement of a prior conviction where the underlying conduct is actionable as securities fraud. In any event, we have also claimed in RICO in mail fraud. See main text discussion of the FAC. And mail fraud is easier to prove than securities fraud.

prosecution as RICO crimes or for suit for RICO civil liability. For that you need more, you need the commission of those courses of conduct during the course of operating an enterprise in a pattern. The PSLRA? All *that* does is add another thing *necessary* for suit for RICO civil liability *sufficiency* where, as here, the conduct is actionable as securities fraud, *viz.* a prior conviction, which we *have* here.[2]

In short, private plaintiffs can't sue defendants federally for conduct actionable as aiding and abetting, or conspiring to commit, securities fraud, by itself, *but they can* if defendants committed that conduct in the course of participating in the operation of an enterprise through a pattern of that, or similar, conduct, so long as they were convicted of a crime in connection with the fraud.


### CIVIL SUITS IN RICO LIE FOR CONDUCT "ACTIONABLE AS FRAUD IN THE PURCHASE OR SALE OF SECURITIES" IF THE CONDUCT IS PROSECUTABLE AS AN OFFENSE "INVOLVING FRAUD IN THE SALE OF SECURITES"

We set forth that the law allows Plaintiffs, because of Defendants' prior convictions, to sue Defendants for, *inter alia*, secondary liability in aiding and abetting securities fraud and conspiracy to commit securities fraud, as well as primary liability in securities fraud and mail and wire fraud and secondary liability in both aiding and abetting mail and wire fraud. All discussion is as to *federal* claims.

**The History of the Private Right(s) of Action for Securities Fraud**

§10b of the Securities Exchange Act, at 15 U.S.C. §78j, and Rule §10b-5, at 17 C.F.R. 240.10b-5, are the traditional bases by which plaintiffs bring actions for fraud in the purchase or sale.

---

[2] 18 U.S.C. §1964(c), the "PSLRA bar" in italics and the "conviction exception" in bold for convenience:

> Any person injured in his business or property by reason of a violation of section **1962**… may sue therefor… *except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962*. **The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.**

§10(b) does not expressly provide a right of action for *anyone.* §21(d), at 15 U.S.C. §78u(d), by incorporation of 10(b) expressly provides such right to the SEC, but no statute besides RICO at §§1961(D) and 1964(c) expressly provides the right to bring a *private* civil action for conduct actionable as fraud in the purchase or sale of securities. Nevertheless, by the middle of the 20th century it was settled decisional law that 10(b) implied a private right of action[3]. The question was, "What are the metes and bounds of that right; that is, what are the *properties* of the course(s) of conduct it prohibits?"

By the time of the Supreme Court's decision in *Central Bank v. First Interstate*, 511 U.S. 164 (1994), many Circuits had found the scope of the implied 10(b) right of action included the right to sue privately not only primary violators, those who directly misstate or omit material facts, but also secondary violators, particularly aiders and abettors, who do not directly misstate or omit, but who facilitate the primary violator's misstatement or omission[4]. The SEC had also asserted the right to bring civil enforcement actions against secondary, aiding and abetting violators.

**_Central Bank_ Eliminates Aid and Abettance as an
Implied Right of Action, in Private §10(b) Actions
But Leaves It Intact in Private RICO Actions**

*Central Bank* changed that by refusing to find in the text of §10(b) a right to sue secondary violators. And though the case reached the court in the context of a private lawsuit, nothing in the textual analysis seemed limited to private actions, indeed it instead seemed to preclude the SEC from suing secondary aid and abetting violators in civil enforcement actions. Then again, it didn't explicitly *say* it applied to enforcement actions. At least not in the majority opinion. The dissent, however, did:

> The majority leaves little doubt that the Exchange Act does not even permit
> the Commission to pursue aiders and abettors in civil enforcement actions
> under section 10(b) and Rule 10b-5.

---

[3] *Superintendent v. Banker's Life*, 404 U.S. 6 (1971)( fn. 9, "It is now established that a private right of action is implied under §10(b). *See* 6 L. Loss, Securities Reg. 3869 (1969); 3 L. Loss, Securities Regulation 1763 (1961).

[4] Aiding and abetting of course is not the same as conspiring. We discuss conspiracy by itself, and in comparison with aiding and abetting, in the main text *infra*.

*Central Bank* did eliminate private aid and abettance actions insofar as they could be implied in §10(b) *for civil actions brought under §10(b).* And the Court refused to find them implied by §10(b) just because there was a criminal statute, §18 U.S.C. 2, that penalized them. But, all *Central Bank* held was:

> Simply because a course of *conduct*, in this case aiding and abetting securities fraud, has the *property* that it may be used as the basis of a prosecution for the crime of aiding and abetting, 18 U.S.C. §2, does not by itself add to that conduct the *property* that it may be used as the basis for a private suit, and while there may well be now or in the future some other statute *adding* that *property* to that *conduct*, we do not find that §10(b) is such a statute.

As we said, some things are simple. This is one of them, *because the Court never had before it and never spoke to what was true before <u>and after</u> Central Bank, that* **RICO was, and is, such a statute.**

## Congress Enhances §10(b) to Let the SEC Bring Civil Actions For Aiding and Abetting but Eliminates Aiding and Abetting and More as Private Rights of Action in RICO Unless the Defendant Has Been Convicted in Connection with the Fraud

Within two years of *Central Bank*, Congress had done two things:

### As to the SEC It Giveth…

Congress added §78t(e) to Title 15, enhancing §10(b) (§78j) by giving the SEC civil enforcement authority via §21(d) (§78u(d)) for aid and abettance and, it has been held, conspiracy[5].

### And as to Private RICO Plaintiffs It Taketh Away

Congress amended the civil RICO statute, 18 U.S.C. §1964, to add the "PSLRA bar" and the "conviction exception":

> [N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud…

---

[5] *SEC v. Norton*, 21 F.Supp.2d 361 (SDNY 1998) (denying 12(b)(6) motion to dismiss SEC's claim of securities fraud conspiracy, PSLRA amendment, §78t(e), authorizes SEC to civilly sue for aid and abettance *and conspiracy*).

We've said RICO must be analyzed as prohibiting conduct, not crime. Congress thinks so too. Look at the language. It doesn't say, "No person may rely on 15 U.S.C. §78ff or 18 U.S.C. §2"; it does not speak to *crimes*, it speaks to *conduct*. The "PSLRA bar" and "conviction exception" simply say:

> No *course of conduct* which has the *property* (1) that *someone* could have used it to bring a civil action for fraud in the purchase or sale of securities shall ever have the additional *property* (2) that it, plus more (enterprise participation) may be used to bring a civil RICO suit, unless and until the person being sued has been criminally convicted in connection with the fraud…

RICO, like other statutes, prohibits commission of *conduct*, not *crime*, even though some of the conduct prohibited satisfies prohibitions of other statutes so can be used to charge other crimes.

**Claims in *Substantive* RICO Available to Plaintiffs for Defendants' Conduct Actionable as Securities Fraud**

- All claims subject to the PSLRA bar are available because the limitations period as extended by the conviction exception had not expired when suit was commenced; see the limitations section following.

- Claims are subject to the bar if the underlying conduct has two properties:

  1. It would be civilly actionable by anyone, private plaintiffs or the SEC, as "fraud in the purchase or sale of securities."

  2. It would be criminally prosecutable as an offense "involving fraud in the sale of securities."

- Primary securities fraud is civilly actionable by private plaintiffs pursuant to 15 U.S.C. §78j aka §10(b) and by the SEC pursuant to 15 U.S.C. §78u(d), and is prosecutable as an offense pursuant to 15 U.S.C. §78ff.

- Aiding and abetting securities fraud is actionable by the SEC, 15 U.S.C. §78t(e), and prosecutable as an offense pursuant to 18 U.S.C. §2 as the primary crime when applied to 15 U.S.C. §78ff as the secondary crime.

- Conspiracy to commit securities fraud is actionable by the SEC, 15 U.S.C. §78t(e), and prosecutable as an offense pursuant to 18 U.S.C. §371 when applied to 15 U.S.C. §78ff as the crime that is the object of the conspiracy.

- To the extent mail or interstate/international wire communications were used to further the fraud, all the above civilly actionable conduct is prosecutable as an offense pursuant to 18 U.S.C. §1341 and §1343.

- Similarly, all the above civilly actionable conduct is prosecutable as an offense pursuant to 18 U.S.C. §2 and 18 U.S.C. §371 as applied to §1341 and §1343, in other words aiding and abetting the commission of and conspiring to commit mail or wire fraud in the context of securities fraud.

*As to "In Connection With the Fraud"…*

The conviction exception is applicable where someone has been criminally convicted "in connection with the fraud [in the purchase or sale of securities]." Defendants would have you believe that means it could not apply to Defendants, because they were convicted of RICO for predicate crimes of securities fraud and money laundering but not aiding and abetting or conspiracy, though the informations they pled to, and thus judicially admitted the truth of, contain such allegations (bribing other brokers to pump their stocks, obviously both substantial assistance [aiding and abetting] and agreement to commit fraud plus an overt act [by law of contract, paying someone to further the scope of your fraud, a fortiori where he not only agrees to do so but does so, i.e. performs, constitutes a meeting of the minds and thus agreement] plus itself an overt act in furtherance).

In other words, they argue that if Plaintiffs were primary victims of Palagonia then absent a conviction of Defendants for the crime of aiding and abetting or conspiring with Palagonia the conviction exception cannot apply. This is nonsense, for two reasons.

First of all, this is no help to Defendants anyway, because they are also being sued for direct, primary fraud (in RICO, not in §10(b)) for fraud on the market, in other words, that their own conduct for which they were convicted distorted the public market[6] and so Plaintiffs were at least partially directly harmed by Defendants' actions) as well as aiding and abetting and conspiracy).

Second the words "in connection with" are magic in securities fraud. The Supreme Court has told us in *SEC v. Zandford*, 535 U.S. 813 (2002) that the phrase "in connection with" includes any conduct which is intertwined with or in support or a material part of a purchase or sale.

---

[6] Again, this is not a suit in civil §10(b) where the *implied* private right of action requires communication between (1) Defendant and Plaintiff; or (2) Defendant and the public market; this is in RICO where the basis is conduct constituting a criminal offense, which in this case (fraud on the market) can be criminal §10(b), which is not subject to "implied" analysis but textual analysis, or mail and wire fraud, which don't require communication with Plaintiff or even that Plaintiff be the target of the scheme so long as he's a victim. See *Bridge.*

So, a RICO conviction for securities fraud and money laundering, *a fortiori* where, as here, Defendants are (as alleged in the complaint) part of the same RICO enterprise as Palagonia and committed their criminal conduct in furtherance of the overall scheme is patently obviously "in connection with" the fraud.

### And as to Aid and Abettance vs. Conspiracy

Aid and abettance and conspiracy are not established by the same conduct, though these two cousins often pass for twins. Aid and abettance may be established by knowing or reckless substantial assistance, but doesn't require an agreement to commit a specific offense. Conspiracy does, though it may be implied by conduct. And the scope of liability is broader in conspiracy. In aid and abettance, liability is direct, the same to the (secondary) aider and abettor as to the (primary) violator, and proximate cause is determined by whether the aid and abettance substantially eased the primary wrongdoer – and importantly, courts don't impose direct, *"but for"* causation in aid and abettance, only *proximate* causation – but liability in conspiracy is *vicarious*, proximate cause satisfied by *mediate causation*, meaning it is transferred, or mediated, from the other actor, on the theory that the agreement to commit the offense is a valid mediating agency allowing the co-conspirator to be fully liable for, thus necessarily have proximate cause transferred or imputed to him as to, everything the primary actor did, and everything all the others in concert with him did, in furtherance of the conspiracy even if none of it was actually known to the co-conspirator, so long as it was merely foreseeable[7].

---

[7] Where aid and abettance is a bribe to the primary violator for expanding the scope of the secondary violator's fraud by combining them with the primary violator's own frauds, contract law provides the agreement (aid and abettance by accepted bribe, *a fortiori* where there is performance, must mean that conspiracy is present).

## THE RICO PARADIGM[8]

      We provide this to fill in any gaps as to the requirements of the claims we have made in the FAC, as the following section after this will review the FAC to show its validity.

*****

      A number of individuals associated in common enterprise for some time are interested in formalizing their collaboration by forming THRUSH LLC and have consulted us for advice.

      THRUSH has been organized to undertake a wide range of activities – terrorist activities, commerce in confidential information, commerce in firearms, sales of pharmaceuticals, offering forms of entertainment and gaming (including activities operated through street vendors), securities fraud, bribery, arson, murder, extortion, operating a financial laundry to cleanse money, reproducing and facsimiles of Federal Reserve notes, human trafficking, child prostitution, tax evasion, and occasionally real estate. THRUSH has broad activities conducted by an international network of agents.

      THRUSH is governed by a management committee, THRUSH CONTROL, with day-to-day management vested in a manager, "Number One," It has by-laws by which its members warrant obedience to THRUSH, Number One, and THRUSH CONTROL and opposition to THRUSH's enemies. The by-laws provide for substantial decision-making autonomy by "lower-rung" members.

*****

      As it exists now, THRUSH is an association in fact RICO enterprise[9]. Upon formation of the LLC and contribution of all activities thereto, it will be a juridical RICO enterprise. Semble there will be no difference before or after as to the application of substantive or conspiracy RICO law. The members of THRUSH are certain that each of its sub-groups, counterfeiting, extortion, etc. are cognizably separate RICO sub-enterprises, and that THRUSH CONTROL is also an enterprise.

---

[8] We are indebted to Terence Cuff, Esq., from whose work this example has been adopted.

[9] Or not. No one ever notices, but to the extent there is any longer a distinction in RICO between association in fact and juridical enterprises, they will likely constitute *de facto* partnerships under state law, and §1961(4) provides that partnerships, presumably even *de facto* or *inadvertent*, are juridical, not association in fact.

**Relatedness, or Pattern**

  We next consider how Circuit precedent sees this, citing *U.S. v. Daidone*, 471 F.3d 371 (2nd Cir. 2006). Appellant Daidone, a member of the Lucchese organized crime family, was charged, *inter alia*, with racketeering, racketeering conspiracy, and convicted by a jury. He appealed, claiming that the three murders he was charged with were so far apart in time and committed by different members of his crew that they could not be said to be predicate crimes committed in a pattern and thus he could not be convicted of RICO (the persons he murdered were enemies of the Lucchese's).

  The Second Circuit upheld his conviction, noting:

> As evidenced here, both the vertical and horizontal relationships are generally satisfied by linking each predicate act to the enterprise. **This is because predicate crimes will share common goals (increasing and protecting the financial position of the enterprise) and common victims (e.g., those who threaten its goals), and will draw their participants from the same pool of associates (those who are members and associates of the enterprise). Because of this intertwined relationship, sprawling, complex enterprises, like the Luchese crime organization, are the prototypical targets of RICO…**[Emph. Add.]…

> In this case, the government sufficiently demonstrated that each of Daidone's three predicate acts; the murder of Gilmore, the murder of Facciolo, and the loansharking; were related to the Luchese enterprise, as well as to each other. Such is sufficient to satisfy the relatedness requirement under RICO.

*****

  The activities of THRUSH share common goals of increasing and protecting the financial position of the enterprise, and share common victims who threaten its goals, particularly members of a competing organization operating d/b/a the United Network Command for Law Enforcement.

**Participation in the Operation of the Enterprise**

  In *United States v. Diaz*, 176 F.3d 52 (2nd Cir. 1999), the Second Circuit held, "Even if a defendant is not acting in a managerial role … he can still be liable for directing the enterprise's affairs if he 'exercised board discretion' in carrying out the instructions of his principal….".

In *United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998), the Fifth Circuit wrote, "Although [a mid-level distributor] did not operate the enterprise as a whole, he participated in its operation at his level by deciding how much cocaine to buy and what prices and terms to charge to the lower-level distributors to whom he redistributed".

And specifically as to employees of a corporate enterprise, "participation in the operation" encompasses active "lower-rung participants who are under the direction of upper management." *MCM Partners v. Andrews-Bartlett & Assocs.*, 62 F.3d 967 (7th Cir. 1995) (two businesses that committed crimes at the behest of three controlling members of the enterprise held to have "participate[d] in the conduct of an enterprise 'by knowingly implementing decisions'").

*****

Number One and the members of THRUSH CONTROL participate in its operation as an enterprise. In addition, most of the low-level members do, as, for example, they decide whom to bribe, how much to pay, what subordinates to hire, and otherwise "knowingly" implement decisions, in accordance with the aforesaid autonomy and independence provided by the by-laws.

**RICO Incorporates Criminal *Conduct*,
Not Criminal *Statutes***

THRUSH members participating in its operation understand that in addition to criminal RICO liability for their crimes they commit, at least related crimes, which they understand is likely to be deemed to be all of them, they face civil RICO liability to anyone injured by them, except their securities frauds, for which they cannot be civilly liable in RICO unless they have first been convicted.

**Substantive vs. Conspiracy Liability**

So, civil liability attaches for violations of RICO where the defendant has, in the course of his operation of an enterprise, committed certain proscribed conduct which, *inter alia*, includes conduct proscribed by certain specified standalone crimes, as incorporated into RICO *sub nomine* predicate acts,

except for conduct actionable as securities fraud, as to which a prior conviction is a condition precedent to liability. Said defendant is liable in treble damages, plus attorneys' fees, for any injury proximately caused the plaintiff by that conduct. 18 U.S.C §§1964(c), 1962(c). But what about liability for injuries caused by some other member of the enterprise when he commits a predicate crime?

*****

Some of the THRUSH members believe THRUSH LLC should have a reserve fund for the defense of its members, and have asked counsel to render an opinion whether one member may be liable in RICO for the predicate crimes of other members (the members of the prostitution and money laundering divisions are concerned they might be liable for the activities of members of the terrorism and murder divisions, even though they aren't exactly sure who those members are and what exactly it is they do, though they do know those divisions exist and have *some* idea of what they do).

*****

Per 18 USC §1964(c), anyone injured in his property by a violation of 18 USC §1962(d), which makes it illegal to conspire to operate an enterprise through a pattern of racketeering activity etc., the rest the same as the immediately preceding paragraph. And by the various district, circuit, and Supreme Court's fusing of the *Pinkerton* doctrine, see *U.S. v. Pinkerton*, 328 US 640 (1946), to civil RICO through mediate causation, Defendants' conspiracy RICO liability is clear[10].

The Supreme Court precedent is *Beck v. Prupis*, 529 US 494 (2000). While Beck was the CEO of a company, he discovered certain directors and officers were engaging in acts of racketeering. Those parties then orchestrated a scheme to fire Beck. He responded by filing suit under, *inter alia*, §1964(c), alleging that defendants had conducted a corrupt enterprise through a pattern of racketeering in

---

[10] Mediate causation is that base for vicarious liability by which due process is satisfied in holding liable A for the wrongful acts of co-conspirator B even where A never heard of B or knew what B did so long as A had an idea of the general goals of the conspiracy and what B did was foreseeable and within its scope. The theory is that by *agreeing* with B to commit crime, even without an overt act (though some conspiracy crimes, and civil wrongs like RICO, require an overt act), A has committed a constitutionally sufficient criminal or civil *actus reus* to be held vicariously liable for all B's overt acts.

violation of §1962(c) and had conspired to conduct it in violation of § 962(d). The Court explained that: "[Beck's] theory was that his injury was proximately caused by an overt act – namely, the termination of his employment – done in furtherance of respondents' conspiracy, and that §1964(c) therefore provided a cause of action." The Court rejected that theory and ruled that an "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)." Id. at 1616. Therefore, since Beck's termination was not a predicate act of racketeering as defined by § 1961(1), he had no conspiracy claim. The dissent claimed this was incorrect, that the majority's interpretation rendered the conspiracy statute, §1962(d), superfluous because any plaintiff with a claim for a violation of §1962(d) would necessarily have a claim under the substantive statute, §1962(c). The majority responded this was not so, §1962(d) was not rendered "mere surplusage" as **"a plaintiff could, though a §1964(c) civil suit for a violation of §1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of §1962."**

That response is now law in many circuits, including here. It started with *Smith v. Berg*, 247 F.3d 532 (3rd Cir. 2001). In *Smith*, plaintiffs claimed defendant Berg violated substantive RICO by operating an enterprise through a pattern of mail and wire fraud, inducing defendants to buy homes they couldn't afford by tricking them into thinking they would get tax abatements and mortgage credit. They claimed defendant title company violated conspiracy RICO by facilitating Berg's racketeering by allowing him to assume their functions during closings. They claimed defendant lenders violated conspiracy RICO by facilitating Berg's racketeering by granting mortgages they knew plaintiffs couldn't pay. The title company and lender defendants moved to dismiss by 12(b)(6), arguing they had not engaged in racketeering activity. The district court denied the motion and as *Beck* had just been decided certified the issue for interlocutory appeal.

The Third Circuit affirmed, holding those defendants susceptible to RICO conspiracy liability notwithstanding they did not commit any act of racketeering activity. The allegations that those defendants facilitated and furthered Berg's felonious activity was sufficient to ascribe conspiratorial liability to them. We believe most if not all courts considering the issue after *Smith* cite and follow *Smith* with *Beck* and *Pinkerton*, in other circuits *and here[11]. A favorite is Strayer v. Bare, 2008 WL 1924092 (M.D. Pa.), holding a civil RICO plaintiff could sue for RICO conspiracy attorneys and an institution for concealing from detection a clandestine, systematic course of conduct of transferring to third parties money plaintiff was entitled to receive, even when they did not participate in all elements of the conspiracy.* Accordingly, Plaintiffs pled RICO conspiracy liability against Defendants by alleging that, whether or not they were part of the same RICO enterprise as Palagonia, or part of any RICO enterprise, they knew Palagonia was part of an organized scheme of securities fraud and acted to facilitate or encourage it. Bribing him to pump-and-dump their own house stocks suffices as facilitation, and since they *were* part of the same RICO enterprise as Palagonia and committed predicate and other acts to facilitate it that more than suffices. Accordingly, they are liable to every person injured by Palagonia's acts, including Plaintiffs, not just for losses they sustained on Bridge and Holly but all losses they suffered by Palagonia's predicate acts foreseeably committed in the scope of the RICO conspiracy, indeed all losses suffered by every victim of Palagonia at Blair, no matter what the stock and no matter whether Defendants even knew of it.

We assure the Court this was but a didactic tool, we don't really advise criminal enterprises, and would in any event give the same advice to any client, whether THRUSH or our favorite uncle.

*****

---

[11] *U.S. v. Sasso*, 230 F.Supp.2d 275 (EDNY 2001) (*Smith* consistent with Second Circuit precedent *US v. Zichettello*, 208 F.3d 72 (2nd Cir. 2000) and finding that though some RICO co-conspirators didn't participate directly within fraudulent activities of scheme, or even know of entire scheme, they are jointly and severally liable as they facilitated and furthered the enterprise). *Schwab v. Philip Morris*, 449 F.Supp. 992 (EDNY 2006) (following *Smith*, finding it accurately construed *Beck* and noting the Second Circuit has consistently followed this interpretation of *Pinkerton* and *Smith*). *Baisch v. Gallina*, 346 F.3d 366, 376-77 (2nd Cir. 2003); *Zito v. Leasecomm Corp.*, 2004 WL 2211650 (SDNY); *Davis Lee Pharmacy v. Manhattan Cent.*, 327 F. Supp.2d 159 (EDNY 2004)

We now show the FAC underlying this motion contains the necessary elements. Of course a related question is if it does in satisfaction of applicable pleading standards, so we first show appellate and district case law are clear that where, as here Defendants are sued for fraud civilly after they were already finally convicted criminally *for the same fraud*, requirements of particularity do not apply.


## PARTICULARITY DOES NOT APPLY

As the Court is aware, complaints are to put the Defendant on notice of what he's being sued for, so that he may prepare a defense, and all that is required is a short statement to that effect. Rule 8(a). Most pointedly, complaints allege notice facts, they do not prove a case or attempt to and there is no requirement they contain evidentiary facts, thus hearsay is acceptable, for example.

When fraud is alleged, Rule 9(b) ordinarily requires particularity of pleading, although even there in modern usage when mail or wire fraud is alleged to facilitate a complex scheme of many years there is no requirement to plead who mailed what when or who made what call, as it is safely presumed and so need only be proven at trial that mail, Fedex, or electronic communications were used. Note however the requirement does not extend to aiding and abetting fraud or conspiracy to defraud, where it applies only to the aspects of the fraud and not of the substantial assistance, agreement, or overt act.

The purpose of Rule 9(b) is not to make plaintiff prove his case in his pleading, but to ensure that defendant is not frivolously accused of fraud so that his reputation is not unfairly injured, and accordingly to make sure he knows with enough detail what he is accused of so he may defend. Of course that too is subject to exception, as where defendant is in possession of the details which need to be pled and can be compelled to produce them at discovery.

However, there is clear appellate authority that where, as is the case here, defendant already knows the details, and as well plaintiff has *evidentiary* facts already, prediscovery, particularity will not

apply as there is no need for it.[12]. And in turn that authority has been properly used in what appears to be the only reported case in the United States on the point, which is, where plaintiffs are suing defendants in fraud and defendants have already been criminally convicted of the fraud and sentence entered, particularity does not apply at all because they obviously have no reputation to protect and know what they're accused of[13]. Accordingly, in view of the facts here, Defendants' convictions and obvious knowledge, especially in that they were cooperating (as they admit) in Palagonia's case, *U.S. v. Coppa*, and the dozens of boxes of public documents in that case, as well as Sater's and Lauria's, and their presumed knowledge of their own pleas and convictions, etc. with all respect to impose particularity requirements beyond what we have already met by incorporating the allegations in all the charging instruments (criminal pleadings) pursuant to Rule 10(c) would be…strange. Therefore we ask only that if the Court determines that some particular aspect has not been pled with sufficient particularity that we will do so by amendment.

As to loss and damages. Defendants err in forgetting that damages are trebled before credit for any amount already received, and in any event we have pled a minimum of $7,000,000 before trebling. Compl. ¶72. Because we will be assembling the trading sheets for use in determining damages

---

[12] *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (court should not dismiss a complaint under Rule 9(b) if the court is satisfied: "(1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."

[13] *Nat'l Mortg. v. Trikeriotis*, 201 F.Supp. 499 (D.C.MD. 2002):

"'The most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading.'" … Wright and Miller, *Federal Practice and Procedure*, § 1298 at 648 (1990). In addition to providing a defendant with adequate notice, Rule 9(b) also protects a defendant's reputation and goodwill, and endeavors to reduce the number of strike suits. NMW's complaint provides Mrs. Trikeriotis with adequate notice of the claims against her. It describes the transactions allegedly constituting the fraudulent conveyance; identifies the participants in those transactions; alleges that the transfers were without fair consideration, and indicates that Bankers First was rendered unable to pay what it owed to NMW. **Both parties, moreover, have substantial prediscovery evidence of the facts alleged because both Mr. Trikeriotis and Mr. Baklor have pled guilty to criminal charges arising from their participation in defrauding NMW, and this court has entered criminal and civil judgments against them and their respective companies**…The court will therefore deny defendant's motion to dismiss on the basis of Rule 9.

and for discovery, because this is a pump-and-dump scheme which incorporates both fraud on the market (manipulating prices) and fraud on the Plaintiffs (concealment fraud, not telling them of the manipulation, bribes, excess commissions, that their sales orders would be ignored, etc.) at a minimum every purchase they made would be a time and place of the occurrence of the concealment, so if the Court determines that must be pled rather than produced we propose to amend on that account.


## THE COMPLAINT (FAC) UNDERLYING THIS MOTION

Not only are documents attached to a complaint deemed part of it, pursuant to Rule 10(c), Plaintiffs *explicitly* incorporated these pleadings and documents into the FAC. Compl. ¶¶96 - ¶100:

| Exhibit E | Sater's criminal information, *U.S. v. Felix Sater*, 98-CR-1101 EDNY |
| Exhibit F | Lauria's criminal information, U.S. v. Salvatore Lauria, 98-CR-1102 EDNY |
| Exhibit G | Judgment and Commitment Order, *U.S. v. Felix Sater* |
| Exhibit H | Judgment and Commitment Order, *U.S. v. Salvatore Lauria* |
| Exhibit I | Indictment, *U.S. v. Coppa et al.*, 00-CR-196 EDNY |
| Exhibit J | Indictment, *People v. D. H. Blair et al*, No. 3282/2000, NY Supreme Ct., NY Cty. |
| Exhibit L | Deposition of non-party Al Palagonia |
| Exhibit M | Palagonia's plea transcript, *U.S. v. Coppa* |
| Exhibit N | Defendant Sater's plea transcript, *U.S. v. Sater* |


**The Fraud, or**
**The Scheme to Defraud**

*For purposes including the "conviction exception"*

That scheme where from about March 1993 through October 1996 two dozen or so persons came together, including brokers and managers at various firms, to operate in concert a scheme to defraud by artificially manipulating prices of junk securities then selling them to victims, including Plantiffs, without telling them they were buying stocks whose prices had been rigged in a crooked market and their brokers were bribed, including by outsize if not fraudulently large commissions, to push the stock on them, or had inside positions, and without telling them their sell orders would be ignored, as turned out to be so, eventually the insiders, often including the brokers, selling out at such manipulated prices and removing the artificial support allowed prices to collapse to their true, worthless value.

*Compl. ¶¶ 100 – 140, and Exhs. E, F, I, and J, passim.*

**The RICO Enterprises and Their Methods and Means**

1. The D. H. Blair Enterprise. The entity D. H. Blair, a corporation, §1961(4).

*Compl. ¶¶105 – 116, 138 – 140*

2. The Palagonia Group Enterprise. The association in fact, §1961(4), of Palagonia, Breitner, Dewar, DiBella, Frantz, Gaydos, Hernandez, Molinsky, Orlando, Schandler, and Smith, brokers at Palagonia who associated together, headed by Palagonia, as a rogue outfit for the common goal of profiting and laundering the profits through concerted acts of securities fraud and securities fraud conspiracy

*Compl. ¶¶102 – 116, 138 – 140*

3. The White Rock Enterprise. The association in fact, §1961(4), of Lauria, Sater, and others who owned and operated White Rock Partners, a corporation.

*Compl. ¶¶118 – 140, and Exh. I ¶2*

4. The White Rock Partners Enterprise. The entity White Rock Partners & Co. Inc., a corporation, and its successor in interest, the entity State Street Capital Markets Corporation. §1961(4).

*Compl. ¶¶117 – 140*

5. The White Rock Blair Enterprise. The association in fact, §1961(4), of the White Rock Partners, Palagonia, D. H. Blair, brokers and cold callers, and others, including members of the Bonanno, Genovese, and Colombo families. Altogether this enterprise consisted of Coppa, Montevechi, Persico, Basile (Jack), Basile (Rocco), Berman, Cioffoletti, Doukas, Durchalter, Lev, Lombardo, Nagel, Palagonia, Paul, Polito, Salaman, and Temperino, Klotsman, Lauria, Sater, Bressman, and others

*Compl. ¶¶117 – 140, esp. 137 – 138, and Exh. I ¶10*

**The Predicate Crimes**

These are such crimes as are sufficient to establish the pattern, creating jurisdiction in criminal RICO, in this Circuit *Daidone* relatedness, and there is no claim, nor any need to claim that the commission of all of these crimes each injured Plaintiffs. Obviously the total number of *individual* acts is in the tens of thousands, as for example every sale without disclosure is an act of securities fraud and every phone call where even one digital packet crossed state lines, which pretty much includes every cell phone call even to another phone 10 feet away, urging a customer not to sell is wire fraud.

15 U.S.C. §78ff          Securities Fraud, per 15 U.S.C. §78j

                          *Compl. and 92, Exhs. E, F, I, J, passim*

| 18 U.S.C. §371 | Conspiracy to Commit Securities Fraud, per 15 U.S.C. §§78ff, 78j |
| | *Compl. and 92, Exhs. E, F, I, J, passim* |
| 18 U.S.C. §2 | Aiding and Abetting Securities Fraud, per 15 U.S.C. §§78ff, 78j |
| | *Compl. and 92, Exhs. E, F, I, J, passim* |
| 18 U.S.C. §1956 | Money Laundering, Attempted Money Laundering, Conspiracy to Launder |
| 18 U.S.C. §1957 | Money Laundering, Attempted Money Laundering |
| | *Compl. ¶¶17 and 92, Exhs. E, F, I, passim* |
| 18 U.S.C. §1341 | Mail Fraud, the use of mail and private carriers to facilitate the scheme |
| | *Compl. ¶136* |
| 18 U.S.C. §1343 | Wire Fraud, the use of interstate e-communications to facilitate the scheme |
| | *Compl. ¶136* |

### Who Did What in What Capacity

Participation in the operation of the enterprise is on virtually every page of the incorporated documents, for example Compl. ¶41 which alleges that the informations to which Defendants pled, Exhibits E and F explicitly incorporated into the FAC, identify them as having run and controlled White Rock, with three others (who are made known in the incorporated Coppa indictment, Exhibit I, to be Durchalter, Doukas, and Klotsman). The same documents describe exhaustively what each person did, for example Sater's role in dealing with extortion and organized crime.

### The Claims

We stress again that the claims, not the causes of action, for complaints plead claims, not causes of action, are that Plaintiffs were injured by acts of fraud in the sale of securities to them and that the conduct taken by Defendants violated §1962(c) in that it had the *properties* of (1) being a basis for civil suit by Plaintiffs or the SEC for fraud in the purchase or sale of securities; and (2) being a basis for prosecution for offenses involving fraud in the sale of securities."

Their violation of substantive RICO, §1962(c), is well pled by the allegations of conduct prosecutable, *inter alia*, as mail and wire fraud and securities fraud and conspiracy with Palagonia's securities fraud and aid and abettance of Palagonia's securities fraud, all committed during their participation in the operation of the RICO enterprises of which they were alleged to be members.

Their violation of conspiracy RICO, §1962(d), is well pled by allegations they individually or together, without regard to whether they did so in the scope of participating in the operation of a RICO enterprise, agreed with Palagonia to further his participation in the operation of the RICO enterprises of which he was a member and their taking at least one overt act in furtherance thereof, said agreement evidenced by the bribery and subsequent performance and the bribery the an overt act.

## THE STATUTE OF LIMITATIONS HAS NOT EXPIRED

The parties agree that the applicable statute of limitations for all claims in the FAC is four years and is provided, not by the traditional rule of injury discovery but by the "conviction exception" to that rule as set forth in 18 U.S.C. §1964(c) [Emph. Add.]:

> **The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.**

The parties part company after that. Defendants make indecipherable argument boiling down to the proposition that as they, convicted RICO felons, have paid their debt to *society* this Court should rewrite the plain language of that statute so they may avoid paying their debt to *Plaintiffs*.

The statute is pellucidly clear, stating that the limitations begins to run when, and *only* when, the criminal conviction of the person being sued (aka "the Defendant") becomes *final*.

What does *final* mean? Defendants say it means the entry of the plea, but cite no authority for that. Which is not surprising, as there isn't any. Entry of a guilty plea is a conviction, yes, but a conviction isn't instantaneously *final* the moment it comes into existence; if it were, Congress wouldn't have written "the date on which the conviction *becomes* final." As the Ninth Circuit put it, "We should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress," *Beisler v. Commissioner*, 814 F.2d 1304 (9th Cir. 1987) (en banc).

Convictions don't *become* final until entry of judgment and sentence, and unlike Defendants we actually *have* authority for that, lots of cases that say so, most of them from the Supreme Court[14].

---

[14] Fed.R.App.P. 4(b) (conviction not final for purposes of appeal until entry of judgment); Fed.R.Crim.P. 32(d) (guilty plea does not become final and may be withdrawn for any fair or just reason before sentence is imposed); *Teague v. Lane*, 489 U.S. 288, 314 n. 2 (1989) (O'Connor, J., joined by Rehnquist, C.J., Scalia, J., and Kennedy, J.) ("A criminal judgment necessarily includes the sentence imposed upon the defendant"); *Flynt v. Ohio*, 451 U.S. 619 (1981) ("Applied in the context of a criminal prosecution, finality is normally defined by the imposition of the sentence."); *Parr v. United States*, 351 U.S. 513 (1956) ("Final judgment in a criminal case means sentence.") (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)); *Miller v. Aderhold*, 288 U.S. 206, 210-11 (1933); *United*

Mr. Sater's conviction became final in October 2009 and so the statute was wide open when we commenced suit in March 2013, and while Mr. Lauria's became final in February 2004 the limitations period was tolled by its concealment, if not illegal and fraudulent concealment, of his entire criminal case, and with it the ability of anyone to know when, or even if, the statute started running until March 2009, when the *finality* of his conviction first became public along with his docket.

The remainder of their "argument" is nonsense. They argue the limitations period runs *per autre vie*, that though we're suing Sater and Lauria and the statute says the limitations period begins to run *with respect to the person against whom the action is brought,* this Court should substitute non-party Palagonia and disregard [sic] the statute so even though *he's* not the person being sued the limitations period runs from the finality of *his* conviction. We don't get that either, but the Court should take judicial notice of the inconvenient fact – which Defendants were obligated to tell you, but did not (unless again they were clueless) – that **Palagonia violated his supervised release and was arrested and resentenced , his earlier sentence thus voided, for his criminal frauds in 2011**. So if Defendants persist in their nonsense that when a statute says red it means black, when it says measure from Defendants' finalities it means no, measure from some other guy's finality, we suggest they may be made to choke on it by holding that sure, they can use Palagonia's finality, *the one in 2011*.

Perhaps giving this more time than it's worth, in the interest of thoroughness we note the legislative history confirms the conviction exception applies *only to the defendant being sued*. Then-Senator Biden had offered a broader version, *viz*. "If any participant in the fraud is criminally convicted in connection therewith…" 141 Cong. Rec. §9150, §9163, amendment 1481, but the Conference Committee rejected it, Senator Biden then noting that under the version that passed, the conviction exception ran *only to the defendant being sued and no one else*. 141 Cong. Rec. S17991, S17992 (Dec. 5, 1995).

---

*States v. Gottlieb*, 817 F.2d 475, 476 (8th Cir. 1987) (orders regarding a guilty plea are not final decisions until after sentencing); *Aguilera-Enriquet v. INS*, 516 F.2d 565, 571 (6th Cir. 1975) ("Once sentencing [on a guilty plea] is completed ... the conviction is final for deportation purposes."),cert. denied, 423 U.S. 1050 (1976).

## CROSS-MOTION TO EXCLUDE FACTS OUTSIDE
## THE COMPLAINT OR HOLD DISCOVERY

When presented with matters outside the four corners of the complaint in a 12(b)(6) motion, except for matters of which the Court may take judicial notice, the Court must decide whether to exclude them or convert the motion into one for summary judgment, giving all parties sufficient time and opportunity, including discovery, to prepare for such a motion and resubmit Rule 12(d).

Defendants' Motion makes factual assertions (though in non-evidentiary form, as there is no affirmation or affidavit) outside the FAC, for example, and without limitation, alleging Sater and Lauria "put their lives in jeopardy to repay their debt to society," Motion pg. 11, and "had Plaintiffs exercised due diligence they would have learned of Sater and Lauria's convictions," Motion pg. 12. (Even if it had been in evidentiary form by sworn affirmation, it would have no probative value as it lacks foundation, as opposing counsel would have to have established how he has knowledge of what due diligence would have discovered, and of how, where, when, and why they put their lives in jeopardy.) We ask the Court exclude those and all other facts outside the FAC or in the alternative allow limited, expedited discovery so we may discover the truth (or lack thereof) of these allegations.

*****

Wherefore, Plaintiffs ask the Motion to Dismiss be denied, or they be allowed amendment per Rule 15(a)(2), with time to file amendment or Motion for Leave to Amend with proposed Second Amended Complaint; noting our preference if any problem be as to particularity we be given discovery to find facts in the unique possession of Defendants; and ask their cross-motion to exclude be granted; and all other relief the Court deems just and proper. Plaintiffs intended proffer of no adjudicative facts outside the FAC, and request if the Court finds proffer outside the FAC and adjudicative rather than legislative, the Court exclude it rather than convert to amotion for summary judgment. As to all legislative facts proffered, per 28 U.S.C. §1746 the undersigned affirm under penalty of perjury they are to the best of their knowledge true and any documents incorporated are what they purport to be.

Dated September 19, 2013

**THE LAW OFFICE OF FREDERICK M. OBERLANDER P.C.**

/s/ Frederick M. Oberlander
*Attorneys for Plaintiffs*

Post Office Box 1870
28 Sycamore Lane
Montauk, NY 11954
212.826.0357  Tel.
212.202.7624  Fax.
fred55@aol.com

**THE LAW OFFICE OF RICHARD E. LENER P.C.**

/s/ Richard E. Lerner
*Of Counsel*

917.584.4864  Tel.
richardlerner@msn.com