**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------

**ESTATE OF ERNEST GOTTDIENDER, ET**    x
**AL.**                                      :

                     **Plaintiffs,**     :

                 **-v-**              :
**FELIX SATER and SALVATORE LAURIA,**    :

                   **Defendants.**     :

------------------------------------------------ x

                                                 **13 Civ. 1824 (LGS)**

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Dated:    New York, New York
           September 27, 2013

Nader Mobargha
Beys Stein Mobargha & Berland LLP
The Chrysler Building
405 Lexington Avenue – 7th Floor
New York, New York 10174
(646) 755-3603 (o)
(646) 755-3599 (f)
nmobargha@beysstein.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………..…..….……..1

ARGUMENT……………………………...………………………………....…..2

I-      Plaintiffs cannot avail themselves of the "criminal conviction" exception to
        the PSLRA bar against using securities fraud as a basis for civil RICO claims
        because Defendants Sater and Lauria were not convicted of defrauding
        Plaintiffs……….…………………………………………………..….2

II-     Even if Plaintiffs could use Sater's and Lauria's securities fraud convictions to
        satisfy the "criminal conviction" exception to 1964(c), Plaintiffs still fail to
        allege a "pattern" of racketeering activity
        …….………………………………………........................................7

III-    Plaintiffs cannot allege conspiracy to commit civil RICO because the conduct
        they base their claims on does not constitute a viable predicate RICO act
        …….…………………………………………………………………10

CONCLUSION………………...…….……………………….....…..…………10

## *TABLE OF AUTHORITIES*

### *Cases*

*Abene v. Jaybar, 802 F.Supp.2d 716 (E.D. La. 2011)*…………………………………………4,5,6

*Bald Eagle Area School Dist. v. Keystone, 189 F.3d 321 (3d Cir. 1999)*……………………3

*Breck v. Proupis, 529 U.S. 494 (2000)*………………………………………………………10

*Gilmore v. Gilmore, 503 Fed. Appx. 97 (2d Cir. 2012)*……………………………………9

*In re Enron Corp. Securities, Derivative, & ERISA Litig., 284 F.Supp.2d 511 (S.D. Tex. 2003)*………………………………………………………………………………………4,5,6

*Krear v. Malek, 961 F. Supp. 1065 (E.D.Mich.1997)*……………………………………………………………………………4,5,6

*Ling v. Deutsche Bank AG., 2005 WL 1244689 (S.D.N.Y. May 26, 2005)*…………………9

*MLMSK Inv. Co. v. JP Morgan Chase & Co., 651 F. 3d 268 (2d. Cir. 2011)*………………3

*Mathews v. Kidder, Peabody & Co., Inc., 161 F.3d 156 (S.D.N.Y. 1998)*…………………4

*Powers v. Wells Fargo Bank NA, 439 F.3d 1043 (9th Cir. 2006)*………………………………………………………………………………………4-5

*Schalaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91 (2d Cir. 1997)*…………………8-9

*SEC v. Zandford, 535 U.S. 813 (2002)*………………………………………………………6

*Seippel v. Jenkins & Gilchrist, P.C., 341 F. Supp.2d 363 (S.D.N.Y. 2004)*…………………8

*Sissel v. Rehwaldt, 2013 WL 2372296 (2d Cir. June 3, 2013)*………………………………3

### *Statutes*

*18 U.S.C. § 1964 (c)*……………………………………………………………………2,3,9

*18 U.S.C. § 1964 (d)*……………………………………………………………………2,10

### *Other Authorities*

*CIVIL RICO, A DIFINITIVE GUIDE, 3RD EDITION, by Gregory Joseph*…………………8

Defendants Felix Sater ("Sater") and Salvatore Lauria ("Lauria"), by and through their counsel, Beys, Stein, Mobargha & Berland, LLP submit this Reply Memorandum in Further Support of their Motion to Dismiss Plaintiffs' First Amended Complaint, dated July 30, 2013 (the "Complaint") under Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss").

## PRELIMINARY STATEMENT

Cutting through Plaintiffs' "indecipherable" 25-page Opposition, what we are left with is the same thing we had before:  namely, an attempt by Plaintiffs to piggy-back on another broker's securities fraud conviction to bring an improper civil Racketeering Influenced and Corrupt Organizations Act ("RICO") claim for treble damages.  In their Opposition, Plaintiffs confirm that the entirety of their civil RICO claims under 18 U.S.C. §§ 1964(c) and 1962(d) ("1964(c)" and "1962(d)") is based on a single agreement between Defendants and Alfred Palagonia ("Palagonia") to sell two stocks, and that this agreement aided and abetted Palagonia's securities fraud against Plaintiffs.

What Plaintiffs ignore is that, under 1964(c), conduct actionable as securities fraud cannot serve as the basis for a civil RICO claim against Sater and Lauria unless Sater and Lauria specifically and directly have been convicted of defrauding the Gottdiener Plaintiffs – a principle confirmed by multiple courts that have analyzed 1964(c).  Here, Sater and Lauria were not convicted of defrauding Plaintiffs.  Sater and Lauria did not target Plaintiffs; they did not speak with Plaintiffs; they did not sell stocks to the Plaintiffs; they did not receive any money from Plaintiffs; in fact, they did not even know Plaintiffs.  The connection between Defendants and Plaintiffs is far too attenuated legally to justify Plaintiffs using Sater and Lauria's separate securities convictions as the basis for civil RICO claims based on losses they suffered at the hands of another broker, Palagonia.  Allowing Plaintiffs to do so would contravene the intention

1

of Congress – which amended 1964(c) to add language barring the use of any conduct constituting securities fraud as a predicate act – to curtail the use of securities fraud abuses as a basis for a civil RICO claim.

Yet, even if Sater and Lauria's convictions could be used as a basis for their civil RICO claims, Plaintiffs have still only offered <u>one</u> predicate act, the alleged aiding and abetting of Palagonia's securities fraud – as opposed to the minimum of two required predicate acts for such a claim.  Defendants try to cure this defect by attempting to slice their one act - aiding and abetting Palagonia's fraud – into multiple causes of action, including conspiracy to commit securities fraud, mail and wire fraud, and money laundering.  However, no matter how many causes of action Plaintiffs allege, after all the pleading smoke clears, all that remains is the impermissible use of a single predicate act as the basis for a civil RICO claim.  For that reason, in addition to dismissing Plaintiffs' 1964(c) claim, the Court should also dismiss Plaintiffs' civil RICO conspiracy claim under 1962(d).  Sater and Lauria cannot be held liable for a civil RICO conspiracy claim where there is only one single predicate act alleged and the conduct underlying the claim does not even qualify as a viable predicate act under RICO.  Consequently, the Court should dismiss Plaintiffs' action in its entirety.

## ARGUMENT

**I-** **<u>Plaintiffs cannot avail themselves of the "criminal conviction" exception to the PSLRA bar against using securities fraud as a basis for civil RICO claims because Defendants Sater and Lauria were not convicted of defrauding the Plaintiffs</u>**

Plaintiffs cannot use Sater and Lauria's securities fraud convictions (*see* First Amended Complaint (the "Complaint"), Exs., E & F) as a means to avoid 1964(c) because Sater and Lauria were not specifically convicted of defrauding Plaintiffs.  Indeed, Plaintiffs were the direct victims of <u>Palagonia's</u> securities fraud.  To allow Plaintiffs to use <u>Sater</u>'s and <u>Lauria's</u>

convictions would be contrary to federal court decisions interpreting 1964(c) and Congress's intention to curb securities litigation abuses in its amendment of 1964(c) as part of the Private Securities Litigation Reform Act (the "PSLRA" or the "Reform Act").

Under 1964(c), a plaintiff cannot use securities fraud as a basis for a civil RICO claim unless the defendant in the action was convicted criminally for securities fraud against the very plaintiffs who bring the action.  Specifically, the statute provides as follows:

> [N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.  The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall run on the date on which the conviction becomes final.

18 U.S.C. s 1964(c).  The statute wholly forbids Plaintiffs from using conduct that could serve as the basis for securities fraud, as a predicate act for a civil RICO claim.  Courts have interpreted this provision broadly to bar reliance on "<u>any</u> conduct" that could serve as a basis for securities fraud, including mail and wire fraud and aiding and abetting securities fraud as a predicate act for a civil RICO claim.  *Id.; see also MLMSK Inv. Co. v. JP Morgan Chase & Co.,* 651 F.3d 268, 278-79 (2d. Cir. 2011)(the Conference Committee Report for this provision "bar[s] a plaintiff from 'pleading other specified offenses, such as mail or fraud, as predicate acts under civil RICO if such offenses are based on that could have been actionable as securities fraud.");  *see also Sissel v. Rehwaldt,* 2013 WL 2372296, *3 (2d Cir. June 3, 2013)(holding that 1964(c) "bars civil RICO claims based upon alleged predicate acts of securities fraud, including aiding and abetting.";  *Bald Eagle Area School Dist. v. Keystone Financial, Inc.,* 189 F.3d 321, 330 (3d Cir. 1999)("a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud, and bank fraud as predicate offenses …if the conduct giving rise to those predicate offenses amounts to securities fraud.").

3

By forbidding the use of securities fraud as a predicate act, Congress "was intending to
correct the misapplication of RICO in securities fraud context.  Moreover the record reveals that
Congress was weary of the susceptibility of civil RICO to litigation abuses in the securities fraud
area."  *Krear v. Malek,* 961 F.Supp. 1065, 1076 (E.D. Mich. 1997); *see also Abene v. Jaybar,*
802 F. Supp.2d 716, 721 (E.D. La. 2011)("This accords with the overriding purpose that
motivated Congress to amend the federal RICO statute – to shift the focus of the legislation back
to organized crime and to help ensure that securities fraud does not form the basis for civil
liability under RICO.").  This especially holds true here where Plaintiffs have already recovered
three times their initial investment, and the only function of this lawsuit is to recover treble
damages for conduct occurring 17 to 19 years ago.   (*See* Motion to Dismiss, at 7 (noting that
Plaintiffs admit to receiving and being entitled to $2,300,000 to compensate them for their
original $700,000 loss)); *See also Mathews v. Kidder, Peabody & Co., Inc.,* 161 F.3d 156, 164
(S.D.N.Y. 1998)(The RICO Amendment's "focus" was on "completely eliminating the so-called
'treble damages blunderbuss of RICO' in securities fraud cases)(citing Congressional record for
Reform Act).

Plaintiffs in this case indisputably and impermissibly rely on conduct constituting
securities fraud as the basis for their civil RICO claims.  They argue that they should be allowed
to do so because they meet the requirements of the "criminal conviction" exception.   However,
courts have consistently applied a very narrow reading of this exception.  In fact, in order to use
the "conviction exception" and plead securities fraud as a predicate act for a civil RICO claim
the plaintiffs bringing the action must have been <u>direct</u> and <u>named</u> victims of defendants'
securities fraud .  *See, e.g., Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1046 (9th Cir.
2006)("Section 1964(c) does <u>not</u> permit RICO claims against all defendants involved in a fraud

merely because one or more of them is convicted.")(emphasis added); *In re Enron Corp. Securities, Derivative, & ERISA Litig.*, 284 F.Supp.2d 511, 624 (S.D. Tex. 2003)("[T]he legislative history of [1964(c)] reflects, and the available case law supports, the Court's conclusion that the securities-based-fraud RICO claims can be used only against the particular defendant that was criminally convicted of fraud.").  Plaintiffs clearly fail to meet the requirements of the criminal conviction exception because Sater and Lauria were not criminally convicted of fraud specifically against the Plaintiffs.

In *Krear v. Malek*, the district court provided an extensive analysis of the conviction exception.  The court interpreted the conviction exception rule of 1964(c) "as narrowly as possible so that the exception is only available to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud."  961 F.Supp. at 1076 (emphasis added); *see also Abene*, 802 F. Supp.2d at 720-21 (noting that courts have "concluded that the [conviction] exception is narrow in scope" and finding these decisions "persuasive").  In addition, the district court noted that "[u]nless the plaintiffs are named victims of the scheme to defraud in the information, th[e] court cannot find that they have been criminally defrauded and are thereby entitled to invoke the 'conviction exception'."  *Krear*, 961 F.Supp. at 1077 (emphasis added).

The *Krear* court's interpretation of the conviction exception was largely based on the Congressional Record concerning the passage of the Reform Act.  Although the court recognized that indirect victims of a securities fraud scheme may exist, it still refused to interpret the conviction exception broadly:

> While it may be that the fraudulent conduct that [defendant] pleaded guilty to indirectly affected other plaintiffs of the alleged Ponzi scheme, by helping to facilitate the scheme, this court is not prepared to read the "conviction exception" language so broadly as to include any plaintiff who claims to have been defrauded by that scheme.  Such an interpretation would be contrary to the [the Reform Act's] goal to significantly limit, if not eliminate, a defendant's exposure to treble damages for securities fraud.

*Id.* at 1077-78.

The legislative history of 1964(c) eliminates any doubt as to the requirement that there be a specific and direct connection between the criminal conviction and the plaintiffs in an action. Congress specifically "considered a more expansive version of the [conviction] exception, one that would have preserved a civil RICO claim predicated on securities fraud 'if <u>any</u> participant in the fraud [were] criminally convicted in connection therewith." *Abene,* 802 F. Supp.2d at 721; *see also Enron Corp.,* 284 F.Supp.2d at 623 (same). Ultimately, Congress rejected this version of 1964(c), "underscore[ing] its intent to allow a civil RICO claim that is premised on securities fraud only to the extent that is 'against the person who was actually criminally convicted'." *Abene*, 802 F. Supp.2d at 721 (quoting *Enron Corp.,* 284 F.Supp.2d at 623)). Simply put, Congress ultimately adopted a version of the conviction exception that limits civil RICO liability to those defendants who actually defrauded plaintiffs, rather than those tangentially involved in the fraud.

Nevertheless, Plaintiffs insist – without any legal authority[1] – that they are entitled to use Sater and Lauria's securities fraud conviction in order to avail themselves of the "criminal conviction" exception for their civil RICO claim, while simultaneously admitting that they were not the direct victims of Sater and Lauria's securities fraud. (*See* Opposition, at 1 (admitting that their predicate act is "aiding and abetting <u>Palagonia's</u> securities fraud.")(emphasis added); *see also* Complaint, at ¶¶ 143-145 (admitting that Plaintiffs suffered Trading, Commission, and Fee and Expenses Losses "as a result of Palagonia's unlawful conduct"). Indeed, Plaintiffs were Palagonia's, not Defendants', customers. They bought stock from Palagonia, not from

---

[1] The only case they cite in support of their argument is *SEC v. Zandford*, 535 U.S. 813 (2002), which involved a Section 10(b) claim, not a civil RICO claim. Furthermore, unlike the case here, *Zandford* involved a broker who had contact with his customers and actually sold securities to them.

Defendants.  They knew Palagonia, not Defendants.  They spoke on the phone with Palagonia, not with Defendants.  Finally, and most importantly, it was Palagonia, not Defendants, who was convicted of securities fraud for selling stock to Plaintiffs.  Consequently, Palagonia's securities fraud conviction is the only relevant conviction for Plaintiffs' civil RICO claim.  Curiously, however, Plaintiffs fail to name him as a defendant in this action.  As they admit in their Opposition, this omission is fatal to their civil RICO claim.  (*See* Opposition, at 24)(citing the Congressional record for the principle that "the conviction exception [runs] only to the defendant being sued and no one else.")

## II-   Even if Plaintiffs could use Sater's and Lauria's securities fraud convictions to satisfy the "criminal conviction" exception to 1964(c), Plaintiffs still fail to allege a "pattern" of racketeering activity

Even if Sater's and Lauria's convictions met the standard for the "criminal conviction" exception, Plaintiffs have completely failed to allege a "pattern" of conduct required to bring a civil RICO claim.  That is, they have failed to allege the necessary two predicate acts of racketeering activity against each defendant within ten years of each other.  (*See* Motion to Dismiss, at 13-14 (discussing the requirements to allege a "pattern" of activity)).

First, even assuming Sater's fraud conviction qualifies to meet the civil RICO standards, Plaintiffs fail to allege another predicate act within 10 years of October 23, 2009, when Sater's conviction became final.[2]  Indeed, it is when Sater's conviction became final that a predicate act,

---

[2] Lauria was sentenced on February 25, 2004.  Consequently, the four-year statute of limitations for a civil RICO claim against him expired in 2008.  Plaintiffs have failed to refute any of our arguments concerning the statute of limitations issue.  (*See* Motion to Dismiss, at 11-12).  They have failed to cite a single authority permitting a civil RICO claim to be tolled on the basis that Lauria's court records were sealed, conveniently failing to address the myriad of other ways that Plaintiffs could have discovered Lauria's allege role in their financial losses.  Their only argument is whether the statute of limitations should be tolled is a "factual" matter outside the complaint, an argument wholly without merit.  (*See* Opposition at 25).  Indeed, Palagonia's deposition – which Plaintiffs have incorporated by reference in their Complaint - and the government's March 19, 2000 press release, a matter of public record, (Motion

7

for civil purposes, had been committed.  Consequently, even if the Court were to accept Plaintiffs' claim that Sater and Lauria committed multiple predicate acts, Plaintiffs' civil RICO claims would still fail because none of these predicate acts occurred within ten years of Sater's conviction becoming final.  *See* CIVIL RICO, A DEFINITIVE GUIDE, 3RD EDITION, by Gregory Joseph, at 243 ("[A]t least one other predicate act [must] occur[ ] within ten years of the conviction's having become final.  Nothing in the Amendment to § 1964(c), however, is directed at, or should affect, the ten-year period contained in the definition of "pattern of racketeering activity" in § 1961(5).").  Consequently, Plaintiffs fail to satisfy the continuity requirement of alleging 2 predicate acts within 10 years of each other.

Second, even if we were to consider the predicate acts outside this 10-year time frame, Plaintiffs still only allege <u>one</u> predicate act, namely one alleged agreement between Defendants and Palagonia to sell two stocks.  This one alleged agreement is the entire basis for their aiding and abetting predicate act.  Nevertheless, to satisfy the two-predicate-acts requirement for a civil RICO claim, Plaintiffs attempt to slice this one act into six different acts, claiming it qualifies as (i) Securities Fraud; (ii) Conspiracy to Commit Securities Fraud; (iii) Aiding and Abetting Securities Fraud; (iv) Money Laundering; (v) Conspiracy to Launder; (v) Mail Fraud; and (vi) Wire Fraud.  (*See* Opposition, at 21-22).  What is lost on Plaintiffs, however, is that simply because a single act can serve as the basis for multiple causes of actions does not mean that it also qualifies as multiple predicate acts.[3]  The Second Circuit has specifically warned that "courts must take care to ensure that the plaintiff is not artificially fragmenting singular act into multiple acts simply by invoking RICO." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d

---

to Dismiss, at 11-12)  prove that, with a little due diligence, Plaintiffs could have discovered Lauria's alleged role in Palagonia's fraud, regardless of whether a few court records were sealed.

[3] In terms counsel to Plaintiffs can understand, an act is an act, regardless of its "use" as multiple causes of action.

91, 98 (2d Cir. 1997)(holding that acts relating to a single contract and a single scheme to

defraud were not continuous for RICO purposes even though they spanned over three years); *see*

*also Gilmore v. Gilmore*, 503 Fed. Appx. 97, 99 (2d Cir. 2012) (affirming district court's refusal

to split the alleged predicate acts into two separate enterprise where the acts were related to a

single RICO enterprise and "shared an alleged purpose and result"); *Seippel v. Jenkins &*

*Gilchrist, P.C.*, 341 F. Supp.2d 363, 373 (S.D.N.Y. 2004) ("Having alleged....that defendants'

acts were part of a single fraudulent scheme, the [plaintiff] cannot divide the scheme into its

various component acts.  Allowing such a surgical presentation here would undermine the

congressional intent behind the [Reform Act's] Amendment to RICO."); *Ling v. Deutsche Bank*

*AG.*, 2005 WL 1244689, at *4 (S.D.N.Y. May 26, 2005)("Because...the Plaintiffs contend the

wrongful acts were committed as part of a single fraudulent scheme, all of the components must

be considered together <u>for securities fraud purposes</u>.")(emphasis added).

  To allow Plaintiffs to split a single act into multiple predicate acts for civil RICO

purposes would allow almost any plaintiff to convert a securities fraud claim into a civil RICO

claim for treble damages by dividing the securities fraud into different parts or "predicates."  A

plaintiff alleging a securities fraud claim could claim that each time a defendant spoke to a

customer about a stock, each conversation between defendant and his colleague about the sale of

that stock, each stock defendant sold to a customer, each wire transfer of money as a result of the

sale of stock, are all separate predicate acts.  (*See* Opposition at 22 (absurdly making this precise

claim).  This was not the intention of Congress.  The "conviction" under 1964(c), as the language

of the statute shows, is the only predicate act, regardless of whether the conduct underlying the

conviction can be divided into smaller acts.  *See* 18 USC § 1964(c) ("The exception contained in

the preceding sentence does not apply to <u>an action</u> against any person that is criminally convicted

in connection with the fraud, in which case the statute of limitations shall run on the date on which the conviction becomes final.)(emphasis added).

**III-**   **Plaintiffs cannot allege conspiracy to commit civil RICO because the conduct they base their claims on does not constitute a viable predicate RICO act**

As set forth in Sections I and II above, Plaintiffs have failed to allege a viable civil RICO claim because they do not satsify the "criminal conviction" exception and therefore their claims are barred by the PSLRA amendment prohibiting the reliance on securities fraud conduct as a predicate act for purposes of RICO.  Since there is no viable predicate act pled to satisfy 1962(c), the Court should dismiss Plaintiffs' section 1962(d) conspiracy claim.[4]  The Supreme Court in *Breck v. Proupis,* held that if the "overt act" committed by Defendant is not a predicate act within 1961(1), then Plaintiffs do not have standing to sue under 1962(d).  529 U.S. 494, 505 (2000); *see also* Opposition, at 15 (admitting that the Supreme Court precedent on this issue is *Beck v. Proupis*).  Consequently, Plaintiffs' 1962(d) claim should also be dismissed.

## CONCLUSION

Plaintiffs have failed to state viable civil RICO claims under 1964(c) and (d) because they fail to successfully invoke the conviction exception under 1964(c), and consequently, the they fail to allege a single viable predicate act as required for either a 1964(c) and 1964(d) claim. Accordingly, their entire complaint should be dismissed.

---

[4] The following are the cases cited by Plaintiffs in support of their civil RICO conspiracy claim, but which have no relevance here:  *Smith v. Berg* (concerning misleading homeowners into purchasing homes); *Strayer v. Bare* (concerning attorney's misappropriating client funds); *US v. Sasso* (concerning the organized crime's infiltration of a teamster union); *Schwab v. Philip Morris* (concerning a dispute between cigarette smokers and manufacturer dispute about the health risks of smoking); *Baisch v. Gallina* (concerning lender's claims against an insurance broker); *Zito v. Leasecomm* (concerning fraudulent schemes involving the leasing of e-commerce services and products.  (*See* Opposition, at 16-17).

Dated: September 27, 2013
New York, New York

Beys, Stein Mobargha & Berland LLP

By: _____
Nader Mobargha

The Chrysler Building
405 Lexington Ave., 7th Floor
New York, New York 10174
Telephone: (646) 755-3603
Facsimile: (646) 755-5229
Email: nmobargha@beysstein.com

*Attorneys for Defendants*

11