BEYS STEIN MOBARGHA & BERLAND LLP

Nader Mobargha
646.755.3603 (Direct)
nmobargha@beysstein.com

October 11, 2013

**BY EMAIL AND ECF**

The Honorable Lorna G. Schofield
The United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007-1312

      Re:    **Estate of Ernest Gottdiener et al. v. Felix Sater et al., 13 Civ. 1824**

Dear Judge Schofield:

      The parties in the above-referenced action submit this joint status letter in compliance with Your Honor's May 24, 2013 Order.

**I-**    **Nature of the Case**

      Plaintiffs filed the above-referenced action against Defendants under 18 U.S.C. §§ 1962(d) and 1964(c) of the Racketeer Influencing and Corrupt Organizations Act ("RICO claims").

      **A.**    *Plaintiffs' interpretation of the case*

      Plaintiffs are victims of a "pump and dump" stock fraud (the "Scheme") perpetrated by persons, including Defendants. During his participation in the operation of the Scheme, one, non-party Alfred Palagonia, a broker at brokerage D. H. Blair, sold Plaintiffs worthless penny stocks without disclosing that the inflated prices of the shares were being manipulated in a rigged market and he was being bribed to do so. During their participation scheme, Defendants, then principals at brokerage White Rock, bribed Palagonia to do this because White Rock was also defrauding its customers by stuffing the stocks on them and so benefited from the extra price support.

      Palagonia pled guilty for his participation in the pattern operation of the Scheme to federal charges of securities fraud, securities fraud conspiracy, and racketeering, and was sentenced for securities fraud conspiracy. He also pled guilty to state charges of racketeering and was sentenced on that. He subsequently gave sworn deposition testimony that he was bribed by Defendants qua White Rock and in return did fraudulently stuff those stocks onto Plaintiffs and thereby cause them loss.

      Plaintiffs have been preclusively adjudicated federal crime victims of the Scheme and received a final, nonappealable order of restitution in their favor from Palagonia for $1,300,000.

      Defendants pled guilty for their participation in the pattern operation of the Scheme to federal charges of racketeering predicated on five acts of securities fraud and one of money laundering. Among the predicate acts of securities fraud listed in the informations they were charged with, pled to – and so admitted by their pleas – was that as part of said frauds they bribed brokers at other firms to fraudulently stuff those stocks onto their customers.

---

The Chrysler Building, 405 Lexington Avenue, 7th Floor, New York, NY 10174
Main: 646.755.3600 • Fax: 646.755.3599
www.beysstein.com

Plaintiffs sued Defendants for violating substantive RICO, alleging that Defendants, while participating in the pattern operation of a RICO enterprise, causally injured them by predicate acts of mail fraud, wire fraud, securities fraud, aiding and abetting mail, wire, and securities fraud, and conspiring in mail, wire, and securities fraud, many of those secondary crimes (aiding and abetting and conspiring to commit those crimes) targeting Palagonia and others as primary actors. Accordingly, the defendants are liable in substantive RICO, insofar as their own frauds, including but not limited to frauds on the market, causally damaged the plaintiffs; and insofar as their own aid and abettance and conspiracy were predicate acts, and so in that regard also damaged the plaintiffs.

Plaintiffs sued Defendants for violating conspiracy RICO, alleging they, whether or not doing so in their participation in said pattern operation of a RICO enterprise, conspired to, and did, facilitate the pattern operation by Palagonia and others of a RICO enterprise, causally injuring them. They are liable if they did anything to further Palagonia's racketeering, pursuant to *Beck v. Prupis* and *Smith v. Berg* and similar cases in this circuit. All that is required to establish RICO liability is intentional furtherance of someone else's racketeering plus an overt act in furtherance. It is not required that the defendant's overt act be a predicate act, but only that one of the co-conspirators they are alleged to have furthered committed a predicate act that causally harmed the plaintiffs.

### B.   *Defendants' interpretation of the case*

Defendants' defenses – on the motion to dismiss and in discovery – will simply concern whether Plaintiffs have satisfied the necessary elements of a civil RICO claim. Generally, Plaintiffs' case concerns a single alleged agreement between Alfred Palagonia ("Palagonia"), and Felix Sater ("Sater") and Salvatore Lauria ("Lauria"), employees who, at the time, worked at the brokerage firms of D.H. Blair ("Blair") and White Rock, respectively. The alleged agreement between Palagonia, and Sater and Lauria, was to sell two stocks, Holly Products and US Bridge. That is it. Aside from this single agreement, there is no further connection between (i) Palagonia and Blair, and (ii) Sater, Lauria, and White Rock. Although Plaintiffs attach various court records concerning Sater and Lauria's convictions, Sater and Lauria were never convicted of defrauding Plaintiffs. Rather, it was Palagonia who was convicted specifically of defrauding Plaintiffs. Accordingly, Plaintiffs fall far short of satisfying the necessary substantive elements of a civil RICO claim.

Furthermore, all of the events underlying Plaintiffs claims took place 17-19 years ago, an issue that Defendants raise in their motion to dismiss.

## II-   Subject Matter Jurisdiction and Venue

Both parties agree that, assuming that Plaintiffs have adequately stated claims under 18 U.S.C. §§ 1962(d) and 1964(c), that the court has jurisdiction over the case under 28 U.S.C. § 1331, governing "civil actions arising under the…laws…of the United States." Additionally, venue is proper, as alleged RICO predicate acts occurred within the SDNY.

## III-   Motions

### A.   *Current motions*

The parties have briefed Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Defendants' motion to dismiss is based on both statute of limitations grounds and a failure by Plaintiffs to properly plead the elements of a civil RICO claim.

### B.   *Plaintiffs' future motions.*

Plaintiffs submit the following statement: In light of the argument raised by defendants for the first time in their reply papers that only plaintiffs named in criminal charging papers have standing to sue in civil RICO – which is not the law in the Southern, Eastern, Western, or Northern Districts of New York – plaintiffs will request that this court not consider the new argument, or, in the alternative, allow sur-reply. Such request for sur-reply, with related relief, will follow shortly. In that sur-reply Plaintiffs will inform the court of an SDNY RICO case recently before Judge Rakoff which repudiates this line of reasoning and indeed goes on to uphold quite explicitly that the "conviction exception" absolutely allows civil RICO for aiding and abetting securities fraud where the defendant has been convicted of anything in connection with the fraud charged in the civil suit.

Plaintiffs inform the court that if it will consider defendants' belated argument, in addition to sur-reply, they will move against the United States as non-party respondent. Where no prosecution is under way, there is standing to bring a motion to enforce victims' rights *in any district where crime was committed.* 18 U.S.C. §3773(d)(3), by which the government can be ordered to show cause why it should not be ordered to perform its mandatory statutory duties under crime victims' rights statutes, e.g., 18 U.S.C. § 3771 and 42 USC § 10607(b)(1), (c)(1)(B), which, *inter alia*, require the government inform victims of restitution or other relief to which they may be entitled under *any* law.

While we do not believe this falls under the court's local rule requiring pre-motion conference, insofar as the court could not order the United States, being a non-party, to do anything absent obtaining jurisdiction in the first place, and more important because the statute removes discretion from the Court and *requires* it to take up and decide any such motion *forthwith*, the plaintiffs will address any concerns in this regard at the upcoming conference.

Additionally, Plaintiffs have become aware of a recent decision of the Second Circuit, issued after briefing on the Motion to Dismiss, which controls issues in the Motion. On September 23, , the Second Circuit decided *In re Amaranth Natural Gas*, 12-2075 (2d Cir. 2013), precedentially determining the pleading required to state a private cause of action, not an enforcement action by the SEC or CFTC, but a *damages* action by private plaintiffs, where substantive law creates private aiding and abetting civil liability based on 18 U.S.C. §2, as it does in aid and abettance of commodities fraud, the context of *Amaranth*, and aid and abettance of securities fraud when aid and abettance was committed as a predicate crime by a defendant convicted in connection with the fraud, the context here.

Noting the aiding and abetting language of the CEA was modeled on 18 U.S.C. §2, and other courts have held the standard for aiding and abetting under the CEA is the same as 18 U.S.C. §2, the Second Circuit agreed, holding that per the CEA, *exactly as per 18 U.S.C. §2*, aiding and abetting requires that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, [and] that he seek by his action to make it succeed," adding, "in evaluating a complaint alleging aiding and abetting…allegations about the defendant's knowledge, intent, and actions should not be evaluated in isolation, but rather in light of the complaint as a whole."

*Amaranth* doesn't hold that liability for aiding and abetting securities fraud under 18 U.S.C. §2 works as a RICO predicate for civil liability; that issue was not in the case. It holds that *if it does work, this is how it must be pled*, as this is how violations of 18 U.S.C. §2 must be pled in homologous claims. Obviously, bribing Palagonia to pump White Rock "house" stocks to further the Scheme is

aiding and abetting by 18 U.S.C.§2, and has been well pled, and liability of the primary actor exists as a matter of law for Defendants as secondary aider and abettors by mediate causation (vicarious liability).

Thus, Plaintiffs expect to file a motion for summary judgment, possibly even a pre-answer motion for partial summary judgment in liability, based upon, *inter alia*, collateral estoppel and res judicata, as well as upon information revealed during discovery, or admitted to, in response to notices to admit.

Counsel for Plaintiffs add that while we do not agree at this time to stay discovery, *infra*, we as a courtesy to our colleagues we agree to stay all discovery until the October 21 conference.

Finally, Plaintiffs believe for reasons they will detail separately that appointment of a special master is appropriate in the unique facts of this case, and expect to move for such. Again, this is not to say that Plaintiffs don't actually believe this is necessary; rather, they believe that if the Court disagrees with Plaintiffs that the issue of liability here is astonishingly clear, this may be the fastest way to get resolution, by bringing in an expert to help the Court and parties (we presume the special master would also help provoke settlement discussions).

### C. *Defendants' future motions*

Defendants intend to move pursuant to FRCP 26(a)(3) to stay discovery until their motion to dismiss under FRCP 12(b)(6) has been decided. Defendants have incurred substantial attorney's fees and costs to date as a result of the frivolous litigation tactics of Plaintiffs to date, including their filing of no less than 3 civil RICO actions against Defendants and an endless frivolous litigation campaign concerning the sealing of Defendants' criminal records and other information. In fact, in an order, dated December 20, 2011, the Court of Appeals "warned that the Court's patience has been exhausted by [counsel's] filing of six separate notices of appeal regarding the same principle legal dispute….and that any further attempts to re-litigate the issues decided by this order, <u>or other future filings of a frivolous nature, may result in sanctions</u>." Consequently, Defendants would like to avoid incurring the substantial attorney's fees and expenses that arise during discovery, at least while the Court considers Plaintiffs' motion to dismiss. Defendants are prepared to brief the issue if necessary.

Defendants also may seek sanctions against Plaintiffs under FRCP 11 for their frivolous litigation tactics.

Defendants just recently learned about the Plaintiffs' intention to file its motions, and reserve the right to respond fully at a later time. However, upon first impression, Defendants do not believe that a private civil RICO action is the appropriate forum for a motion directed against the Government – a nonparty to this action – concerning victims' rights under an unrelated statute. Furthermore, the basis for filing a Sur-Reply to our Reply Memorandum in Support of their Motion to Dismiss ("Reply") is without merit as every argument that Defendants made in their Reply was an argument in response to Plaintiffs' opposition papers. Finally, every argument Defendants made in their Reply was already raised in their motion to dismiss.

### IV- <u>Discovery</u>

At the present time, the parties have not commenced discovery. At the status conference on October 21, 2013, Defendants will respectfully request that, to save costs in a multi-court litigation that has caused Defendants to incur substantial attorney's fees and expenses, the Court grant

permission to file a motion under FRCP 26(a)(3) to stay discovery until the Court decides Defendants' Motion to Dismiss. *See also* III(C), *supra*.

## V- <u>Damages</u>

Plaintiffs have included the following statement as the basis for the computation of their damages: Plaintiffs claim actual damages of the following, listed in order of computation and without regard to whether claimed as due by substantial assistance (aid and abettance), by civil *Pinkerton* liability (conspiracy), by direct liability (primary fraud), or other basis:

(1) All losses caused plaintiffs in respect of Holly and US Bridge securities;

(2) All losses caused plaintiffs in respect of all other wrongful acts or omissions of Palagonia and those associated with him insofar as those acts were taken within the scope of, or foreseeably by, said persons; in other words losses as to all securities other than Holly and Bridge securities.

(3) Compensation for time value of money pursuant to "well managed account" theory.

(4) Trebling of (1) through (3)

(5) Addition of reasonable attorneys' fees as substantive damages

(6) Subtraction of properly allocable amounts recovered in the interest of justice as otherwise would result in double recovery, to the extent the court rules that improper.

**By way of illustration only**, insofar as the stipulated restitution award against Palagonia was approximately $1,300,000, and accounted for time value of money through about December 31, 2012, then assuming no change in method as to time value of money adjustment that amount would go into (1); then increased by $X as to (2) and (3) to be determined at trial but X estimated at $5,500,000 prior to trebling by the same or similar method as produced the restitution award; then trebled by (4), then incremented by (5) either multiplying by 1.67 to compensate for contingency or by reasonable hourly rates or fixed fee, then with subtraction; then reduced by (6), so again and for example only, between roughly $5,500,000 and $33,000,000, assuming $1,000,000 subtraction in (6).

This assumes no motion for class certification and is separate from punitive damages, which though pled can't be estimated, as availability, let alone amount, are subject to the court's discretion. Defendants are liable for all Palagonia's predicate acts not just for losses tPlaintiffs sustained with respect to the Bridge and Holly securities, but all losses foreseeably sustained by anyone.

## VI- <u>Settlement Status</u>

Defendants do not believe that settlement discussions would be useful or productive at this time. Plaintiffs believe a special master may be productive.

Respectfully Submitted,

Nader Mobargha
*Counsel for Defendants*

*Agreed to by Frederick M. Oberlander and Richard E. Lerner*