UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
THOMAS H. LEE EQUITY FUND V, L.P.,
THOMAS H. LEE PARALLEL FUND V, L.P.,       :   07 MDL 1092 (JSR)
and THOMAS H. LEE EQUITY (CAYMAN)          :
FUND V, L.P.,                              :   07 Civ. 6767 (JSR)
                                           :
        Plaintiffs,                        :
                                           :
v.                                         :
                                           :
MAYER, BROWN, ROWE & MAW LLP and           :
JOSEPH P. COLLINS,                         :
                                           :
        Defendants.                        :
---------------------------------------x

REPORT AND RECOMMENDATION OF THE SPECIAL MASTER
ON THE MOTION TO DISMISS THE PLAINTIFFS' AMENDED
RICO CONSPIRACY CLAIM

Plaintiffs (collectively the "THL Funds") bring a RICO claim in their Second Amended Complaint against Mayer, Brown, Row & Maw, LLP ("Mayer Brown") and its former partner Joseph Collins.[1] Mayer Brown moves to dismiss the RICO clam in the Second Amended Complaint for four

---

[1] The parties dispute whether Mayer Brown is a single entity or two separate partnerships. Judge Lynch resolved the dispute for the purposes of this motion in a footnote in *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP,* 612 F.Supp.2d 267, 270 n.1 (S.D.N.Y. 2009):

> Plaintiffs allege that Mayer Brown, Rowe & Maw LLP is a "combination" of two legal entities — an Illinois limited liability partnership (Mayer Brown LLP), and a limited liability partnership formed under English law (Mayer Brown International LLP). (Am.Compl.¶¶ 11-12.) Mayer Brown disputes that there is such a combined entity, contending that a combination of two limited liability partnerships has no legal status. This argument, however, is raised in a footnote and Mayer Brown International has not filed a separate motion to dismiss. Rather, Mayer Brown International, without further argument, has joined the brief submitted by the Illinois LLP. Accordingly, for purposes of this motion, the two Mayer Brown partnerships will be treated as one entity.

1

reasons. This report and recommendation will address the merits of each of the reasons put forth by Mayer Brown.

For reasons discussed below, the motion to dismiss should be *granted with prejudice*, because the RICO claim is barred by the prohibition (added by the PSLRA) on RICO claims involving securities fraud. See 18 U.S.C. § 1964 (c). The so-called "conviction exception" to that bar does not apply to a RICO claim against Mayer Brown, because Mayer Brown is not a "person that is criminally convicted in connection with the fraud." If the court disagrees with this recommendation, then the court should deny the motion to dismiss, because Mayer Brown's other arguments for dismissal are without merit.

### I. Factual Background

This action is another product of the collapse of Refco. The frauds surrounding Refco have already been chronicled in two R and R's entered by the Special Master in *Krys v. Sugrue*. The particular facts relevant to this action have been set forth by Judge Lynch in *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F.Supp.2d 267 (S.D.N.Y. 2009), and the following description relies heavily on Judge Lynch's account.

The THL Funds invested more than $450 million in Refco and acquired the majority of Refco's stock through a leveraged buy-out ("LBO") in August 2004. Following Refco's collapse in the fall of 2005, the THL Funds allegedly experienced losses in excess of $245 million. Mayer Brown was Refco's principal outside counsel, and the THL Funds claim that the law firm made numerous misrepresentations to them in connection with the LBO. After the Supreme Court decided *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008), the THL Funds filed an Amended Complaint reasserting claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961- 1968, and state law claims for fraud and negligent misrepresentation. Mayer Brown moved before Judge Lynch to dismiss all claims. Judge Lynch granted the motion with respect to the 10(b) claim, the RICO claim, and the state law claim for negligent misrepresentation. He denied it with respect to the state law claim for fraud.[2]

For purposes of this motion to dismiss, Judge Lynch's resolution of the 10(b)(5) claim and the state law claim for negligent misrepresentation are not relevant; and Mayer Brown does not (cannot in light of Judge Lynch's ruling) move to dismiss the fraud claim. Accordingly, the remainder of the background discussion focuses on the RICO claim.

---

That analysis controls here.

[2] The initial complaint was filed on July 26, 2007. The THL Funds filed a First Amended Complaint on February 20, 2008, and it was that complaint that was dismissed in part by Judge Lynch.

2

The THL Funds allege that Mayer Brown provided legal assistance to Refco for the round-trip loans that transformed Refco's uncollectible losses into receivables owed to Refco by third-parties. They also allege that Mayer Brown participated in drafting the documents (most importantly the Offering Memorandum) used to induce investors into purchasing Refco's Bonds. The THL Funds further allege that Mayer Brown — mainly partner Joseph Collins — lied to them and withheld critical information throughout the due diligence process that was conducted before the LBO. For example, the THL Funds allege that Collins told them and their counsel Weil Gotshal & Manges, LLP ("Weil Gotshal") that he had "confirmed with" or was "advised by" Refco management that there were no related-party transactions and that all material documents were being produced. As Mayer Brown knew, however, numerous related-party transactions, including the round-trip loans, were not being disclosed to the THL Funds, and documents related to those transactions were not being produced. One such document was a copy of the so-called "Fourth LLC Agreement" a document requested by Weil Gotshal after it discovered an unexecuted copy of the document in the data room. Instead of turning over the executed document as requested, however — which in conjunction with the Proceeds Participation Agreement to which it referred would have led to the revelation of the uncollectible receivables and thus Refco's true financial condition — Collins gave a counterfeit document to the THL funds that omitted the damaging information. Other documents, including the Proceeds Participation Agreement and the related "Letter Agreement" were never produced, despite the fact that those documents had been requested by the THL Funds. Toward the end of the LBO process, Mayer Brown also negotiated, drafted, and reviewed the Equity Purchase Agreement that contained representations that there were no related-party transactions, a fact that Mayer Brown knew to be false. See generally ¶¶ 60-71 of the Second Amended Complaint.

Upon completion of due diligence, the THL Funds consummated the LBO transaction in August 2004 and acquired a majority ownership interest in Refco as well as numerous seats on Refco's Board of Directors — leading to lawsuits against them from other victims of the Refco fraud. In early October 2005, Refco's uncollectible debt became public and the company informed investors that they could no longer rely on its financial statements for the preceding four years. Refco's stock plummeted, and on October 17, 2005, Refco filed for Chapter 11 bankruptcy protection. The collapse allegedly caused the THL Funds to suffer millions of dollars in losses.

## II. Judge Lynch's Disposition of the RICO Claim

Judge Lynch dismissed the plaintiffs' RICO claim in the First Amended Complaint because he found it barred by Section 107 of the Private Securities Litigation Reform Act ("PSLRA"). Section 107 amended the RICO statute to bar private causes of action under RICO "for predicate acts that would otherwise be actionable as securities fraud." 612 F.Supp.2d at 281. The relevant statutory provision is 18 U.S.C. 1964(c), and as amended by the PSLRA it provides as follows:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, *except that no person may rely upon any conduct that would have been actionable as*

3

*fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the proceeding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.* (Amendment italicized).

Judge Lynch concluded that the alleged fraudulent acts of Mayer Brown were actionable as securities fraud because they related to a sale of securities in the LBO. Relying on the majority view in the case law, Judge Lynch found it irrelevant that the plaintiffs could not in fact bring a securities claim against Mayer Brown.[3] Judge Lynch ruled that the "better interpretation — and the one supported by the plain meaning of § 107 — is that the RICO Amendment bars claims based on conduct that could be actionable under the securities laws even when the plaintiff, himself, cannot bring a cause of action under the securities laws."

### III. Conviction of Joseph Collins

On July 10, 2009, following a nine-week jury trial, Joseph Collins was convicted of five of fourteen counts related to assisting Refco's fraud. Collins was convicted of (1) one count of conspiracy to commit securities fraud, wire fraud, bank fraud, and money laundering, to make false filings with the SEC, and to make material misstatements to auditors (Count One of the Collins Superseding Indictment); (2) two counts of securities fraud (Counts Two and Three); and (3) two counts of wire fraud (Counts Six and Nine).[4] Judge Patterson denied Collins's motion for a new trial on March 3, 2010. Judge Patterson granted Collins's motion for bail pending appeal. *See* 18 U.S.C. § 3143 (defendant must be detained pending appeal unless the court finds clear and convincing evidence that the defendant is not likely to flee or pose a danger, and the appeal raises "a substantial question of law or fact likely to result" in reversal, new trial, or reduced sentence).

In response to Collins's conviction, the THL Funds have filed a Second Amended Complaint on the RICO claim. The THL Funds contend that what will be referred to as the "conviction exception" allows them to plead a RICO claim even though it is based on conduct that is actionable as securities fraud. The conviction exception, broken out from section 1964(c) set forth above, provides that the PSLRA bar to RICO claims

*does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.*

---

[3] Judge Lynch found the securities fraud claim barred by *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008).

[4] The jury was unable to reach a verdict on the remaining counts, and a mistrial was declared as to those counts.

### IV. Mayer Brown's Arguments for Dismissal.

Mayer Brown makes four arguments for dismissing the RICO claim. Mayer Brown contends as follows:

1. The PSLRA bar against RICO claims predicated on alleged securities fraud is lifted only for "an action against *any person that is criminally convicted* in connection with the fraud" — and while Collins has been criminally convicted, Mayer Brown has not.

2. The criminal conviction exception is triggered only when a conviction becomes final, and a conviction is not final until it withstands appellate review.

3. For the proviso in § 1964(c) to apply, the defendant against whom the civil RICO claim is brought must have been "criminally convicted in connection with the fraud," which means criminally convicted in connection with the fraud alleged in the RICO claim. Mayer Brown contends that Collins may have been convicted of a fraud that is narrower than that alleged by the THL Funds in the Second Amended Complaint — and that the predicate acts alleged in the RICO claim relating to that narrower fraud do not satisfy RICO's "pattern" requirement.

4. Even if the RICO claim were not barred by § 1964(c), the THL Funds have failed to state a claim against Mayer Brown.

Each of these arguments will be addressed in turn. As the first argument is dispositive of this motion, the other arguments will be addressed only briefly.

### V. Action Against "any person that is criminally convicted"

Mayer Brown argues that the conviction exception applies only to claims against the person who has been criminally convicted. Under that reading, the THL Funds could bring a RICO claim against Collins, but not against Mayer Brown. Mayer Brown cites a number of cases in which courts refused to apply the conviction exception against defendants who had not themselves been convicted. For example, in *Powers v. Wells Fargo Bank*, 439 F.3d 1043, 1046 (9th Cir. 2006), the court held that "Section 1964(c) does not permit RICO claims against all defendants involved in a fraud merely because one or more of them is convicted." The fact that one defendant was convicted did not lift the PSLRA bar as to other individual defendants who were not. *See also Fezzani v. Bear, Stearns & Co.*, 2005 WL 500377, at *4, n.2 (S.D.N.Y.) ("the criminal-conviction exception is expressly associated with a particular defendant"); *Tittle v. Enron Corp*, 284 F. Supp. 2d 511, 624 (S.D. Tex. 2003) ("The language of § 107's conviction exception is plain and unambiguous; even if it were not, the legislative history reflects, and the available case law supports, the Court's conclusion that the securities-fraud-based RICO claims can be used only against the particular defendant that was criminally convicted of fraud."); *Rowe v. Marietta Corp.*, 955 F. Supp. 836 (W.D. Tenn. 1997) (conviction against corporate officer does not lift the PSLRA bar for RICO claim against the

5

corporation).

The case law is consistent with the text of the criminal conviction exception.[5] *See* Gregory P. Joseph, *Civil Rico: A Definitive Guide* at 123 (3rd ed. 2010) ("By its terms, this conviction exception . . . does not authorize a civil RICO claim against others associated with [the person convicted]"). The language lifts the PSLRA bar only with respect *to an action against any person that is criminally convicted.* Notably, Congress did not refer to a "natural" person — rather to a "person." that is criminally convicted. Thus, the language covers entities that have been convicted as well as individuals. *See Cook County Illinois v. United States ex. rel. Chandler*, 538 U.S. 119 (2003) (when "person" is used in a statute it includes a corporation unless there is some affirmative indication to the contrary). So the exception contemplates the possibility that an entity could be convicted and then a RICO action against that entity could be brought. Further indication that the conviction of entities was contemplated by the statute is the reference to "any person *that* is criminally convicted." If the statute did not contemplate — and thus require — the conviction of an entity for the bar to be lifted as to that entity, then it would have referred to "any person *who* is criminally convicted."

Mayer Brown is an entity to which the conviction exception could be applied because a partnership can be criminally convicted. *See Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). The fact that Mayer Brown is a "person that" has not been convicted means, under the terms of the exception, that the RICO bar is not lifted as to Mayer Brown.

The policy of the PSLRA bar supports a person-specific construction of the conviction exception. As the THL Funds recognize in their brief, "Congress designed the PSLRA bar to address concerns that RICO was being used too broadly in the context of securities fraud cases." THL Funds' Brief at 24. The PSLRA was designed to prevent strike suits in securities cases, and the bar to RICO cases was needed to prevent parties from end-running the PSLRA limitation by clothing their strike suit in RICO garb. The idea of the conviction exception was that if a defendant had been convicted, there is obviously some merit to the underlying claim — it is not a strike suit. But that idea is necessarily defendant-specific. The conviction of one defendant does not necessarily mean that there is substantial merit to a suit against anyone other than the convicted defendant.

Another way to look at the PSLRA bar is that, if a person has committed a securities violation, then the securities laws provide a sufficient remedy and RICO should not be used as a pile-on. But if a person has been convicted of what amounts to securities fraud, then the sanction of treble damages are appropriate. Again, that is a defendant-specific conception.

To the extent it is necessary to consider, there is some legislative history that supports the natural reading of the conviction exception. Senator Biden had initially proposed broader language

---

[5] Statutory construction begins with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Albertini*, 472 U.S. 675, 680 (1985) (internal quotation omitted).

that would have allowed suit "if any participant in the fraud is criminally convicted in connection therewith." 141 Cong. Rec. S9150, S9163 (amendment 1481) (June 27, 1995). But this language was rejected in favor of the more limited "to an action against any person that is criminally convicted." Senator Biden stated that his proposal would mean that "the RICO statute [could] be used in a securities fraud civil case if at least one person in the civil case has been criminally convicted." In contrast, under the exception as enacted, "RICO could only be used in the civil case against the person who was actually criminally convicted." 141 Cong. Rec. S17991, S17992 (Dec. 5, 1995) (statement of S. Biden).[6]

The THL Funds contend that they are not arguing for an unacceptably broad interpretation of the conviction exception. They are not arguing, for example, that once any defendant is convicted of a crime involving securities fraud, then any other defendant allegedly involved can be sued under RICO. Thus, the THL Funds do not challenge the case law imposing the RICO bar in favor of unconvicted parties when only one individual is convicted. Rather, they contend that the phrase "action against any person that is criminally convicted" applies to a *partnership* when one of its partners has been convicted. In their view, the partner and the partnership are the same "person" and so when the partner has been convicted the partnership is also a "person" convicted.

There is something to be said for lifting the RICO bar as to a partnership when a partner is convicted. Wrongful acts of the partner are considered wrongful acts of the partnership. *See In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 623 n.33 (S.D.N.Y. 2005) (under New York law, "a tort committed by a partner . . . in the course of the partnership's business is imputed to the partnership."); *Comfort v. Wheaton Family Practice*, 229 Ill.App.3d 828, 594 N.E.2d 381, 385 (Ill. App. Ct. 1992) ("A partnership is liable to the same extent as a partner for any wrongful act of the partner acting in the ordinary course of the business."). Plaintiffs have also cited several lines of authority in which the partner and the partnership are one, such as cases under the Sherman Act. *See, e.g., Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147-48 (9th Cir. 2003) ("single-entity rule" under the Sherman Act applies to "partnerships"; "[w]here there is substantial common ownership, a fiduciary obligation to act for another entity's economic benefit or an agreement to divide profits and losses, individual firms function as an economic unit and are generally treated as a single entity"). If the convicted partner deserves to suffer treble damages, it could follow that the partnership deserves to suffer treble damages as well. And the concern over strike suits against others alleged to be involved with a convicted persons is diminished when the convicted person is a partner of a RICO claim is pursued against the partnership.[7]

---

[6] It is true that the statements of an opponent of legislation should be read with care, for fear that the comment was intended to raise a worst case scenario. But the important point is that Senator Biden proposed language that would have lifted the bar to a RICO suit against Mayer Brown in this case, and the language ultimately adopted by Congress was narrower, and does not lift the bar in a case such as this.

[7] Mayer Brown relies on the recent case of Rechberger v. Hurlburt, 2010 WL 742197 (W.D.N.Y.), a case in which the Magistrate Judge determined that a partnership could not be

7

But the fact remains that Mayer Brown was not convicted. The partnership is not — cannot be — subject to a criminal penalty from Collins's conviction. Mayer Brown was not sentenced, Collins was. It would be one thing to twist the language of the conviction exception to allow a RICO action if a partner was convicted *and the partnership could not be.* But this is not the case. The language of the conviction exception provides no basis for distinguishing a partnership from any other person who could be subjected to a criminal trial and possibly convicted, but was not. While Congress could have — and perhaps should have — carved out partnerships for special treatment under the conviction exception, it did not.

***Therefore, the plaintiffs' RICO claim against Mayer Brown should be dismissed with prejudice.***

## VI. Final Conviction

Mayer Brown argues that the conviction exception only applies to a conviction that is final, and a conviction does not become final until appeals have run out. The THL Funds argue that the PSLRA bar is lifted, according to its terms, as soon as a person is "criminally convicted."[8] Once again, resolution of a dispute about the scope of the conviction exception lies in the words of the statute. The PSLRA bar to RICO claims

> *does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.*

The statutory language is most logically parsed as follows. 1) "any person that is criminally convicted" is a description of the person who can be sued under civil RICO; 2) "the statute of limitations shall start to run on the date on which the conviction becomes final" describes the first point at which that person may be sued under Civil RICO. It is of course common for the statute of limitations begins to run at the point at which a party can sue. *See Reiter v. Cooper,* 507 U.S. 258, 267 (1993) (generally an action can be brought at the time the statute of limitations begins to run; creating a date for bringing suit that is different from the date the statute of limitation starts to run

---

sued under RICO even though a partner had been convicted. Mayer Brown is correct about the result in that case, but it would be fair to state that the question did not receive extensive analysis.

[8] At the time of briefing, Mayer Brown argued that Collins' conviction was not final in any sense because a motion for new trial was pending and Collins had not been sentenced. At this point, the issue is whether the conviction is final during the pendency of an appeal.

8

would be an "odd result").[9]

That parsing does not, however, solve the problem of *when* the conviction in fact becomes final. Nothing in the statute itself defines finality. It is therefore necessary to determine which point in time would best comport with the intent of Congress in enacting the conviction exception. As stated above, the policy of the conviction exception appears to be that if a person is convicted, the Congressional concern over strike suits — a concern that animated the PSLRA — is ameliorated, and treble damages may be justified. It follows that the Congressional concern is met if there is *reliable* evidence of substantial wrongdoing.

Mayer Brown argues that plaintiffs must wait until appeals run out because the criminal conviction may be reversed on appeal. But while reversal on appeal is always a possibility, the infrequency of such reversals accords with the well-established proposition that a judgment of conviction of guilt beyond a reasonable doubt is presumed to be a reliable indication of a defendant's guilt. It is clear that after conviction — and before appeal — the presumption of innocence no longer applies. *See, e.g., Deck v. Missouri,* 544 U.S. 622, 633 (2005) ("the defendant's conviction means that the presumption of innocence no longer applies."). The trial is the main event, not simply a precursor to an appeal. *See, e.g., Anderson v. Bessemer City,* 470 U.S. 564, 575 (1985) ("the trial on the merits should be the main event rather than a tryout on the road" such that deference to trial court factfinding is the "rule, not the exception") (internal quotation marks and ellipsis omitted).

Accordingly, construing "finality" as a final determination by the *trial court* after a guilty verdict fully comports with Congress's intent to prevent strike suits in securities fraud cases. At that point, there is a sufficient indication of responsibility on the part of the convicted person to permit a suit for treble damages against that person. Any rule requiring the plaintiff to wait for appeals to run out really proves too much — it exudes a lack of confidence in the accuracy of criminal convictions.

Mayer Brown cites a number of lines of authority in which convictions are not deemed "final" until direct review is terminated. But these are all inapposite. For example, the cases involving habeas corpus require direct appeals to be taken for the obvious reason that Federalism principles require the use of, and exhaustion of, state appeals before federal courts should be permitted to review state convictions. *See generally* Saltzburg & Capra, *American Criminal Procedure* Chapter 13 (9th ed. 2010). Federalism principles have no bearing on the application of the conviction exception in civil RICO.[10] None of the lines of authority cited require appellate review out of concern for the reliability

---

[9] The parties argue over whether the statute differentiates between two time periods: the time at which the person is criminally convicted and the time at which the statute of limitations begins to run. But the reference to "criminally convicted" is not in the statute to refer to a point in time. It is in the statute to describe the person who can be sued under Civil RICO.

[10] Mayer Brown refers to "retroactivity analysis" but those cases are from the same line as the habeas cases. See *Teague v. Lane,* 489 U.S. 288 (1989) (new rules generally not applicable to

of a criminal conviction — which is the crux of Mayer Brown's argument in this case.[11]

The closest examples are the rules on using criminal convictions as evidence. For example, Fed. R. Evid. 803(22) provides a hearsay exception for evidence of a criminal conviction. The basis for the exception is that if a defendant has been criminally convicted, this is a reliable indication of his guilt. See 4 Saltzburg, Martin & Capra, *Federal Rules of Evidence Manual* at 803-79 (9th ed. 2006) ("The rationale for admitting judgments of serious criminal convictions is that they are reliable, given the presumption that a guilty verdict is based upon a jury determination pursuant to extensive procedural safeguards, and subject to a beyond-a-reasonable-doubt standard of review."). Notably, Rule 803(22) provides that the judgment of conviction must be "final" before it is admissible; and the last sentence of the Rule provides that "[t]he pendency of an appeal may be shown but does not affect admissibility." Obviously, the conviction is "final" within the meaning of Rule 803(22) — i.e., sufficiently reliable — even though it is still on appeal. *See also* Fed.R.Evid. 609(e) (prior conviction admissible to impeach a witness even though it is on appeal).

Mayer Brown argues that it would be disruptive and wasteful to allow a plaintiff to bring a civil RICO action while the defendant's conviction is on appeal, because if the appeal is successful, the RICO claim will have to be dismissed (or relief sought under Fed.R.Civ.P. 60), and litigation resources will have been wasted. But Mayer Brown's argument once again stems from lack of confidence in the reliability of a guilty verdict. The presumption is accuracy, not inaccuracy. When the presumption of accuracy is applied, it is apparent that requiring plaintiffs to wait until a defendant's appeals are terminated is disruptive, and inefficient, in its own right. Non-RICO claims would be proceeding (such as the common law fraud claims in this case) while the RICO claim is in abeyance, perhaps for years.[12] If an appeal is unsuccessful — as it is likely to be — significant judicial management issues will arise when the RICO claim is revived. And justice will be delayed for

---

cases on habeas review).

[11] Mayer Brown relies on *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp.2d 511, 624 (S.D. Tex. 2003), in which the court held that finality for purposes of the criminal conviction exception means exhaustion of direct appeals. Judge Harmon provided no analysis for her conclusion. She stated that "[t]o hold otherwise would undermine the core purpose of the statutory bar." Id. But she did not explain why that would be so. Judge Harmon's decision is the only case on point, but in light of its lack of analysis, it is of limited utility in deciding when a conviction becomes final for purposes of the conviction exception.

[12] Mayer Brown's reliance on cases refusing to apply mandatory minimum sentences on the basis of prior convictions is therefore misplaced. Those cases protect defendants against mandatory minimums until appeals on the prior convictions have run out. *See, e.g., U.S. v. Morales*, 854 F.2d 65 (5th Cir. 1988). Those cases raise no concern about delaying remedies for injured plaintiffs.

plaintiffs.[13]

For all these reasons, Collins's conviction should be considered final for purposes of the conviction exception.

### VII. Criminally Convicted in Connection with the Fraud

Mayer Brown argues that Collins was convicted of a fraud that was much narrower — in terms of time span and predicate acts — than the fraud alleged in the Second Amended Complaint. According to Mayer Brown, the record of the criminal case indicates that Collins was not convicted for his role in the round-trip loan transactions, but rather for conducted related to the LBO and IPO in 2004 and part of 2005. From this Mayer Brown concludes that the criminal conviction exception does not help the THL Funds, because Collins's acts surrounding the LBO and IPO do not prove a threat of continued activity and so do not satisfy RICO's pattern requirement. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (RICO requires a showing of continued activity or a threat of continued activity).

Mayer Brown's argument is not persuasive, because it is at odds with the plain language of Section 1964(c). The PSLRA amendment bars a RICO claim that relies upon "any conduct that would have been actionable as fraud in the purchase or sale of securities" — but that bar is lifted for a RICO claim "against any person that is criminally convicted *in connection with the fraud.*" 18 U.S.C. §1964(c). The statute by its terms does not require the defendant to have been convicted of a RICO violation, nor of acts that satisfy the RICO pattern requirement — but only of acts that were committed "in connection with" the securities fraud. Mayer Brown argues throughout its briefs that the statute means what it says and the court must apply it as it is written. That argument is dispositive here. Collins was unquestionably convicted "in connection with" fraud in the purchase or sale of securities. That lifts the PSLRA bar (at least as to him).

Any other reading of the statute would require the type of speculative inquiry into the jury verdict that Mayer Brown in fact undertakes. All that the statute requires is a finding that the jury convicted Collins for acts in connection with securities fraud. It does not require speculation into

---

[13] At oral argument, Mayer Brown raised the fact that Collins has been granted bail on appeal. This is an indication on Judge Patterson's part that Collins has viable arguments on appeal. *See* 18 U.S.C. § 3143 (defendant must be detained pending appeal unless the court finds clear and convincing evidence that the defendant is not likely to flee or pose a danger, and the appeal raises "a substantial question of law or fact likely to result" in reversal, new trial, or reduced sentence). But Mayer Brown does not argue that the finality of a conviction is determined by a bail decision. Nor could such a construction be teased out of the language of the conviction exception.

11

predicate acts.[14]

Therefore, the RICO claims should not be dismissed on the ground that Collins was never convicted of acts that constitute a RICO pattern.

## VIII. Stating a RICO claim against Mayer Brown

Mayer Brown alleges that the Plaintiffs have failed to state a RICO claim under the plausibility standards of *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Because the RICO claim against Mayer Brown should be dismissed under the PSLRA bar in any case, Mayer Brown's argument on the RICO claim itself will be treated only briefly. The Second Amended Complaint contains detailed allegations of Collins's and Mayer Brown's knowing assistance in the round trip loans,[15] referring false statements during the LBO and IPO, and withholding necessary information. *See* Second Amended Complaint ¶¶ 35, 38, 101 (detailing factual bases for concluding that Mayer Brown and Collins knowingly involved themselves in sham transactions and criminal enterprise). These allegations are sufficient to plead scienter under RICO.

The Plaintiffs have also adequately pleaded a RICO pattern. One type of RICO pattern in closed-end continuity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The Plaintiffs allege that acts of "wire, mail, securities, and financial institution fraud" began in February 1998 and continued through at least October 2005 in furtherance of a scheme to defraud. Second Amended Complain ¶ 96(b). Paragraphs 20-40 of the Second Amended Complaint describe in detail the mechanics of the overall fraudulent scheme. Such long-term criminal conduct in furtherance of an overall scheme to defraud constitutes closed-ended continuity. *See United States v. Pizzonia*, 577 F.3d 455, 465 (2d Cir. 2009) ("[c]ontinuity over a closed period . . . may be proved by a series of related predicates extending over a substantial period of time"), *cert. denied*, 2010 WL 58450 (U.S.

---

[14] The THL Funds argue persuasively that even accepting Mayer Brown's view of the statute, Collins was convicted of conspiracy with Refco insiders, and therefore at a minimum was found criminally responsible for the acts of those insiders, including the round trip loans. It is unnecessary to reach that question, however, because the statute on its face does not require a determination of whether Collins was convicted of acts that would constitute a pattern under RICO.

[15] It should be noted that in another litigation in this MDL, the Refco customers that engaged in the round trip loans argue strenuously that they did not know that those loans were fraudulent transactions. Those arguments are based on the fact that the fraudulent aspect of such a loan is the third leg of the transaction — removing the RGHI receivable from the books of Refco. In contrast, in this case, Mayer Brown is alleged to have papered these transactions from Refco's side, and so knew about the third leg.

12

Jan. 11, 2010) (No. 09-591).[16] *See also* Rakoff and Goldstein, *RICO Civil and Criminal Law and Strategy* at 7-44-45 (2009) (noting that case law on continuity is inconsistent, but the case law cited indicates that the dispute in the courts is about activity that spans months, not years).

Accordingly, the motion to dismiss on the ground that the Complaint does not state a RICO claim should be denied.

### IX. Recommendations

The motion to dismiss the Plaintiffs' RICO claim should be *granted with prejudice* because the claim is barred by the PSLRA amendment to 18 U.S.C. § 1964(c); the "criminal conviction" exception does not apply because Mayer Brown has not been convicted.

The other arguments pressed by Mayer Brown in its motion to dismiss — the conviction is not final, Collins was not convicted of a RICO pattern, and the Plaintiffs have not adequately pleaded a RICO claim — should be rejected.

*[signature]*
Daniel J. Capra
Special Master

Dated: May 3, 2010
New York, New York

---

[16] The Plaintiffs also make a strong argument that they have pleaded open-ended continuity, but given the recommended disposition of this matter, it is unnecessary to reach this argument.

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

THOMAS H. LEE EQUITY FUND V, L.P.,
THOMAS H. LEE PARALLEL FUND V, L.P., : 07 MDL 1092 (JSR)
and THOMAS H. LEE EQUITY (CAYMAN) :
FUND V, L.P., : 07 Civ. 6767 (JSR)
 :
 Plaintiffs, :
 :
v. :
 :
MAYER, BROWN, ROWE & MAW LLP and :
JOSEPH P. COLLINS, :
 :
 :
 Defendants. :

---------------------------------------------------------------x

### REPORT AND RECOMMENDATION OF THE SPECIAL MASTER
### ON JOSEPH COLLINS'S MOTION TO DISMISS THE PLAINTIFFS' AMENDED
### RICO CONSPIRACY CLAIM

Plaintiffs (collectively the "THL Funds") bring a RICO claim in their Second Amended Complaint against Mayer, Brown, Row & Maw, LLP ("Mayer Brown") and its former partner Joseph Collins. Mayer Brown moved to dismiss the RICO clam in the Second Amended Complaint for four reasons. In a report and recommendation dated May 3, 2010 (the "May 3 R and R"), the Special Master concluded 1) that Mayer Brown's motion to dismiss should be *granted with prejudice*, because the RICO claim against Mayer Brown is barred by the prohibition (added by the PSLRA) on RICO claims involving securities fraud — see 18 U.S.C. § 1964 (c); and 2) the so-called "conviction exception" to that bar does not apply to a RICO claim against Mayer Brown, because while Collins was convicted, Mayer Brown is not a "person that is criminally convicted in connection with the fraud."[1]

The May 3 R and R went on to recommend that if the court disagreed with the recommendation on the conviction exception, then the court should deny Mayer Brown's motion to dismiss, because Mayer Brown's other arguments for dismissal are without merit. Specifically, the

---

[1] The May 3 R and R sets out the facts concerning the Refco fraud and the alleged actions of Mayer Brown, as well as Judge Lynch's prior decision in this matter. Familiarity with that background is presumed.

1

May 3 R and R rejected the following arguments for dismissal:

> • that the criminal conviction exception is triggered only when a conviction becomes final, and a conviction is not final until it withstands appellate review. The May 3 R and R concluded that Collins's conviction is now final within the meaning of the conviction exception.
>
> • that in order for the proviso in § 1964(c) to apply, the defendant against whom the civil RICO claim is brought must have been criminally convicted of acts that would satisfy the RICO "pattern" requirement. The May 3 R and R concluded that the conviction exception only required Collins to be convicted "in connection with the [securities] fraud" — which he clearly was.
>
> • that the THL Funds failed to state a RICO claim against Mayer Brown. The May 3 R and R found that the elements of a RICO claim had been adequately pleaded.

On December 21, 2009, defendant Joseph Collins filed his own motion to dismiss the THL Funds' amended RICO claim. See Docket #103. On February 9, 2010, Collins joined in the relevant parts of Mayer Brown's Reply Memorandum and Mayer Brown's motion to dismiss. See Docket #117.

Under the principles and reasoning set forth in the May 3 R and R, Collins's motion to dismiss should be *denied*. The May 3 R and R recommended dismissal of the RICO claim only because Mayer Brown is not a person that has been convicted under § 1964(c) — Collins, in contrast, is obviously a person that has been convicted. Mayer Brown's other arguments for dismissal were rejected and there is nothing with respect to Collins that would lead to a different result as to those arguments.[2]

Accordingly, for the reasons expressed in the May 3 R and R, Collins's motion to dismiss the THL Funds amended RICO claim should be *denied*.

---

[2] If anything, the argument that the THL Funds have not pleaded a RICO claim is even weaker with respect to Collins. For example, Mayer Brown posited an argument that the THL Funds had not pleaded fraud with particularity under Fed.R.Civ.P. 9(b). In light of the allegations regarding the Refco fraud and Meyer Brown's part in it, that argument lacks merit. But it particularly lacks merit with regard to Collins. "The purpose of Rule 9(b) is to protect the defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to defending parties." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994). The purposes of Rule 9(b) should not require obsessive detail when the defendant has been convicted.

_____
Daniel J. Capra
Special Master

Dated: May 6, 2010
New York, New York