UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**Estate of Ernest Gottdiener,**
**Estate of Judit Gottdiener,**
**Suan Investments, and Ervin Tausky,**

                              Plaintiffs,

v.

**Felix Sater and Salvatore Lauria**,

                              Defendants

13 – CV – 1824 (LGS)

**Plaintiffs' Sur-reply to**
**Defendants' Motion to Dismiss**
**The First Amended Complaint ("FAC")**

**Plaintiffs' Supplement** *in re*
**Newly Decided Controlling Authority**
*In re Amaranth Nat. Gas* **(2d Cir. 2013)**

FREDERICK M. OBERLANDER
LAW OFFICE OF FREDERICK M. OBERLANDER, PC
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Telephone:   (212) 826-0357
Facsimile:   (212) 202-7624
Email:       fred55@aol.com
*Counsel for Plaintiffs*

RICHARD E. LERNER
LAW OFFICE OF RICHARD E. LERNER, PC
255 West 36th Street, Suite 800
New York, NY 10018
Telephone:   (917) 584-4864
Facsimile:   (347) 824-2006
Email:       richardlerner@msn.com
*Co-Counsel for Plaintiffs*

By leave of Court granted October 21, 2013, Plaintiffs sur-reply to Defendant's Reply in respect of their Motion to Dismiss the FAC. Plaintiffs also brief the Court on authority decided after our opposition brief, *In re Amaranth Nat. Gas,* 12-2075, (2d Cir. Sept. 23, 2013), which we first learned of after all submissions, in which the Second Circuit set pleading standards for statutory civil claims in aiding and abetting based on the language of 18 U.S.C. § 2, the general aiding and abetting criminal statute, by extension also setting pleading standards for statutory civil claims in conspiracy based on the language 18 U.S.C. § 371, the general conspiracy criminal statute. As the FAC has statutory civil aiding and abetting and conspiracy claims based on the language of both § 2 and § 371, *Amaranth* controls. Given its importance, Plaintiffs ask the Court accept their exceeding the 5-page limit by one page, roughly the length of an appellate 28J letter, to accommodate the additional supplementation of the briefs, which otherwise would have taken a separate two-page pre-oral argument letter.

SUR-REPLY

"THE DOG THAT DID NOT BARK"

In reply, Defendants improperly first raised a standing argument. If the Court considers rather than excludes it, their Motion to Dismiss argues Plaintiffs (1) lack standing to sue in RICO for injury from securities frauds Defendants operated, aided and abetted, and conspired to operate; (2) can't sue as limitations began at plea and have run; (3) can't sue as Defendants weren't convicted of the same fraud underlying the suit; (4) can't claim aiding and abetting or conspiracy (this last is unclear) to commit securities fraud as RICO predicates; and (5) even if they can, haven't well-pled them.

Their standing argument cites *Krear v. Malek*, 961 F. Supp. 1065 (E.D. Mich. 1997), for the proposition that, though the PSLRA RICO amendment says no such thing, it denies Plaintiffs standing to sue as they weren't named in the informations to which Defendants pled guilty, a standing requirement the *Krear* judge *admitted* wasn't in the statute or considered by Congress but which he said he was reading into the statute as he was sure Congress would have written it had it given the matter any thought and not done a rush job. We sought sur-reply because, besides improperly raising this in reply:

1. **Defendants failed to disclose** that *Krear* defies *Sedima*, 473 U.S. 479 (1985), which *prohibits* courts from reading *any* standing requirements into RICO not expressly put there by Congress. *Krear* is aberrant, *ultra vires* juristic dross.

2. **Defendants failed to disclose** that the only other time this issue was decided, *Thomas H. Lee v. Mayer Brown and Collins*, 07-CV-6767 (SDNY), on all fours with ours, Judge Rakoff upheld recommendations of Master Capra in an opinion that reads as if we wrote it, not only obeying *Sedima* by interpreting the PSLRA amendment *textually*, as written, not purposively, correctly finding it puts no standing requirement on plaintiffs, but also deciding that:

    2.1. Aiding and abetting securities fraud is *of course* a valid RICO predicate for civil liability, so long as the PSLRA conviction exception applies;

    2.2. The conviction exception applies when defendant has been convicted of a crime in connection with the fraud forming the basis of the RICO claim; the crime need not be RICO itself, the same fraud, or fraud at all, or have the same scope, so long as it is in connection with the fraud;

    2.3. The statute of limitations starts to run when the conviction becomes final, *which means upon entry of judgment, not upon plea or verdict*; in fact, no suit can be brought at all *until* that time the conviction becomes final;

    2.4. Given a defendant's prior conviction, a civil RICO claim predicated on securities fraud, aiding and abetting it, etc. needn't comply with Rule 9.

1.        ***Sedima*** **prohibits courts from reading standing requirements into RICO.**

Though RICO was law in 1970, there were but 13 civil cases by 1981. Then it exploded, 100 new cases by 1984. *Civil RICO: Before and After Sedima*, 69 Marq. L. Rev. 395 (1986), n. 17. Against this backdrop, and what the Second Circuit called the "outrageous" use of civil RICO against "legitimate" defendants rather than mobsters, in 1984 that court decided *Sedima v. Imrex*, 741 F.2d 482, and *Bankers Trust v. Rhoades*, 741 F.2d 511, showing the antipathy with which it viewed RICO by its judicial rewrite of the RICO statute on the grounds that, as Congress hadn't well considered the language of the RICO statute when drafting it, the Second Circuit would do it for them – bare naked *purposivism*.

First, to narrow the scope of civil RICO, the court invented a standing requirement nowhere in the statute, requiring plaintiffs allege, in addition to what Congress wrote, a "distinct RICO injury," *Bankers Trust* at 516, *Sedima* at 503, reasoning that as Congress, from its silence on the issue in committee, hadn't considered the implications of civil RICO, indeed had no "inkling" of them – the court called this the "clanging silence of legislative history" – the court would "fix" this oversight by reading into the statute what it "knew" Congress would have written, had it thought to do so.

Then to further restrict RICO, the court held a defendant's prior conviction for a predicate act was a prerequisite to civil RICO claims against him. That wasn't in the statute either, but that didn't stop the court, a fact not lost on Judge Cardamone, who noted in dissent that RICO doesn't read, for example, "for which an indictment or information has been returned or filed," *Sedima* at 500, something Congress *could* have written had it wanted to (and somewhat *did* later, in the PSLRA amendment).

A year later, the Supreme Court, applying a strict, *textual*, interpretation of the statutory language, repudiated the Second Circuit's reasoning on all counts. *Sedima*, 473 U.S. 479 (1985). As to the prior conviction requirement, the Court noted the absence of the term "conviction" in the statute, reasoning that if there had been *any* intent by Congress to impose "this novel requirement, there would have been at least *some* mention of it in the legislative history, even if not in the statute." *Sedima* at 490. As to the distinct injury standing requirement, the Court held that the plain words of the statute cannot be read to find such a requirement, nor can such a requirement be read into it by what it said would be a form of statutory amendment not appropriately undertaken by courts. *Sedima* at 500.

> Given the plain words of the statute, we cannot agree…that Congress could have had no "inkling of [§ 1964(c)'s] implications…Congress' "inklings" are best determined by the statutory language that it chooses, and the language it chose here extends far beyond the limits drawn by the Court of Appeals. Nor does the "clanging silence" of the legislative history, *ibid*, justify those limits. § 1964(c) did not pass through Congress unnoticed…*congressional silence, no matter how "clanging," cannot override the words of the statute. Sedima* at 495.

Justice Stewart made the same point in *Harrison v. Ppg Indus.*, 446 U.S. 578, 592 (1980):

> It would be a strange canon of statutory construction that would require Congress to state in committee reports… [what] is obvious on the face of a statute. *In ascertaining the meaning of a statute, a court cannot, in the manner of Sherlock Holmes, pursue the theory of the dog that did not bark.*

What *do* the plain words of RICO mean? According to *Sedima*, at 496, they mean:

> A violation of § 1962(c)…requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Conducting an enterprise is obviously not, in itself, a violation of § 1962, nor is mere commission of…predicate offenses…*the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation…[T]he statute requires no more than this… [T]he compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.*

We argued this in opposition, that RICO standing arises when a plaintiff is injured by conduct which, though as standalone crime may not give a right of action, as part of a *pattern* of crime in connection with conduct of an enterprise *does* give a right of action. Opp. Br. pg. 8. Defendants always miss the point: *of course* there's no private action for violating criminal aid and abettance or conspiracy statutes *per se*; we never said there was. What we *said* was, when crimes of aiding and abetting or conspiring to commit securities fraud, mail or wire fraud in securities, or securities fraud, all predicates, § 1961, are committed in a pattern in connection with conduct of an enterprise, the case here, *then* there is a private action in RICO for injury caused by one or more of those acts, again the case here.

2.  **The PSLRA amendment and conviction exception add no standing requirement. The *Krear* judge's attempt to play Holmes at the expense of the plaintiffs was prohibited by *Sedima*, error, and *ultra vires* aberrance *ex* the norm of judicial function.**

Seen through the lens of *Sedima*, *Krear* is clearly no help to Defendants. Recall that the metes and bounds of all civil RICO causes of action are defined in § 1964(c):

> **Any person injured in his business or property by reason of a violation of § 1962 of this chapter may sue** therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, *except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of § 1962. The exception contained in the preceding sentence does not apply to an action against* **any person that is criminally convicted in connection with the fraud**, *<u>**in which case the statute of limitations shall start to run on the date on which the conviction becomes final**</u>*.

The non-italic was the statute in 1985, when *Sedima* held that the only standing requirement is the **bold** part of that, and that courts may not invent another one, especially not because Congress was silent on some issue the court has decided to "fix" for it, i.e. *especially not because the dog did not bark*.

Subsequently, Congress amended RICO in the PSLRA, adding the italic language to create the version of § 1964(c) still in effect today. The *non-bold* italic removes predicate acts actionable as securities fraud from use in civil RICO action unless the conviction exception applies. The **bold** italic defines the defendants as to whom the conviction exception applies, who may be sued, *viz.* defendants who have been convicted in connection with the fraud. The **<u>bold underline</u>** italic defines when the conviction exception allows suit, when may they be sued, *viz.* when the conviction becomes final.

*But no part of the italic adds anything to a plaintiff's standing requirement*, which remains simply that he must allege injury by the defendant's commission of one or more of a set of acts taken in a pattern in connection with the conduct of an enterprise. All the PSLRA did was add, "but no act by itself actionable by anyone as a stand-alone act of fraud in the purchase or sale of securities may be used to establish pattern or injury except (1) as to a defendant previously convicted in connection with the fraud (*who* may be sued), and then not until (2) the conviction becomes final (*when* he may be sued)."

The *Krear* judge *admitted* it, that as written, if a man was convicted of securities fraud, anyone could sue him in RICO claiming to be a victim, but said while that is what Congress *enacted*, it couldn't have really *meant* to, *must* have meant to impose a new standing requirement, would have had it thought to, so as Congress *didn't* address what *he* saw as a problem, *or even mention it*, he would "fix" it for them by reading a standing requirement into the RICO amendment so no plaintiff had standing unless, in addition to the standing requirements *Congress* enacted, he was named in the charging instrument.

In other words, he rewrote the statute, adding a standing requirement expressly because the Congressional dog did not bark. This is *exactly* what *Sedima* explicitly prohibited. It is not defensible.[1,2]

\*\*\*\*\*

We end with *Thomas H. Lee v. Mayer Brown and Collins*, 07-CV-6767 (SDNY), from the Refco fraud. Collins was a Mayer Brown attorney who aided and abetted the fraud, Lee a victim defrauded of hundreds of millions. After Collins was convicted for securities fraud, Lee sued him and Mayer Brown in RICO for aiding and abetting securities fraud. Judge Rakoff and Special Master Capra confronted the same issues we are, the PSLRA amendment and conviction exception, interpreting it as we do, as not creating any standing requirement, and further decided (1) aiding and abetting securities fraud is a valid RICO predicate for civil liability, if the conviction exception applies; (2) it applies when a defendant has been convicted of *any* crime in connection with the fraud forming the basis of the RICO claim; (3) the statute of limitations starts to run when the conviction becomes final, *at entry of judgment, not plea*; and (4) given a defendant's prior conviction, a civil RICO claim predicated on securities fraud, aiding and abetting it, etc. need not comply with Rule 9. See Exhibit A, pgs. 8 *et seq.*

---

[1] This is harsh language as it is harsh reality. Consider the *Sedima* Second Circuit decision, which noted:

> [T]he uses to which…civil RICO has been put have been…outrageous…It has…
> led to claims against such…legitimate "enterprises" as…E. F. Hutton…

A year later Hutton pled to 2,000 acts of wire fraud in a scheme to defraud banks by kiting a quarter billion dollars. Then it collapsed in threat of indictment for money laundering for the Patriarca family. The point is not that the Second Circuit showed its stripes; Congress does too, rather that if Congressmen stray like this we can easily fire them, but if Judges do we can't, they are largely unanswerable.

[2] Having said that, we must direct attention to n. 18 in *Krear*, which reads:

> The United States Attorney may also rely upon establishing relevant conduct at
> the time of sentencing to show the extent of the scheme to defraud.

In other words, the *Krear* judge held that as an alternate to his invented requirement that a civil RICO plaintiff in securities fraud must be named in the charging instrument to have standing to sue, *he would also have standing if he were confirmed as a crime victim at the time of sentencing*. As of 2004 that confirmation is required at sentencing under the MVRA and CVRA, a legal obligation of the DOJ to provide it to every victim and an obligation of the sentencing judge to ensure it does. **We leave it to your honor to consider why Defendants hid this part of *Krear*; we think it's obvious**. We will deal with it in a pre-motion letter to the Court in anticipation of demanding our clients' CVRA rights to receive such confirmation by motion pursuant to 18 U.S.C. §3771(d)(3) should the court decide to follow *Krear*. We also note that Plaintiffs have already been preclusively determined to be federal crime victims of the fraud.

SUPPLEMENT

After submission of our opposition, the Second Circuit decided *In re Amaranth Nat. Gas*, 12-2075, stating what a plaintiff must plead in a private right of action for aiding and abetting commodities fraud so necessarily stating what a plaintiff must plead to claim aiding and abetting securities fraud as a RICO predicate and to claim conspiracy to commit securities fraud, etc. as RICO predicates.

In *Amaranth*, plaintiffs, investors in a hedge fund that lost billions in a failed attempt to manipulate the energy futures markets, sued a commodities clearing broker which facilitated the trades for the fund, arguing that the broker aided and abetted the fund's fraud and so was liable to them[3].

The issue for the court was, "What must plaintiffs plead to state a claim?" The answer was, "What one must plead to charge the crime itself." *Amaranth* held that as the language proscribing aiding and abetting in the CEA is the same as the language proscribing it in 18 U.S.C. §2, the standard for *pleading* it is the same, plaintiffs must allege defendants associated with the scheme; participated in it as in something they wished to bring about; and sought by their act to make it succeed; adding, "in evaluating a complaint alleging aiding and abetting…allegations about the defendant's knowledge, intent, and actions should not be evaluated in isolation, but rather in light of the complaint as a whole."[4]

*A fortiori*, the standard for pleading a predicate act of aiding and abetting securities fraud in civil RICO must be the same, as the language defining the predicate crime isn't just **based on** the language of 18 U.S.C. §2, it **is** the language of 18 U.S.C. §2, incorporated by 18 U.S.C. §1961(4). Similarly, by the logic of *Amaranth* the standard for pleading predicate acts of conspiracy to commit securities fraud, or mail or wire fraud in the context of securities sales, indeed every other predicate act based on a specific criminal statute, must necessarily be the same as for pleading the crime itself.

---

[3] Like the Securities Exchange Act, the Commodities Exchange Act gives private rights of action for fraud in connection with commodities sales. But, unlike the SEA, where private rights are implied by courts and as of *Central Bank* preclude investors (but not the SEC) from suing for aiding and abetting or conspiracy directly (but doesn't preclude in RICO under the conviction exception), the CEA provides private rights by statute, including the right to sue for aiding and abetting commodities fraud, and as noted in the text the language in the CEA provision defining aiding and abetting is duplicative of the definition of aiding and abetting in 18 U.S.C. § 2, the general criminal aid and abetting statute.

[4] As secondary crimes, aid and abettance and conspiracy inherit the proximate cause of the primary act through mediate causation, thus do not and cannot have the same causation pleading requirements.

SIGNATURE BLOCK

Wherefore the above, Plaintiffs request this sur-reply be taken up with the Motion to Dismiss, together with the Opposition and Reply thereto, and that said Motion be denied, or in the alternative if said Motion be granted such be without prejudice and Plaintiffs afforded leave to amend; and ask the Court award them all other relief as may be just and proper.

\* \* \* \* \*

CERTIFICATION OF COMPLIANCE. We certify that every typeface herein is of point size 12 or higher, standard Windows System font (Garamond), and all line spacing is double spaced as the term is defined in typesetting, line spacing equal to exactly twice the point size, in other words 24 points, which should produce an average of 26 lines per page, or single spaced with at least an additional two points of leading, in other words at least 14 points, and no horizontal compression or tracking control has been used to decrease normal character spacing aside from kerning and ligature which have negligible consequences. Margins are 1" left and right and 1.15" bottom, 0.85" top which is standard typesetting design, shifting 15% to 25% from the top to bottom margin to allow a footer without visual deficit (that is, to allow more visually symmetrical whitespace) and provides the identical 6.5" x 9" printable area as would 1" margins all around. See Butterick, *Typography for Lawyers*, Version 1.2, Electronic Edition 2011, ISBN 978-1-59839-078-0. As alternate authority, where possible, and not in conflict with the rules applicable here or the above reference, we have followed guidelines for typography in the publication of the Seventh Circuit Court of Appeals, *Requirements and Suggestions for Typography in Briefs and Other Papers*, available at http://www.ca7.uscourts.gov/Rules/type.pdf.

\* \* \* \* \*

Respectfully submitted October 28, 2013

/s/ Frederick M. Oberlander          /s/ Richard Lerner
Counsel for Plaintiffs               Co-Counsel